**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 14-cv-317 (EGS) |
| DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) | |
| Defendant | ) | |

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................... 1

    I.      EPIC's FOIA request and DEA's response ............................................................... 1

    II.     Proceedings in this action ......................................................................................... 4

ARGUMENT ....................................................................................................................... 4

    I.      Statutory background and standard of review ........................................................... 4

    II.     DEA conducted a reasonable search for responsive documents ............................. 6

    III.    DEA properly withheld records under applicable FOIA exemptions. ..................... 7

          A.     DEA processed and released all reasonably segregable information from the responsive records ................................................................................ 7

          B.     DEA properly withheld privileged inter- or intra-agency communications under FOIA Exemption 5 ............................................................................. 7

          C.     DEA properly withheld individuals' names and personally identifying information under FOIA Exemption 6 ..................................................... 10

          D.     All of the materials DEA withheld are "records or information compiled for law enforcement purposes" that meet the threshold requirement of FOIA Exemption 7 .................................................................................. 13

          E.     DEA properly withheld individuals' names and personally identifying information under FOIA Exemption 7(C) ................................................. 13

          F.     DEA properly withheld information identifying private-sector companies instrumental in the operation of Hemisphere under Exemption 7(D) ....... 15

          G.     DEA properly withheld information about Hemisphere and its use in law enforcement under FOIA Exemption 7(E) .............................................. 16

          H.     DEA properly withheld individuals' names and contact information under FOIA Exemption 7(F) ........................................................................... 24

CONCLUSION ................................................................................................................... 25

# TABLE OF AUTHORITIES

**CASES**

Baez v. U.S. Dep't of Justice,
    647 F.2d 1328 (D.C. Cir. 1980) ........................................................... 11

\* Blackwell v. FBI,
    646 F.3d 42 (D.C. Cir. 2011) ..............................................17, 19, 21, 22

Blackwell v. FBI,
    680 F. Supp. 2d 79 (D.D.C. 2010) ....................................................... 21

Blanton v. U.S. Dep't of Justice,
    182 F. Supp. 2d 81 (D.D.C. 2002) ....................................................... 24

Blanton v. U.S. Dep't of Justice,
    63 F. Supp. 2d 35 (D.D.C. 1999) ......................................................... 18

Boehm v. FBI,
    948 F. Supp. 2d 9 (D.D.C. 2013) ......................................................... 23

Boyd v. Bureau of Alcohol, Tobacco, Firearms & Explosives,
    570 F. Supp. 2d 156 (D.D.C. 2008) ..................................................... 19

Campbell v. U.S. Dep't of Justice,
    164 F.3d 20 (D.C. Cir. 1999) ............................................................... 13

Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,
    746 F.3d 1082 (D.C. Cir. 2014) ..................................................... 6, 17

Coastal States Gas Corp. v. Dep't of Energy,
    617 F.2d 854 (D.C. Cir. 1980) ............................................................. 10

Coleman v. FBI,
    13 F. Supp. 2d 75 (D.D.C. 1998) ......................................................... 18

Concepcion v. U.S. Customs & Border Prot.,
    907 F. Supp. 2d 133 (D.D.C. 2012) ..................................................... 22

Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice,
    331 F.3d 918 (D.C. Cir. 2003) ............................................................... 5

Davis v. U.S. Dep't of Justice,
    968 F.2d 1276 (D.C. Cir. 1992) ........................................................... 14

Dep't of the Air Force v. Rose,
    425 U.S. 352 (1976)............................................................................. 11

Dudman Commc'ns Corp. v. Dep't of the Air Force,
    815 F.2d 1565 (D.C. Cir. 1987) ................................................. 10

FBI v. Abramson,
    456 U.S. 615 (1982) ................................................................... 4

Gilman v. U.S. Dep't of Homeland Sec.,
    Civil Action No. 09-0468 (BAH), 2014 WL 984309 (D.D.C. Mar. 14, 2014) ..... 21

Ground Saucer Watch, Inc. v. CIA,
    692 F.2d 770 (D.C. Cir. 1981) (per curiam) ............................... 5

Hall v. U.S. Dep't of Justice,
    Civil Action No. 87-0474, 1989 U.S. Dist. LEXIS 19068 (D.D.C. Mar. 8, 1989) 23

In re Lindsey,
    148 F.3d 1100 (D.C. Cir. 1998) .................................................. 8

In re Sealed Case,
    737 F.2d 94 (D.C. Cir. 1984) ..................................................... 8

Jefferson v. Dep't of Justice,
    284 F.3d 172 (D.C. Cir. 2002) .................................................. 13

Jewett v. U.S. Dep't of State,
    Civil Action No. 11-cv-1852 (RLW), 2013 WL 550077 (D.D.C. Jan. 14, 2013) . 18

John Doe Agency v. John Doe Corp.,
    493 U.S. 146 (1989) ................................................................... 4

Judicial Watch, Inc. v. Dep't of Justice,
    432 F.3d 366 (D.C. Cir. 2005) .................................................. 9

Kurdyukov v. U.S. Coast Guard,
    657 F. Supp. 2d 248 (D.D.C. 2009) ......................................... 19

Lesar v. U.S. Dep't of Justice,
    636 F.2d 472 (D.C. Cir. 1980) ................................................. 11

Light v. Dep't of Justice,
    968 F. Supp. 2d 11 (D.D.C. 2013) ................................... 18, 21, 22

Mapother v. Dep't of Justice,
    3 F.3d 1533 (D.C. Cir. 1993) ................................................... 10

* Mayer Brown LLP v. IRS,
    562 F.3d 1190 (D.C. Cir. 2009) .......................................... 16, 17

Meeropol v. Meese,
    790 F.2d 942 (D.C. Cir. 1986) ............................................................. 5

Miller v. U.S. Dep't of Justice,
    562 F. Supp. 2d 82 (D.D.C. 2008) ....................................................... 20

Milner v. Dep't of the Navy,
    131 S. Ct. 1259 (2011) ........................................................................ 4

Montrose Chem. Corp. of Cal. v. Train,
    491 F.2d 63 (D.C. Cir. 1974) ............................................................. 10

Moore v. Bush,
    601 F. Supp. 2d 6 (D.D.C. 2009) ....................................................... 12

Muslim Advocates v. U.S. Dep't of Justice,
    833 F. Supp. 2d 92 (D.D.C. 2011) ..................................................... 18

Nat'l Ass'n of Retired Fed. Emps. v. Horner,
    879 F.2d 873 (D.C. Cir. 1989) ........................................................... 12

Nat'l Sec. Archive v. CIA,
    752 F.3d 460 (D.C. Cir. 2014) ........................................................... 10

NLRB v. Robbins Tire & Rubber Co.,
    437 U.S. 214 (1978) ............................................................................ 4

NLRB v. Sears, Roebuck & Co.,
    421 U.S. 132 (1975) ....................................................................... 8, 10

Oglesby v. U.S. Dep't of the Army,
    920 F.2d 57 (D.C. Cir. 1990) ........................................................... 5, 7

Ortiz v. U.S. Dep't of Justice,
    2014 WL 4449686 (D.D.C. Sept. 9, 2014) .................................... 18, 21

Perry v. Block,
    684 F.2d 121 (D.C. Cir. 1982) (per curiam) ........................................ 5

* PHE, Inc. v. Dep't of Justice,
    983 F.2d 248 (D.C. Cir. 1993) ..................................................... 16, 20

Pons v. U.S. Customs Serv.,
    Civ. No. 93 2094 (TFH), Civ. No. 93-2189 (TFH), 1998 U.S. Dist. LEXIS 6084
    (D.D.C. Apr. 23, 1998) ................................................................. 21, 22

Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico,
    740 F.3d 195 (D.C. Cir. 2014) ................................................................... 17, 24

Raulerson v. Ashcroft,
    271 F. Supp. 2d 17 (D.D.C. 2002) ......................................................... 24

Reed v. NLRB,
    927 F.2d 1249 (D.C. Cir. 1991) ............................................................. 11, 14

Rosenberg v. U.S. Dep't of Immigration & Customs Enforcement,
    959 F. Supp. 2d 61 (D.D.C. 2013) ......................................................... 23

Roth v. U.S. Dep't of Justice,
    642 F.3d 1161 (D.C. Cir. 2011) ............................................................. 15

Russell v. Dep't of the Air Force,
    682 F.2d 1045 (D.C. Cir. 1982) ............................................................. 10

SafeCard Servs., Inc. v. SEC,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................. 5, 12

Schrecker v. U.S. Dep't of Justice,
    349 F.3d 657 (D.C. Cir. 2003) ............................................................... 12

Skinner v. U.S. Dep't of Justice,
    744 F. Supp. 2d 185 (D.D.C. 2010) ....................................................... 20, 21

Skinner v. U.S. Dep't of Justice,
    806 F. Supp. 2d 105 (D.D.C. 2011) ....................................................... 22

Soghoian v. U.S. Dep't of Justice,
    885 F. Supp. 2d 62 (D.D.C. 2012) ......................................................... 19

Summers v. Dep't of Justice,
    140 F.3d 1077 (D.C. Cir. 1998) ............................................................. 5

Tax Analysts v. IRS,
    117 F.3d 607 (D.C. Cir. 1997) ............................................................... 9

U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,
    489 U.S. 749 (1989) ............................................................................. 14

U.S. Dep't of State v. Wash. Post Co.,
    456 U.S. 595 (1982) ............................................................................. 11

Vazquez v. U.S. Dep't of Justice,
    887 F. Supp. 2d 114 (D.D.C. 2012) ....................................................... 20

Weisberg v. U.S. Dep't of Justice,
    745 F.2d 1476 (D.C. Cir. 1984) ....................................................................... 5, 22

Williams & Connolly v. SEC,
    662 F.3d 1240 (D.C. Cir. 2011) ............................................................................. 9

Wolf v. CIA,
    473 F.3d 370 (D.C. Cir. 2007) ............................................................................... 6

**FEDERAL STATUTES**

Controlled Substances Act, 21 U.S.C. §§ 801–971 ......................................................... 13

Freedom of Information Act (FOIA), 5 U.S.C. § 552 ................................................. passim

## PRELIMINARY STATEMENT

Plaintiff Electronic Privacy Information Center filed a Freedom of Information Act request seeking Government records concerning Hemisphere, a program used by the Drug Enforcement Administration (DEA) and other law enforcement authorities to obtain access to telephone records in the course of law enforcement investigations. FOIA explicitly provides that Government records that disclose law enforcement "techniques and procedures" are exempt from disclosure, 5 U.S.C. § 552(b)(7)(E). Given that law enforcement techniques and procedures were the central focus of EPIC's FOIA request, it comes as no surprise that DEA properly withheld a significant portion of the records that EPIC requested.

While it withheld a significant amount of material, DEA also took steps to ensure that it disclosed as much responsive material to EPIC as it could without unduly impairing law enforcement interests or other interests recognized under FOIA. DEA conducted a thorough search to identify documents subject to FOIA that were responsive to EPIC's request. It then carefully reviewed all of the responsive records it located. It withheld responsive material only in instances where withholding was specifically authorized by Exemption 7(E) or another FOIA exemption.

DEA's application of the statutory exemptions was proper, and the DEA processed and released all reasonably segregable information. Accordingly, the Court should grant summary judgment in favor of DEA.

## BACKGROUND

### I.    EPIC's FOIA request and DEA's response

This action pertains to a Freedom of Information Act request submitted by the plaintiff seeking disclosure of records pertaining to Hemisphere, a program used by the Drug Enforcement Administration (DEA) and other law enforcement authorities to obtain access to

telephone records in the course of law enforcement investigations. Although DEA uses and partly funds Hemisphere, Hemisphere is not a DEA program.

EPIC first requested Hemisphere-related documents from DEA in a letter dated September 25, 2013. Decl. of Katherine L. Myrick ¶ 7 (attached as Exhibit 1). DEA informed EPIC that the September 25, 2013, request did not meet the requirements of the FOIA because it did not reasonably describe the requested records and did not comply with applicable Department of Justice regulations. Myrick Decl. ¶ 9. EPIC then submitted a revised request dated November 15, 2013. Myrick Decl. ¶ 10.

EPIC's request, as stated in the November 15, 2013, letter, sought four categories of documents "from DEA Headquarters and DEA division offices in Atlanta, Houston, Los Angeles, and Washington, D.C.":

1)      All Hemisphere training modules, request forms, and similar final guidance documents that are used in the day-to-day operation of the program.

2)      Any analyses, memos, opinions, or other communications that discuss the legal basis of the program.

3)      Any analyses, memos, opinions, or other communications that discuss the privacy impact of the program.

4)      Any presentations, analyses, memos, opinions or other communications for Congress that cover Hemisphere's operations.

Myrick Decl. ¶ 10.

DEA identified six offices at DEA Headquarters likely to have responsive records and tasked each of them with searching for responsive records: the Operations Division, the Intelligence Division, the Office of Training, the Office of Chief Counsel, the Office of Information Systems, and the Office of Congressional and Public Affairs. Myrick Decl. ¶ 16. The FOIA Unit also tasked the Atlanta, Houston, Los Angeles, and Washington, D.C., division offices with searching for responsive records. Myrick Decl. ¶ 16. Some of these offices knew

immediately, and confirmed to the FOIA Unit, that they did not have any responsive documents. Myrick Decl. ¶¶ 18, 22. Other offices searched the locations within each office where responsive documents were likely to be found and returned any responsive documents to the FOIA Unit. Myrick Decl. ¶¶ 17, 19–21, 23–27. DEA also searched the Narcotics and Dangerous Drugs Information System (NADDIS), which is the index to and the practical means by which DEA retrieves investigative reports and information form the Investigative Reporting and Filing system, the DEA's investigative and intelligence Privacy Act system of records. Myrick Decl. ¶ 27.

DEA sent a response to EPIC on July 21, 2014. Myrick Decl. ¶ 11. The response included 319 pages of responsive documents, of which 39 pages were released in full, 176 pages were withheld in part, and 104 pages were withheld in full. Myrick Decl. ¶ 11.

EPIC did not receive the response sent by mail on July 21, 2014; although it had been properly addressed, the response was returned to DEA with the endorsement "Not Deliverable as Addressed—Unable to Forward." Myrick Decl. ¶ 12. However, DEA's counsel sent EPIC's counsel an electronic copy of the response by email on July 23, 2014. Myrick Decl. ¶ 11.

By letter dated July 25, 2014, DEA provided EPIC corrected copies of four pages of the July 21, 2014, release. Myrick Decl. ¶ 13. The corrected pages contained corrected markings but did not change the material withheld or released on the four pages. Myrick Decl. ¶ 13.

After DEA completed its response, DEA learned that its search efforts had unintentionally excluded a search avenue DEA had intended to pursue. Myrick Decl. ¶ 14. Pursuing that avenue located 4 pages of responsive documents subject to FOIA that had not previously been located. Myrick Decl. ¶ 14. DEA processed these additional pages and sent a supplemental release to EPIC including 2 pages released in full and 2 pages withheld in part. Myrick Decl. ¶ 14.

In all, DEA identified 323 pages of responsive documents subject to FOIA, including 41 pages released in full, 178 pages withheld in part, and 104 pages withheld in full. Myrick Decl. ¶ 48.

## II.     Proceedings in this action

EPIC filed its complaint in this action on February 26, 2014. Compl. for Injunctive Relief, ECF No. 1. DEA filed its answer to the complaint on April 7, 2014. Answer, ECF No. 7.

## <u>ARGUMENT</u>

## I.     Statutory background and standard of review.

The Freedom of Information Act (FOIA), 5 U.S.C. § 552, generally mandates disclosure, upon request, of government records held by an agency of the federal government except to the extent such records are protected from disclosure by one of nine exemptions. <u>Milner v. Dep't of the Navy</u>, 131 S. Ct. 1259, 1262 (2011). The "fundamental principle" that animates FOIA is "public access to Government documents." <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 151 (1989). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." <u>FBI v. Abramson</u>, 456 U.S. 615, 621 (1982); <u>see also</u> 5 U.S.C. § 552(b). While these exemptions are to be "narrowly construed," <u>Abramson</u>, 456 U.S. at 630, courts must not fail to give the exemptions "meaningful reach and application." <u>John Doe Corp.</u>, 493 U.S. at 152. The FOIA thus "represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping

certain information confidential." Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice, 331 F.3d 918, 925 (D.C. Cir. 2003).

Courts generally resolve FOIA actions through summary judgment. "In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990). "There is no requirement that an agency search every record system." Id. "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. U.S. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984); see also Meeropol v. Meese, 790 F.2d 942, 952–53 (D.C. Cir. 1986) ("[A] search is not unreasonable simply because it fails to produce all relevant material . . . ."); Perry v. Block, 684 F.2d 121, 128 (D.C. Cir. 1982) (per curiam).

In evaluating the adequacy of a search, courts accord agency affidavits "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991); see also Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam). The statute does not require "meticulous documentation [of] the details of an epic search." Perry, 684 F.2d at 127. "[A]ffidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Id.

To sustain its burden of justifying nondisclosure of information, see 5 U.S.C. § 552(a)(4)(B), the agency must provide declarations that identify the information at issue and the bases for the exemptions claimed. See Summers v. Dep't of Justice, 140 F.3d 1077, 1080

(D.C. Cir. 1998). Courts "review <u>de novo</u> the agency's use of a FOIA exemption to withhold documents." <u>Wolf v. CIA</u>, 473 F.3d 370, 374 (D.C. Cir. 2007). Summary judgment is warranted when the agency's affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." <u>Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice</u>, 746 F.3d 1082, 1088 (D.C. Cir. 2014). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" <u>Wolf</u>, 473 F.3d at 374–75.

## II.    DEA conducted a reasonable search for responsive documents.

The DEA's search for documents responsive to EPIC's request was reasonably calculated to uncover all documents responsive to EPIC's request.

As explained in greater detail in the Declaration of Katherine L. Myrick, DEA identified six offices at DEA Headquarters likely to have responsive records and tasked each of them with searching for responsive records: the Operations Division, the Intelligence Division, the Office of Training, the Office of Chief Counsel, the Office of Information Systems, and the Office of Congressional and Public Affairs. Myrick Decl. ¶ 16. The FOIA Unit also tasked the Atlanta, Houston, Los Angeles, and Washington, D.C., division offices with searching for responsive records. Some of these offices knew immediately, and confirmed to the FOIA Unit, that they did not have any responsive documents. Myrick Decl. ¶¶ 18, 22. Other offices searched the locations within each office where responsive documents were likely to be found and returned any responsive documents to the FOIA Unit. Myrick Decl. ¶¶ 17, 19–21, 23–27. DEA also searched the Narcotics and Dangerous Drugs Information System (NADDIS), which is the index to and the practical means by which DEA retrieves investigative reports and information form the

Investigative Reporting and Filing system, the DEA's investigative and intelligence Privacy Act system of records. Myrick Decl. ¶ 27.

DEA thus "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

**III.   DEA properly withheld records under applicable FOIA exemptions.**

**A.   DEA processed and released all reasonably segregable information from the responsive records.**

The DEA processed the responsive records in accordance with FOIA and withheld certain information pursuant to FOIA exemptions 5, 6, 7(C), 7(D), 7(E), and 7(F), as explained in detail below and in the attached Declaration of Katherine L. Myrick. The DEA properly invoked these exemptions, and the DEA processed and released all reasonably segregable information from the responsive records, indicated where material was redacted, and marked each redaction with the reasons for the redaction.

The Declaration of Katherine L. Myrick describes the DEA's justifications for withholding information. The declaration divides the material withheld into several categories. For each asserted exemption, the declaration identifies and describes each category of information withheld based on that exemption, explains how the exemption applies, and identifies the page numbers on which the material appears. Attached to the declaration are copies the responsive documents containing markings indicating the portions of each page that fall into each category.

**B.   DEA properly withheld privileged inter- or intra-agency communications under FOIA Exemption 5.**

The DEA properly withheld privileged inter- or intra-agency communications pursuant to FOIA Exemption 5. Exemption 5 protects from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). A record of this kind is exempt from disclosure if it would be "normally privileged in the civil discovery context." <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 149 (1975). Exemption 5 thus incorporates the privileges that are available to an agency in civil litigation, including the attorney-client privilege, the attorney work-product doctrine, and the deliberative process privilege. <u>See</u> <u>id.</u> at 148–49.

DEA withheld two documents under Exemption 5. The first was a draft memorandum prepared by an attorney in the DEA Office of Chief Counsel analyzing legal issues regarding the procedures used to obtain information through Hemisphere, intended to assist senior DEA management, and containing comments added by the same attorney regarding the same topics (category 5-1, Myrick Decl. ¶ 34.a). The second is an email message from a Deputy Assistant Attorney General at DOJ to other Federal Government employees containing a preliminary assessment of three issues relating to features of the Hemisphere program (category 5-2, Myrick Decl. ¶ 34.b). Both of these memoranda are protected under the attorney-client privilege, the attorney work-product doctrine, and the deliberative process privilege.

<u>Attorney-Client Privilege.</u> The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services. <u>See</u> <u>In re Sealed Case</u>, 737 F.2d 94, 98–99 (D.C. Cir. 1984). A government agency, like a private party, "needs . . . assurance of confidentiality so it will not be deterred from full and frank communications with its counselors." <u>In re Lindsey</u>, 148 F.3d 1100, 1105 (D.C. Cir. 1998). The DEA properly withheld documents protected by the attorney-client privilege pursuant to Exemption 5.

The draft memorandum and the email are both covered by the attorney-client privilege. The draft memorandum contains a draft of confidential legal advice from an attorney to the DEA and does not itself establish a final policy. Myrick Decl. ¶ 34.a. The email message is covered by the attorney-client privilege because it delivers confidential legal advice (albeit preliminary advice) from an attorney regarding three issues relating to features of the Hemisphere program and does not itself establish a final policy. Myrick Decl. ¶ 34.b.

Attorney Work-Product Doctrine. "The work-product doctrine protects from disclosure materials 'prepared in anticipation of litigation or for trial by or for another party or its representative . . . .'" Williams & Connolly v. SEC, 662 F.3d 1240, 1243 (D.C. Cir. 2011) (quoting Fed. R. Civ. P. 26(b)(3)(A)); see also Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 369 (D.C. Cir. 2005); Tax Analysts v. IRS, 117 F.3d 607, 620 (D.C. Cir. 1997). The doctrine is "interpreted broadly." Judicial Watch, Inc., 432 F.3d at 369 (citing Hickman v. Taylor, 329 U.S. 495, 510–11 (1947)). "Although work product protection may be overcome for cause in civil cases, any materials disclosed for cause are not 'routinely' or 'normally' discoverable and, for that reason, are exempt under FOIA." Williams & Connolly, 662 F.3d at 1243 (citations omitted).

The draft memorandum and the email are both covered by the work-product doctrine. The draft memorandum was prepared by a DEA attorney in anticipation of litigation involving the Government and relating to the use of Hemisphere in law enforcement. Myrick Decl. ¶ 34.a. The email message is similarly covered by the attorney work-product doctrine because it was prepared by a DOJ attorney in anticipation of litigation involving the Government and relating to the use of Hemisphere in law enforcement. Myrick Decl. ¶ 34.b.

Deliberative Process Privilege. The purpose of the deliberative process privilege is to encourage frank discussion of legal and policy issues within the government, and to protect

against public confusion resulting from disclosure of reasons and rationales that were not

ultimately the bases for the agency's action. See, e.g., Mapother v. Dep't of Justice, 3 F.3d 1533,

1537 (D.C. Cir. 1993); Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982);

Montrose Chem. Corp. of Cal. v. Train, 491 F.2d 63, 70 (D.C. Cir. 1974). The deliberative

process privilege protects "predecisional communications." Sears, Roebuck, 421 U.S. at 151.

The privilege applies to "recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than the policy of

the agency." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

The privilege has been held to apply to recommendations, see Sears, Roebuck, 421 U.S. at 150,

and to drafts, see Dudman Commc'ns Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1569 (D.C.

Cir. 1987).

 The draft memorandum and the email are both covered by the deliberative process

privilege. Both documents were predecisional in that each document was intended to "facilitate

or assist development of the agency's final position" on a matter, Nat'l Sec. Archive v. CIA, 752

F.3d 460, 463 (D.C. Cir. 2014), and did not itself establish a final agency position. The draft

memorandum was prepared to facilitate development of DEA's policies and procedures

regarding use of Hemisphere. Myrick Decl. ¶ 34.a. The email message was prepared to facilitate

development of agency policy on three aspects of the use of Hemisphere. Myrick Decl. ¶ 34.b.

 **C.** **DEA properly withheld individuals' names and personally identifying information under FOIA Exemption 6.**

 The DEA properly invoked FOIA Exemption 6, 5 U.S.C. § 552(b)(6), to withhold the

names and personally identifying information of individual core mission law enforcement, law

enforcement support, and individual personnel involved in the operation of Hemisphere and

persons named in accounts of law enforcement investigations in which Hemisphere was used.

Exemption 6 authorizes withholding of information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." Id. § 552(b)(6). See U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599–600 (1982) ("[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters."). For this exemption to apply, the information at issue must be maintained in a government file and "appl[y] to a particular individual." Id. at 602. Once this threshold requirement is met, Exemption 6 requires the agency to balance the individual's right to privacy against the public's interest in disclosure. See Dep't of the Air Force v. Rose, 425 U.S. 352, 372 (1976); see also Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991).

The balancing analysis required by Exemption 6 is similar to the balancing analysis required by Exemption 7(C), which authorizes withholding of records compiled for law enforcement purposes if their release "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Case law pertaining to Exemption 7(C) therefore is sometimes germane in Exemption 6 analysis. See, e.g., Reed, 927 F.2d at 1251.

DEA properly withheld names, telephone numbers, and email addresses of individual core mission law enforcement, law enforcement support, and individual personnel involved in the operation of Hemisphere based on Exemption 6 (category 6-1, Myrick Decl. ¶ 39.a).[1] Law enforcement officers and support personnel have a substantial privacy interest in not having their identities disclosed because disclosure of their identities can expose them to threats or harassment. See, e.g., Baez v. U.S. Dep't of Justice, 647 F.2d 1328, 1339 (D.C. Cir. 1980); Lesar

---

[1] DEA is asserting Exemptions 7(C), 7(E) and 7(F) as additional bases for withholding the same information.

v. U.S. Dep't of Justice, 636 F.2d 472, 487 (D.C. Cir. 1980); Moore v. Bush, 601 F. Supp. 2d 6,

14 (D.D.C. 2009) (approving withholding of names of an FBI Special Agent and an FBI support

employee based on Exemption 6). Disclosure of these individuals' identities would not enhance

the public's understanding of how DEA performs its statutory duties. Accordingly, the DEA

properly withheld these individuals' names and contact information. See Nat'l Ass'n of Retired

Fed. Emps. v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989) (noting that privacy interests always

prevail in the Exemption 6 balancing analysis if there is no public interest in disclosure because

"something, even a modest privacy interest, outweighs nothing every time").

The DEA also properly withheld names and photographs of crime victims, crime

suspects, and the relative of a suspect under Exemption 6 (category 6-2, Myrick Decl. ¶ 39.b).[2]

These names and photographs all appeared within a set of Hemisphere "success stories"

containing accounts of law enforcement investigations in which Hemisphere was used. The D.C.

Circuit has long recognized that individuals have a substantial privacy interest in not being

named in connection with law enforcement investigations, whether as victims or suspects. E.g.,

Schrecker v. U.S. Dep't of Justice, 349 F.3d 657, 666 (D.C. Cir. 2003); SafeCard Servs., Inc. v.

SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991). Although disclosure of these individuals' identities

could contribute to understanding of how Hemisphere is used in law enforcement, the public

interest in disclosure is outweighed by the privacy interests of the named individuals. The DEA

properly withheld these individuals' names and photographs.

---

[2] DEA is asserting Exemption 7(C) as an additional basis for withholding the same information.

**D.**     **All of the materials DEA withheld are "records or information compiled for law enforcement purposes" that meet the threshold requirement of FOIA Exemption 7.**

The DEA properly withheld law enforcement materials pursuant to FOIA Exemption 7. Exemption 7 permits withholding of "records or information compiled for law enforcement purposes" meeting certain specified criteria. 5 U.S.C. § 552(b)(7). "In assessing whether records are compiled for law enforcement purposes, . . . the focus is on how and under what circumstances the requested files were compiled, and 'whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding.'" Jefferson v. Dep't of Justice, 284 F.3d 172, 176–77 (D.C. Cir. 2002) (citations omitted). The DEA, as a law enforcement agency, is entitled to deference when it identifies material as having been compiled for law enforcement purposes under Exemption 7. See Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 32 (D.C. Cir. 1999). The records at issue in this litigation were compiled for law enforcement purposes within the meaning of Exemption 7, because, as explained in the attached Decl. of Katherine L. Myrick, all the records responsive to the plaintiffs' requests were compiled to support core mission DEA law enforcement officers and employees in the course of their official duties enforcing the Controlled Substances Act, 21 U.S.C. §§ 801–971. Myrick Decl. ¶ 37.

**E.**     **DEA properly withheld individuals' names and personally identifying information under FOIA Exemption 7(C).**

The DEA properly withheld individuals' names and personally identifying information under Exemption 7(C).

Exemption 7(C) authorizes withholding of information compiled for law enforcement purposes if release of the information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). If the records at issue were compiled for law enforcement purposes, Exemption 7(C) requires the agency to balance the

relevant individual privacy rights against the public interest in disclosure. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 762 (1989); Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992). The balancing analysis is similar to the analysis conducted under Exemption 6, but the analysis under Exemption 7(C) tilts more in favor of nondisclosure. See Reporters Comm., 489 U.S. at 756 (comparing statutory language of Exemption 6 and Exemption 7(C)); Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991) (explaining similarity of Exemption 6 analysis and Exemption 7(C) analysis).

The DEA relied on Exemption 7(C) to withhold the same two categories of information that it withheld based on Exemption 6: names, telephone numbers, and email addresses of individual core mission law enforcement, law enforcement support, and individual personnel involved in the operation of Hemisphere (category 7C-1, Myrick Decl. ¶ 39.a) and names and photographs of crime victims, crime suspects, and the relative of a suspect appearing within a series of Hemisphere "success stories." (category 7C-2, Myrick Decl. ¶ 39.b) For the reasons discussed in the Declaration of Katherine L. Myrick and in the discussion of Exemption 6 in section III.C above, the individuals named or otherwise identified in the withheld materials have significant privacy interests in preventing disclosure of the information. In the case of the core mission law enforcement, law enforcement support, and personnel involved in the operation of Hemisphere, no public interest would be served by disclosure, and in the case of the individuals named in the Hemisphere case studies, the public interest in disclosure is outweighed by the individuals' privacy interests. Accordingly, disclosure of the information could reasonably be expected to constitute an unwarranted invasion of personal privacy, and the information is exempt from disclosure under Exemption 7(C).

**F.**   **DEA properly withheld information identifying private-sector companies instrumental in the operation of Hemisphere under Exemption 7(D).**

The DEA properly relied on Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), to withhold names of private-sector companies instrumental in the operation of Hemisphere, as well as information that could be used to identify those companies.

Exemption 7(D) authorizes withholding of information compiled for law enforcement purposes if release of the information "could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D). "Unlike Exemptions 6 and 7(C), Exemption 7(D) requires no balancing of public and private interests. If . . . production of criminal investigative records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished by' such a source, that ends the matter. . . ." Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1184–85 (D.C. Cir. 2011) (citation omitted). Exemption 7(D) applies if the source provided information under an express assurance of confidentiality. See id. at 1184. It also applies if the source provided information under an implied assurance of confidentiality, meaning that the source provided information under circumstances that "support the inference" of confidentiality. See id. (quoting U.S. Dep't of Justice v. Landano, 508 U.S. 165, 179 (1993)).

As explained in the Declaration of Katherine L. Myrick, the information DEA withheld under Exemption 7(D) identifies private-sector companies that are instrumental in the operation of Hemisphere and whose role in the operation of Hemisphere entails providing information to the Government (category 7D-1, Myrick Decl. ¶ 41).[3] The declaration explains, based on

---

[3] DEA is asserting Exemption 7(E) as an additional basis for withholding this information.

information from DEA personnel familiar with Hemisphere, that the companies provide information to law enforcement with the express expectation that both the source and the information will be afforded confidentiality and under circumstances where confidentiality can be inferred because providing the information can lead to retaliation against the companies. Accordingly, information that identifies the companies was properly withheld under Exemption 7(D).

**G.    DEA properly withheld information about Hemisphere and its use in law enforcement under FOIA Exemption 7(E).**

The DEA properly withheld information about Hemisphere and its use in law enforcement under Exemption 7(E).

Exemption 7(E) authorizes withholding of information compiled for law enforcement purposes if release of the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Congress intended that Exemption 7(E) protect from disclosure techniques and procedures used to prevent and protect against crimes, as well as techniques and procedures used to investigate crimes after they have been committed. See, e.g., PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 250–51 (D.C. Cir. 1993) (holding that portions of an FBI manual describing patterns of violations, investigative techniques, and sources of information available to investigators were protected by Exemption 7(E)). "[T]he exemption is written in broad and general terms" to avoid assisting lawbreakers. Mayer Brown LLP v. IRS, 562 F.3d 1190, 1193 (D.C. Cir. 2009).

The terms of the statute provide that, to withhold records that would reveal law enforcement "guidelines," an agency must show that "disclosure could reasonably be expected to

risk circumvention of the law." It is not clear whether this requirement also applies to withholding of records that would reveal "techniques and procedures." See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 746 F.3d 1082, 1102 n.8 (D.C. Cir. 2014). However, the D.C. Circuit has stressed that the risk-of-circumvention requirement sets a "low bar." Blackwell v. FBI, 646 F.3d 37, 42 (D.C. Cir. 2011); see also Mayer Brown, 562 F.3d at 1193 (noting that, read properly, the terms of the statute require only "the chance of a reasonably expected risk" of circumvention). Given the low threshold for meeting the risk-of-circumvention requirement, and given that disclosure of law enforcement techniques and procedures usually has obvious potential to create a risk of circumvention, it generally makes little practical difference whether the risk-of-circumvention requirement applies to all of Exemption 7(E) or only the part dealing with "guidelines." See Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014). In any event, in this case all of DEA's withholdings under Exemption 7(E) meet the requirement if it applies.

All of the material withheld under Exemption 7(E) in this case pertains to a single set of law enforcement techniques and procedures—Hemisphere and its use by law enforcement authorities to obtain access to telephone records in the course of law enforcement investigations. Myrick Decl. ¶ 43. The Department of Justice has publicly disclosed some general information about Hemisphere, but many details of the program have not been disclosed and remain sensitive. Myrick Decl. ¶ 43. None of the information that the DEA has withheld under Exemption 7(E) has previously been disclosed by the Department of Justice. Myrick Decl. ¶ 43. Accordingly, the information remains protected under Exemption 7(E)—the exemption applies even when the identity of the techniques has been disclosed, but the manner and circumstances

of the techniques are not generally known, or the disclosure of the details could reduce their

effectiveness. See Blanton v. U.S. Dep't of Justice, 63 F. Supp. 2d 35, 49–50 (D.D.C. 1999);

Coleman v. FBI, 13 F. Supp. 2d 75, 83 (D.D.C. 1998). Also, while Hemisphere has attracted

media attention, along with public discussion and speculation, that does not affect the

applicability of Exemption 7(E). See Muslim Advocates v. U.S. Dep't of Justice, 833 F. Supp. 2d

92, 104 (D.D.C. 2011) (holding that limited disclosure of withheld material outside law

enforcement and news articles purportedly discussing law enforcement techniques did not

prevent application of 7(E)).

For purposes of further describing the information withheld, DEA divided the

information into eleven categories, all of which fall squarely within the protection of Exemption

7(E).

First, DEA withheld telephone and fax numbers and email addresses associated with the

Hemisphere program, which could be used to disrupt law enforcement operations or obtain

unauthorized access to information about such operations (category 7E-1, Myrick Decl. ¶ 45.a).

Courts have recognized that such information falls within the protection of Exemption 7(E). See,

e.g., Ortiz v. U.S. Dep't of Justice, Civil Action No. 12-1674(TFH), 2014 WL 4449686, at *8

(D.D.C. Sept. 9, 2014) (finding that DEA telephone numbers were properly withheld under

Exemption 7(E) because they could be used to disrupt DEA activities in various ways); Light v.

Dep't of Justice, 968 F. Supp. 2d 11, 29 (D.D.C. 2013) (internal FBI telephone numbers and Web

site addresses); Jewett v. U.S. Dep't of State, Civil Action No. 11-cv-1852 (RLW), 2013 WL

550077, at *9 (D.D.C. Jan. 14, 2013) (FBI and DEA Web sites and email addresses).

DEA also withheld the names, telephone numbers, and email addresses of individual core

mission law enforcement, law enforcement support, and individual personnel involved in the

operation of Hemisphere (category 7E-8, Myrick Decl. ¶ 45.h).[4] Disclosure of these individuals' names and contact information could create the same risks as disclosure of contact information not associated with particular individuals. It could additionally expose these individuals to threats or facilitate efforts to impersonate these individuals or their contacts. Myrick Decl. ¶ 45.h.

DEA also withheld information naming or otherwise identifying private-sector companies that are instrumental in the operation of Hemisphere (category 7E-6, Myrick Decl. ¶ 45.f). Criminals could use this information to evade detection or disrupt Hemisphere's operations. Myrick Decl. ¶ 45.f.

DEA withheld details about how Hemisphere works and the specific capabilities and limitations of Hemisphere (category 7E-3, Myrick Decl. ¶ 45.c). Disclosing information about the technical workings, capabilities, and limitations of law enforcement tools and methods obviously increases the risk that criminals will be able to evade or compromise those tools and methods. See, e.g., Blackwell, 646 F.3d at 42 (upholding application of Exemption 7(E) to "'details about procedures used during the forensic examination of a computer' by an FBI forensic examiner"); Soghoian v. U.S. Dep't of Justice, 885 F. Supp. 2d 62, 75 (D.D.C. 2012) (upholding withholding of details of electronic surveillance methods and observing that "[k]nowing what information is collected, how it is collected, and more importantly, when it is not collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection"); Kurdyukov v. U.S. Coast Guard, 657 F. Supp. 2d 248, 257 (D.D.C. 2009) ("law enforcement surveillance, methods, and tactics"); Boyd v. Bureau of

---

[4] DEA is asserting Exemptions 6, 7(C), and 7(F) as additional bases for withholding the same information.

Alcohol, Tobacco, Firearms & Explosives, 570 F. Supp. 2d 156, 158–59 (D.D.C. 2008) ("method of installing monitoring equipment").

DEA also withheld details of internal procedures and guidelines for making Hemisphere requests or otherwise using Hemisphere, including parts of a form used to make Hemisphere requests, sample text for completing request forms, associated subpoenas, and other documents used in connection with Hemisphere requests (category 7E-2, Myrick Decl. ¶ 45.b). Courts have consistently upheld withholding of this type of procedural information, since its disclosure can be helpful to criminals seeking to avoid apprehension. See, e.g., Miller v. U.S. Dep't of Justice, 562 F. Supp. 2d 82, 124 (D.D.C. 2008) (upholding application of Exemption 7(E) to a blank law enforcement form based on the risk that information about "the exact nature and type of information" requested on the form could help criminals avoid detection); PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (FBI manual containing details of law enforcement techniques, including "restrictions for the employment of" a law enforcement technique);

DEA also withheld details regarding how Hemisphere requests are routed and processed and how resources are organized and deployed, including the specific terminology used to refer to certain Hemisphere resources and personnel. (category 7E-4, Myrick Decl. ¶ 45.d). Courts have approved withholding of this type of administrative and organizational information in light of its potential to aid criminals seeking to evade law enforcement. See, e.g., Vazquez v. U.S. Dep't of Justice, 887 F. Supp. 2d 114, 118 (D.D.C. 2012) (upholding application of Exemption 7(E) to information about queries of a law-enforcement database, including information about "how they are executed . . . and who has authorization to run such queries"); Skinner v. U.S. Dep't of Justice, 744 F. Supp. 2d 185, 214 (D.D.C. 2010) (information regarding the "timing of certain actions and the placement of certain agency resources in the implementation" of a law

enforcement technique"); <u>Gilman v. U.S. Dep't of Homeland Sec.</u>, Civil Action No. 09-0468

(BAH), 2014 WL 984309, at *11 (D.D.C. Mar. 14, 2014) (information that could identify "areas

patrolled by fewer agents" and information regarding "assignment coverage"); <u>Pons v. U.S.</u>

<u>Customs Serv.</u>, Civ. No. 93-2094 (TFH), Civ. No. 93-2189 (TFH), 1998 U.S. Dist. LEXIS 6084,

at *20 (D.D.C. Apr. 23, 1998) ("information that concerns the cooperative arrangements between

Customs and other law enforcement agencies").

The same potential dangers justify DEA's decision to withhold details of how

Hemisphere requests are prioritized and the implications of that prioritization for the handling of

requests (category 7E-9, Myrick Decl. ¶ 45.i). <u>See, e.g.</u>, <u>Light</u>, 968 F. Supp. 2d at 29 (upholding

application of Exemption 7(E) to withhold information that "might reveal investigative interests

and priorities"); <u>Skinner</u>, 744 F. Supp. 2d at 214 (information regarding the "timing of certain

actions and the placement of certain agency resources in the implementation" of a law

enforcement technique"); <u>Ortiz</u>, 2014 WL 4449686, at *8 (information that could be used to

"identify priority given to narcotic investigations").

DEA also withheld details about how Hemisphere results and output are delivered to and

presented to law enforcement, including sample results displays (category 7E-7, Myrick Decl.

¶ 45.g). Courts have approved withholding of such material in numerous cases. For example, in

<u>Blackwell v. FBI</u>, 646 F.3d 42 (D.C. Cir. 2011), the D.C. Circuit upheld the FBI's withholding of

information under Exemption 7(E) to protect "methods of data collection, organization and

presentation contained in ChoicePoint reports." <u>Id.</u> at 42. As explained in the district court's

opinion in that case, "ChoicePoint is a subscription database used by the FBI" that "contains

information derived from public sources." <u>Blackwell v. FBI</u>, 680 F. Supp. 2d 79, 92 (D.D.C.

2010), <u>aff'd</u>, 646 F.3d 42 (D.C. Cir. 2011). The D.C. Circuit noted that the FBI's declaration

explained that "the manner in which the data is searched, organized and reported to the FBI is an internal technique, not known to the public," and that the "method was developed by ChoicePoint to meet the specific investigative needs of the FBI." Blackwell, 646 F.3d at 42. It accepted the FBI's explanation that disclosure of details about the manner in which FBI received data could help criminals avoid detection. Id. Similarly, disclosure of details about the manner in which Hemisphere results are reported to law enforcement could help criminals avoid detection. See also Concepcion v. U.S. Customs & Border Prot., 907 F. Supp. 2d 133, 142–43 (D.D.C. 2012) (upholding application of Exemption 7(E) to database query results); Skinner v. U.S. Dep't of Justice, 806 F. Supp. 2d 105, 115–16 (D.D.C. 2011) (upholding application of Exemption 7(E) to a screen printout of output from a law enforcement database).

DEA also withheld information that could reveal what specific law enforcement agencies have access to Hemisphere apart from DEA, whose use of Hemisphere has been publicly confirmed (category 7E-5, Myrick Decl. ¶ 45.e). Because every law enforcement agency has its own individual focus and sphere of authority, knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor or adapt their activities to evade apprehension. Myrick Decl. ¶ 45.e. See, e.g., Light, 968 F. Supp. 2d at 29 (upholding application of Exemption 7(E) to withhold information regarding the identity and expertise of investigating law enforcement units); Pons, 1998 U.S. Dist. LEXIS 6084, at *20 ("information that concerns the cooperative arrangements between Customs and other law enforcement agencies").

DEA also withheld five pages containing "success stories" detailing how Hemisphere was used in actual law enforcement investigations and explaining the role played by Hemisphere in each investigation. (category 7E-10, Myrick Decl. ¶ 45.j). Many courts have held that case studies of this kind are protected under Exemption 7(E). In Weisberg v. U.S. Dep't of Justice,

745 F.2d 1476, 1492 n.27 (D.C. Cir. 1984), the D.C. Circuit noted that release of information

about use of a "particular technique, in the context of [a] particular investigation, would

obviously undermine its use in other similar circumstances." And judges of this Court have

repeatedly upheld withholding of FBI rating forms that report the "specific investigative

assistance or techniques" used in a particular case and investigators' "assessments of the

effectiveness of each technique/assistance used in bringing the investigation to a successful

conclusion." Boehm v. FBI, 948 F. Supp. 2d 9, 35 (D.D.C. 2013); Rosenberg v. U.S. Dep't of

Immigration & Customs Enforcement, 959 F. Supp. 2d 61, 80 (D.D.C. 2013); see also Boehm,

948 F. Supp. 2d at 35 (citing six similar rulings of this Court). The Court has recognized in these

cases that information about "which investigative techniques the FBI employs . . . and how

effective the FBI believes those techniques to be" could be used by criminals to "change their

activities and modus operandi in order to avoid detection and/or surveillance in the future."

Rosenberg, 959 F. Supp. 2d at 80; see also Hall v. U.S. Dep't of Justice, Civil Action No.

87-0474, 1989 U.S. Dist. LEXIS 19068, at *17–18 (D.D.C. Mar. 8, 1989) (Dwyer, Mag. J.)

(explaining that Exemption 7(E) can properly be asserted to protect information about how law

enforcement techniques are "employed in conjunction with other investigative techniques" and

that the "totality of procedures involved in an investigation" can itself be considered a law

enforcement technique).

    Finally, DEA invoked Exemption 7(E) to withhold documents detailing the means

through which Hemisphere secures the cooperation of entities instrumental to Hemisphere's

operations, and references to those documents (category 7E-11, Myrick Decl. ¶ 45.k). Disclosure

of the documents, any meaningful parts of the documents, or references to the documents would

reveal this means of securing cooperation and could reasonably be expected to lead to disruption

of the means of securing cooperation. Describing this risk more specifically would entail revealing the information withheld.

**H.     DEA properly withheld individuals' names and contact information under FOIA Exemption 7(F).**

DEA properly withheld names, telephone numbers, and email addresses of individual core mission law enforcement, law enforcement support, and individual personnel involved in the operation of Hemisphere under FOIA Exemption 7(F).[5]

FOIA Exemption 7(F) authorizes withholding of information compiled for law enforcement purposes if release of the information "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(F). "That language is very broad. . . . Disclosure need not <u>definitely</u> endanger life or physical safety; a reasonable expectation of endangerment suffices." <u>Pub. Emps. for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico</u>, 740 F.3d 195, 205 (D.C. Cir. 2014). Exemption 7(F) is like Exemptions 7(D) and 7(E) in that it provides an "absolute" exemption from withholding, unlike Exemption 7(C), which requires balancing private interests against public interests. <u>Raulerson v. Ashcroft</u>, 271 F. Supp. 2d 17, 29 (D.D.C. 2002).

Exemption 7(F) provides broad protection for the identities of law enforcement officers and related personnel. <u>Blanton v. U.S. Dep't of Justice</u>, 182 F. Supp. 2d 81, 87 (D.D.C. 2002). DEA properly employed Exemption 7(F) to protect the safety of individual personnel involved in the operation of Hemisphere, who could be exposed to threats if their identities were disclosed.

---

[5] DEA is asserting Exemptions 6, 7(C), and 7(E) as additional bases for withholding the same information.

## **CONCLUSION**

Because DEA conducted a reasonable search, processed and released all reasonably segregable information, and withheld information only where authorized by a statutory exemption, the Court should grant summary judgment in favor of DEA.

Date: September 29, 2014                    Respectfully submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

JOHN R. TYLER
Assistant Branch Director

/s/ JAMES C. LUH
JAMES C. LUH
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorneys for Defendant