# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ ) | | |
| ELECTRONIC PRIVACY ) | | |
| INFORMATION CENTER ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | No. 1:14-cv-00317 (EGS) | |
| ) | | |
| DRUG ENFORCEMENT ) | | |
| ADMINISTRATION ) | | |
| ) | | |
| Defendant. ) | | |
| _____ ) | | |

## MEMORANDUM

## IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**INTRODUCTION** ................................................................................................. 7

**FACTUAL AND PROCEDURAL BACKGROUND** ............................................. 7

**STANDARD OF REVIEW** ................................................................................. 10

**ARGUMENT** ...................................................................................................... 11

    **I.** The Agency Has Failed to Meet its Burden to Justify Exemptions ..................................... 11

        **A.** The Agency Has Not Described Withheld Records in Sufficient Detail
to Satisfy FOIA ............................................................................................... 11

        **B.** The Agency Has Failed to Justify Its Use of the "Categorical" Approach to
Asserting Exemptions ...................................................................................... 14

        **C.** DHS Has Failed to Segregate and Release Non-Exempt Portions of Records...... 19

        **D.** DHS Has Failed to Conduct a Sufficient Search for Responsive Records ........... 21

    **II.** DEA Has Unlawfully Exempted Records Under Exemptions 5, 7(D), and 7(E) .............. 23

        **A.** DEA Has Unlawfully Withheld Hemisphere Documents Under Exemption 5
Because Such Records Would Not Normally Be Privileged In the Context of Civil
Discovery ........................................................................................................ 23

        **B.** DEA May Not Withhold the Names of Cooperating Companies Under Exemption
7(D) or Exemption 7(E) .................................................................................. 26

        **C.** DEA May Not Withhold Documents Detailing the Means Through Which the
Agency Secures Cooperation .......................................................................... 31

        **D.** DEA May Not Withhold the Names of Agencies Under Exemption 7(E) ........... 36

        **E.** Revealing the Names of Agencies with Access to Hemisphere Would Not Reveal
"Techniques and Procedures for Law Enforcement Investigations or Prosecutions" or
"Guidelines for Law Enforcement Investigations or Prosecutions" .......................... 37

**CONCLUSION** ................................................................................................... 39

## Cases

*Allard K. Lowenstein Intern. Human Rights Project v. DHS,*
   626 F.3d 678 (2nd Cir. 2010) ........................................................................ 35

*Ancient Coin Collectors Guild v. U.S. Dep't of State,*
   641 F.3d 504 (D.C. Cir. 2011) ...................................................................... 23

*Arthur Andersen & Co. v. IRS.,*
   679 F.2d 254 (D.C.Cir.1982). ...................................................................... 25

*Assassination Archives & Research Ctr. v. CIA,*
   334 F.3d 55 (D.C. Cir. 2003) ....................................................................... 12

*Blackwell v. FBI,*
   646 F.3d 37 (D.C.Cir.2011) ................................................................... passim

*Blanton v. DOJ,*
   63 F.Supp.2d 35, 49 (D.D.C.1999) ............................................................. 38

*Boyd v. Criminal Div. of U.S. Dep't of Justice,*
   475 F.3d 381 (D.C. Cir. 2007) ..................................................................... 29

*Campbell v. DOJ,*
   164 F.3d 20 (D.C.Cir.1998) .......................................................... 18, 29, 33

*Carter v. United States Dep't of Commerce,*
   830 F.2d 388 (D.C.Cir.1987) ...................................................................... 38

*Chesapeake Bay Found. v. U.S. Army Corps. of Eng'rs.,*
   677 F. Supp. 2d 101 (D.D.C. 2009) ............................................................ 22

*Citizens for Responsibility & Ethics in Washington v. DOJ,*
   No. CV 11-1021 (JEB), 2014 WL 2604640 (D.D.C. June 11, 2014) .................... 27

*Citizens For Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin.,*
   583 F. Supp. 2d 146 (D.D.C. 2008) ............................................................ 26

*Citizens for Responsibility and Ethics in Washington v. DOJ,*
   746 F.3d 1082 (D.C. Cir. 2014) ........................................... 11,12, 25, 26

*Computer Prof'ls for Soc. Responsibility v. Secret Serv.,*
   72 F.3d 897 (D.C.Cir.1996) ........................................................................ 18

*Consumers Union of United States, Inc. v. Heimann,*

589 F.2d 531 (D.C. Cir. 1978) .......................................................................... 35

*Davin v. DOJ,*
   60 F.3d 1043 (3d Cir. 1995)........................................................................... 29

*Defenders of Wildlife v. U.S. Border Patrol,*
   623 F. Supp. 2d 83 (D.D.C. 2009) ............................................................. 12, 15

*Defenders of Wildlife v. USDA,*
   311 F. Supp. 2d 44 (D.D.C. 2004) ................................................................... 25

*Dep't of Interior v. Klamath Water Users Protective Ass'n,*
   532 U.S. 1 (2001) ............................................................................................. 24

*Dep't of State v. Ray,*
   502 U.S. 164 (1991) .................................................................................... 11, 15

*DOJ v. Landano,*
   508 U.S. 165 (1993) ........................................................... 12, 17, 18, 28, 29

*EPIC v. DHS,*
   384 F. Supp. 2d 100 (D.D.C. 2005) ....................................................... 12, 14, 15

*EPIC v. DHS,*
   999 F. Supp. 2d 24 (D.D.C. 2013) ................................................................... 11

*EPIC v. DOJ,*
   511 F. Supp. 2d 56 (D.D.C. 2007) ................................................................... 11

*EPIC v. NSA,*
   678 F.3d 926 (D.C. Cir. 2012) ........................................................................ 21

*Exxon Corp. v. Dep't of Energy,*
   585 F. Supp. 690 (D.D.C. 1983) ................................................................. 25, 26

*Ferranti v. Bureau of Alcohol, Tobacco & Firearms,*
   177 F. Supp. 2d 41 (D.D.C. 2001) ................................................................... 14

*Founding Church of Scientology of Washington, D.C., Inc. v. Bell,*
   603 F.2d 945 (D.C. Cir. 1979) ........................................................................ 14

*Gallant v. NLRB,*
   26 F.3d 168 (D.C. Cir. 1994) ..................................................................... 15, 16

*Hall v. DOJ,*
   552 F.Supp.2d 23, 27 (D.D.C.2008) ........................................................... 13, 15

4

*Hinton v. DOJ,*
   844 F.2d 126 (3d Cir. 1988) .................................................................. 15

*Hodge v. FBI,*
   703 F.3d 575 (D.C. Cir. 2013) ............................................................... 22

*In Def. of Animals v. NIH,*
   543 F. Supp. 2d 83 (D.D.C. 2008) ......................................................... 22

*Jefferson v. Dep't of Justice, Office of Prof'l Responsibility,*
   284 F.3d 172 (D.C. Cir. 2002) ............................................................... 33

*Judicial Watch, Inc. v. FDA,*
   449 F.3d 141 (D.C.Cir. 2006) ...................................................... 13, 15, 24

*Judicial Watch, Inc. v. USPS,*
   297 F.Supp.2d 252 (D.D.C.2004) ................................................ 25, 26, 29

*King v. DOJ,*
   830 F.2d 210 (D.C.Cir. 1987) ................................................. 13, 14, 15, 28

*Light v. DOJ,*
   968 F. Supp. 2d 11, 29 (D.D.C. 2013) ................................................... 39

*Mayer Brown LLP v. IRS,*
   562 F.3d 1190 (D.C. Cir. 2009) ...................................................... passim

*Mayer, Brown, Rowe & Maw LLP v. IRS.,*
   537 F. Supp. 2d 128 (D.D.C. 2008) ....................................................... 25

*McCready v. Nicholson,*
   465 F.3d 1  (D.C. Cir. 2006) ........................................................... 23, 24

*Mead Data Cent., Inc. v. Dep't of Air Force,*
   566 F.2d 242 (D.C. Cir. 1977) .................................... 13, 15, 21, 26, 29
*Milner v. Dep't of the Navy,*
   131 S. Ct. 1259 (2011) ............................................................. 11, 12, 34

*Morley v. CIA,*
   508 F.3d 1108 (D.C. Cir. 2007) ............................................................ 13

*Nat'l Ass'n of Home Builders v. Norton,*
   309 F.3d 26 (D.C. Cir. 2002) ................................................................ 12

*Nation Magazine v. U.S. Customs Serv.,*
   71 F.3d 885 (D.C. Cir.1995) ................................................................ 16

*Oglesby v. U.S. Dep't of Army*,
  920 F.2d 57 (D.C. Cir. 1990) .................................................................. 23

*Oglesby v. U.S. Dep't of the Army*,
  79 F.3d 1172 (D.C. Cir. 1996) ........................................... 13, 14, 15, 21

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ............................................................... 23

*Pub. Citizen, Inc. v. Office of Mgmt. & Budget*,
  598 F.3d 865, 869 (D.C. Cir. 2010) ...................................................... 11

*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*,
  533 F.3d 810 (D.C. Cir. 2008) ............................................................... 11

*Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n*,
  *U.S.-Mexico*, 740 F.3d 195 (D.C. Cir. 2014) ....................... 34, 35, 36, 37

*Public Investors Arbitration Bar Association v. S.E.C.*,
  — F.3d —, No. 13-5137, 2014 WL 5904725 (D.C. Cir. Nov. 14, 2014) .............................. 35

*Quinon v. FBI*,
  86 F.3d 1222, 1229 (D.C. Cir.1996). ................................................ 33, 34

*Roth v. DOJ*,
  642 F.3d 1161 (D.C. Cir. 2011) ................................................ 18, 19, 21

*Summers v. DOJ*,
  140 F.3d 1077 (D.C. Cir. 1998) .......................................................... 13, 15

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*,
  177 F.3d 1022 (D.C. Cir. 1999) ............................................................. 21

*U.S. Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ................................................................................ 11

*Utahamerican Energy, Inc. v. Mine Safety & Health Admin.*,
  725 F. Supp. 2d 78 (D.D.C. 2010) ........................................................ 23

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) .......................................................... 22, 23

*Vaughn v. Rosen*,
  484 F.2d 820 (D.C. Cir. 1973) .......................................................... 13, 15

## INTRODUCTION

This case concerns the failure of the Drug Enforcement Agency ("DEA") to provide agency records, including the legal justification, to the Electronic Privacy Information Center ("EPIC") about the "Hemisphere" database, perhaps the most massive collection of telephone records by any federal agency. The DEA has failed to provide records responsive to EPIC's Freedom of Information Act ("FOIA") request. The agency failed to conduct a sufficient search and failed to conduct an adequate segregability analysis,. The agency improperly asserted "categorical exemptions."  Finally, the agency improperly relied on exemptions 5 and 7 to withhold responsive records that should be disclosed. For these reasons, as explained in detail below, DEA should be denied summary judgment, and EPIC should be granted partial summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 25, 2013, EPIC submitted, via certified mail, a FOIA request to the DEA seeking records regarding the Hemisphere program. *See* EPIC FOIA Request, Exhibit 1. Hemisphere is a database, maintained by AT&T, containing decades of American phone call records routinely accessed by law enforcement officers. A front-page story in *The New York Times* raised substantial questions about the legal basis for the program. [1] In the FOIA request, Given the concurrent policy debate about domestic surveillance, EPIC explained that there is a particular urgency to provide information to the public about the Hemisphere program,. EPIC requested information regarding the operations and legal basis for the Hemisphere collection

---

[1] Scott Shane and Colin Moynihan, *Drug Agents Use Vast Phone Trove, Eclipsing N.S.A.'s*, New York Times, Sept. 1, 2013,  at A1, *available at* http://www.nytimes.com/2013/09/02/us/drug-agents-use-vast-phone-trove-eclipsing-nsas.html

program. Specifically, EPIC requested:

> (1) All Hemisphere training modules, request forms, and similar final guidance
> documents that are used in the day-to-day operation of the program;
>
> (2) Any analyses, memos, opinions, or other communications that discuss  the legal basis
> of the program;
>
> (3) Any analyses, memos, opinions, or other communications that discuss the privacy
> impact of the program; and
>
> (4) Any presentations, analyses, memos, opinions or other communications for Congress
> that cover Hemisphere's operations.

On October 25, 2013, EPIC received a letter from DEA, signed by Katherine Myrick,

Chief Freedom of Information/Privacy Act Unit. The letter, dated October 24, 2013, confirmed

receipt of EPIC's FOIA Request and assigned EPIC's FOIA Request the case number 14-00009-

F. On November 4, 2013, EPIC received a letter from DEA, signed by Katherine Myrick. The

letter, dated October 30, 2013, denied EPIC's request for expedited processing.

On November 14, 2013, EPIC received a letter from DEA, signed by Katherine Myrick,

by mail. In the letter, dated November 13, 2013, the agency claimed that EPIC needed to revise

its request or the agency would administratively close the requesr. To facilitate the agency

processing of the request, the Coordinator of the EPIC Open Government Project contacted

FOIA Specialist Josh Delo on November 15, 2013. Mr. Delo stated that unless EPIC identified

the specific offices to be searched, the agency would not process the request. Though neither the

Freedom of Information Act nor the agency's regulations authorize the agency to close requests

under such circumstances, EPIC agreed to revise the FOIA request to assist the agency in

fulfilling its statutory obligations.[2]

On November 15, 2013, EPIC sent, via certified mail, a revised request specifying that the DEA should search its Headquarters and DEA division offices in Atlanta, Houston, Los Angeles, and Washington, D.C. According to the United States Postal Service certified mail tracker, the DEA headquarters received EPIC's revised request on November 18, 2013. However, DEA failed to make a determination with respect to EPIC's appeal within twenty business days, as required by the FOIA.

On February 26, 2014, EPIC filed this lawsuit under the FOIA, 5 U.S.C. § 552. *See* Compl., Dkt. 1. The DEA served its Answer on April 7, 2014. Ans., Dkt. 7. On July 23, 2014, DEA provided EPIC with its first document production, containing 319 almost entirely redacted or blank pages. To justify its redactions, DEA invoked exemptions 5, 6, 7(A), 7(C), 7(D), 7(E), and 7(F). DEA did not send EPIC a Vaughn index or other specific explanation of its redactions, but instead checked off the boxes on a form sheet that corresponded to claimed FOIA exemptions.

On September 29, 2014, DEA filed its motion for summary judgment with an accompanying declaration by Katherine Myrick. Def. Mot. Summ. J, Def. Decl. Dkt. 15-3 (hereinafter "Def. Decl."). In an exhibit attached to the motion, the agency also released an additional 4 pages of records. EPIC now opposes the government's motion for summary

---

[2] The Department of Justice FOIA regulations specify, "You may make a request for records of the Department of Justice by writing directly to the Department component that maintains those records." 28 U.S.C. § 552(a). The regulations permit the agency to require the requester to "describe the records in enough detail to enable department personnel to locate them with a reasonable amount of effort," but do not permit the agency to require that the requester already know which subcomponents or offices contain the records sought. 28 U.S.C. § 552(b).

judgment with respect to exemptions 5, 7(D), and 7(E), and cross-moves for summary judgment.

## STANDARD OF REVIEW

The FOIA was enacted "to facilitate public access to Government documents" and "was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) [hereinafter *CREW*] (quoting *Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)). The underlying purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *EPIC v. DHS*, 999 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "In enacting FOIA, Congress struck the balance it thought right—generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011).

The FOIA's ""a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language," *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010) (citing *U.S. Dep't of Air Force v. Rose*, 425 U.S. 352, 360- 61 (1976)). FOIA was meant to be a "disclosure statute," not a "withholding statute." *Milner*, 131 S. Ct. at 1262, and thus the law "mandates a strong presumption in favor of disclosure." *EPIC v. DOJ*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

The FOIA includes exemptions from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n,* 533 F.3d 810, 813 (D.C. Cir. 2008) (quoting *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C. Cir. 2002)) (internal quotation marks omitted).

Therefore FOIA exemptions "must be narrowly construed." *Id*. "The statute's goal is broad disclosure, and the exemptions must be given a narrow compass." *Milner*, 131 S. Ct. at 1261 (internal citations omitted). Furthermore, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. DHS*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005). Where the government has not carried this burden, summary judgment in favor of the Plaintiff is appropriate. *Assassination Archives & Research Ctr. v. CIA,* 334 F.3d 55, 57 (D.C. Cir. 2003).

## ARGUMENT

### I. The Agency Has Failed to Meet its Burden to Justify Exemptions

Along with its motion for summary judgment, the agency provided a declaration from Katherine L. Myrick, its Chief FOIA Officer, which purports to justify the agency's withholdings. However, the agency's explanations are impermissibly conclusory and vague. Further, the agency does not explain its redactions on a "document-by-document" basis, which is generally required. Instead, it explains its redactions on a "categorical" basis, which is reserved for particular types of affidavits. The categorical approach is inappropriate here.

### A. The Agency Has Not Described Withheld Records in Sufficient Detail to Satisfy to FOIA

In a FOIA matter, The Government bears the burden of establishing that the exemption applies." *DOJ v. Landano*, 508 U.S. 165, 171 (1993). To enable the Court to determine whether documents properly were withheld, the agency must provide a detailed description of the information withheld through the submission of a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009); *see also Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1178 (D.C. Cir. 1996); *Vaughn v. Rosen,* 484 F.2d 820, 827-28 (D.C. Cir. 1973). The *Vaughn* Index and/or

accompanying affidavits or declarations must "provide[ ] a relatively detailed justification, specifically identif[y] the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of a withheld document to which they apply." *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 146 (D.C. Cir. 2006) (quoting *Mead Data Cent., Inc. v. Dep't of the Air Force,* 566 F.2d 242, 251 (D.C. Cir. 1977)).

As DEA explained in its motion for summary judgment, "[t]o sustain its burden of justifying nondisclosure of information, *see* § 552(a)(4)(B), the agency must provide declarations that identify the information at issue and the bases for the exemptions claimed. *See Summers v. DOJ*, 140 F.3d 1077, 1080 (D.C. Cir. 1998)." Def. Mot. Summ. J. 5-6. While there is no set form for a Vaughn Index, the agency should "disclose as much information as possible without thwarting the exemption's purpose." *Defenders of Wildlife*, 623 F. Supp. 2d at 88; *see also Hall v. DOJ,* 552 F.Supp.2d 23, 27 (D.D.C.2008) (quoting *King v. DOJ,* 830 F.2d 210, 224 (D.C. Cir. 1987) ).

Further, "An agency may not claim exemptions too broadly, thereby sweeping unprotected information within the statute's reach." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006). Moreover, the agency's justification for withholding records must not be merely "[c]onclusory and generalized  allegations of exemptions." *Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007). *See also Oglesby*, 79 F.3d at 1178. The index is meant to allow the court and FOIA plaintiff to "locate specific areas of dispute" and assist judicial review. *Ray*, 587 F.2d at 1192. At the very least, a *Vaughn* index must 1) "be contained in one document", 2) "adequately describe each withheld document or deletion", and 3) "state the exemption claimed for each deletion or withheld document, and explain why the exemption is relevant."

*Founding Church of Scientology of Washington, D. C., Inc. v. Bell*, 603 F.2d 945, 949 (D.C. Cir. 1979). The supporting "declarations must be clear, specific and adequately detailed; they must describe the withheld information and the reason for nondisclosure in a factual and non-conclusory manner; and they must be submitted in good faith." *Ferranti v. Bureau of Alcohol, Tobacco & Firearms*, 177 F. Supp. 2d 41, 45 (D.D.C. 2001). However, "Categorical description of redacted material coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate." *King*, 830 F.2d at 224.

Summary judgment is appropriate only if the agency has adequately met the requirements for a sufficient Vaughn index. "A court cannot grant summary judgment unless the defendant's Vaughn index provides a detailed description of the withheld information, the exemption claimed for withholding the information, and the reasons supporting the application of the exemption to the withheld material." *EPIC*, 384 F.Supp.2d at 109. "Agency statements in the Vaughn index cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" *Id*. (quoting *Oglesby*, 79 F.3d at 1176).

The DEA has failed to produce documentation that provides proper justification for its withholdings. The agency has included no *Vaughn* index in its filings. Instead, it appears to rely on Ms. Myrick's declaration alone. This declaration contains nothing more than boilerplate, conclusory statements. In many cases it "merely recites the statutory standards" with almost no detail or analysis of the purportedly exempt document. *See Oglesby*, 79 F.3d at 1176. In fact, the same insufficient, generalized justification, that disclosure could "help criminals tailor or adapt their activities to avoid apprehension," is used to explain eight out of the eleven document categories being withheld under Exemption 7(E). Myrick Declaration at 16-19. These boilerplate

13

justifications do not meet the legal requirements of the FOIA. *Defenders of Wildlife,* 623 F. Supp. 2d at 89-90 (holding that the agency's bare assertion that information should be withheld because it "would disclose techniques and procedures for enforcement investigations and prosecutions and release of this information would risk circumvention," did not provide the Court a sufficient basis to uphold the agency's withholdings). It is inappropriate to grant DEA's motion for summary judgment because DEA fails to meet its burden to enable the requesters and the court "to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt." *Hinton v. DOJ*, 844 F.2d 126, 129 (3d Cir. 1988).

**B. The Agency Has Failed to Justify Its Use of the "Categorical" Approach to Asserting Exemptions**

Because the agency bears the burden of showing that its claimed exemptions are permissible, the agency typically must "justify its withholdings document-by-document," so "that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure." *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994); *Hinton*, 844 F.2d at 129.

**i) The Categorical Approach Is Only Appropriate Where Document-by-Document Analysis Would Reveal the Information that FOIA Seeks to Protect**

In rare instances, the agency may justify exemptions based on the category of document, but only where any further explanation would thwart the purpose of the FOIA. "At times, the FOIA litigation process threatens to reveal 'the very information the agency hopes to protect' and therefore it may be necessary for the agency affidavit to contain only 'brief or categorical descriptions' of the withheld information." *CREW*, 746 F.3d at 1088 (citing *ACLU v. CIA*, 710 F.3d 422 (D.C. Cir. 2013)). In those cases only, an agency may justify its withholdings "category-of-document by category-of-document, so long as its definitions of relevant categories

14

are sufficiently distinct to allow a court to determine whether the specific claimed exemptions are properly applied." *Gallant*, 26 F.3d at 173; *CREW*, 746 F.3d at 1088. "Categorical treatment, however, may be used '[o]nly when the range of circumstances included in the category "characteristically support[s] an inference" that the statutory requirements for exemption are satisfied.'" *CREW*, 746 F.3d at 1088-89 (citing *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 893 (D.C. Cir. 1995)).

The Supreme Court and the D.C. Circuit have clarified that the "range of circumstances" that justify categorical withholdings is limited to those where the *fact of the particularized justification* would counteract the exemption asserted. For example, where a FOIA request sought the criminal records of specific individuals, the agency was permitted to issue a categorical assertion of 7(C), along with a "Glomar" statement neither confirming nor denying the existence of those records. The D.C. Circuit explained that "rules exempting certain categories of records from disclosure are sometimes permitted . . . . There are limits, though, to when categorical rules may be employed." In the case of the records withheld under 7(C), "a Glomar response may be issued in place of a statement acknowledging the existence of responsive records but withholding them, if confirming or denying the existence of the records would associate the individual named in the request with criminal activity." *Nation Magazine*, 71 F.3d at 893. The agency has failed to demonstrate that such circumstances exist here.

### ii) The Agency Bears the Burden of Proving the Necessity of Using the Categorical Approach

Where the agency uses a categorical approach to justify its exemptions, it must demonstrate both that the asserted exemption is appropriate *and* that the use of the categorical approach is justified. Thus, in *DOJ v. Landano,* the Supreme Court ruled that the agency had not sufficiently demonstrated the necessity of using a categorical rule to justify its 7(D)

withholdings. 508 U.S. at 165.  In *Landano*, the FBI responded to a request for records about confidential informants by asserting a categorical 7(D) exemption. The FBI asserted "that an assurance of confidentiality can be inferred whenever an individual source communicates with the FBI because of the risk of reprisal or other negative attention inherent in criminal investigations" and suggesting "that private institutions might be subject to "possible legal action or loss of business" if their cooperation with the Bureau became publicly known." *Id*. at 176. The Court rejected this position as "conclusory." *Id*. The Court explained that the FBI's use of a categorical rule would be an exception to the requirements of the FOIA, and that "the Government offers no persuasive evidence that Congress intended for the Bureau to be able to satisfy its burden in every instance simply by asserting that a source communicated with the Bureau during the course of a criminal investigation." *Id*. at 178.

### iii) DEA Has Not Justified Its Use of the Categorical Approach for Exemptions 7(D) and 7(E)

The Myrick declaration claims categorical exemptions for its 7(D) and 7(E) redactions without offering any proof or evidence that the categorical approach is warranted. The Myrick declaration is organized by exemption claimed, rather than by document withheld. Def. Decl., 10-20. Within each category of exemption, the agency simply recites the statutory standard for withholding records. However, the recent *CREW* case has made clear that the agency must produce probative evidence to justify use of the categorical approach for exemptions 7(D) and 7(E). *See CREW*, 746 F.3d 1082. DEA's declaration does not meet the requirements established in *CREW*, and the agency has therefore failed to meet its burden under the FOIA. *See id.*

DEA's categorical 7(D) exemptions mirror those rejected in *CREW*. In that case, the DOJ claimed a categorical 7(D) exemption for all records related to confidential informants. *CREW*, 746 F.3d 1082. The agency attempted to justify the categorical approach by stating, "without

16

specific explanation, that all of its sources 'were interviewed either under express confidentiality and/or under circumstances from which an assurance of confidentiality may be implied." *Id*. at 1101. However, the Court ruled that the agency did not prove the necessity of categorical exemptions by simply citing the statutory standard. "To invoke Exemption 7(D) on remand, the DOJ must either 'present probative evidence that the source did in fact receive an express grant of confidentiality,' or 'point to more narrowly defined circumstances that . . . support the inference' of confidentiality." *Id.*, citing *Roth v. DOJ,* 642 F.3d 1161, 1184 (D.C. Cir. 2011) and *Landano,* 508 U.S. at 180–81. "This bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which we have held is insufficient." *Id.* at 1101 (citing *Campbell v. DOJ,* 164 F.3d 20, 34–35 (D.C.Cir. 1998)). *See also Computer Prof'ls for Soc. Responsibility v. Secret Serv.,* 72 F.3d 897, 906 (D.C.Cir. 1996) (explaining that a description of "the manner in which an agency 'routinely' handles information is not sufficient to establish an implied assurance of confidentiality as to any particular source").

However, this is precisely what DEA has done in the Myrick declaration. The section of the declaration justifying the withholding of records under exemption 7(D), for example, consists of two paragraphs. In the first paragraph, DEA recites the text of the FOIA. Def. Decl. ¶ 40. In the second paragraph, DEA states that it withheld the "category of information" identifying "private-sector companies that are instrumental in the operation of Hemisphere," since "the companies provide information to law enforcement with the express expectation that both the source and the information will be afforded confidentiality and under circumstances where confidentiality can be inferred because providing the information can lead to retaliation against the companies. *Id.* at ¶ 41. This justification is nearly identical to the language rejected by the D.C. Circuit in *Roth* and in *CREW. Roth,* 642 F.3d at 1161; *CREW,* 746 F.3d at 1082. The law on

this point is clear. "The agency invoking Exemption 7(D) bears the burden of proving that it applies, and with respect to the [agency], it is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis." *Roth*, 642 F.3d at 1184. Such a "bald assertion that express assurances were given amounts to little more than recitation of the statutory standard, which [the D.C. Circuit] ha[s] held is insufficient." *Id*.

Similarly, an agency claiming a categorical 7(E) exemption must prove that a document-by-document analysis would thwart the purpose of the exemption. As DEA explains, exemption 7(E) "authorizes withholding of records or information compiled for law enforcement purposes to the extent that such records or information 'would disclose techniques and procedures for law enforcement investigations or prosecutions, it would disclose guidelines for law enforcement investigations and prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" Def. Decl., ¶ 42. In order to claim a categorical exemption, as DEA has done here, the agency must establish with probative evidence that not only are the underlying records properly exempted under 7(E), but a document-by-document analysis of the redactions would itself reveal the type of information the DEA seeks to withhold. Thus in *CREW*, where the DOJ claimed a categorical exemption under 7(E) for "two distinct categories of documents" but "never explain[ed]how the specific risks entailed in premature disclosure of one category of document might differ from risk of disclosure of the other," the agency did not met its burden. *CREW*, 746 F.3d at 1101. The Court explained:

> The DOJ cites Exemption 7(E) 'to protect procedures and techniques used by FBI [agents] during the investigation.' This near-verbatim recitation of the statutory standard is inadequate. We are not told what procedures are at stake. (Perhaps how the FBI conducts witness interviews? Or how it investigates public corruption?) Nor are we told how disclosure of the FD–302s or investigative materials could reveal such procedures. (Are the

18

> procedures spelled out in the documents? Or would the reader be able to extrapolate what the procedures are from the information contained therein?) Although Exemption 7(E) sets a "low bar for the agency to justify withholding," *Blackwell v. FBI,* 646 F.3d 37, 42 (D.C.Cir.2011), the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed.

*CREW*, 746 F.3d at 1102.

But again, this is precisely what DEA has done in its declaration. The section justifying the withholding of records under exemption 7(E) consists of 11 categories of documents. Each paragraph sets out the category – for example, "information naming or otherwise identifying private-sector companies that are instrumental in the operation of Hemisphere," Def. Decl. ¶ 45(f) – and lists the pages where that category of redactions can be found. Eight of the eleven paragraphs conclude with a bare recitation of the standard: "Knowledge" of the information "could help criminals tailor or adapt their activities to evade apprehension." *Id. See also* Def. Decl. ¶¶ 45(b), (c), (d), (e), (f), (g), (i), (j). Three of the eleven paragraphs conclude by alleging that knowledge of the information "could be used by criminals to disrupt law enforcement operations." *Id.* at ¶ 45(a). *See also* ¶¶ 45(h), (k). Without more, the Court lacks sufficient information to determine both whether the categorical approach to withholdings under 7(D) and 7(E) is appropriate here and whether the underlying records satisfy the requirements for exemption under the FOIA. Summary judgment is therefore inappropriate and should not be granted to the agency.

## C. DHS Has Failed to Segregate and Release Non-Exempt Portions of Records

The FOIA requires the government to disclose any "reasonably segregable portion of a record." 5 U.S.C. § 552(b); *see Oglesby,* 79 F.3d at 1176 ("If a document contains exempt information, the agency must still release 'any reasonably segregable portion' after deletion of

the nondisclosable portions.") (citation omitted). The agency "bears the burden of establishing

the applicability" of any exemption it invokes, and "even if [the] agency establishes an

exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the

requested record(s)." *EPIC v. NSA*, 678 F.3d 926, 933-34 (D.C. Cir. 2012); *Roth*, 642 F.3d at

1167. The agency must "correlate its claimed exemptions to particular paragraphs or sections of

the document or to estimate what percentage of the withheld material is in fact exempt."

*Armstrong v. Executive Office of the President*, 97 F.3d 575, 583 (D.C. Cir. 1996) Simply

claiming that a segregability review has been conducted is insufficient. *Oglesby*, 79 F.3d at 1180.

Finally, district courts have an "affirmative duty to consider the segregability issue *sua sponte*."

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

The agency's Motion for Summary Judgment only addresses segregability with a short

and conclusory statement, repeated throughout the motion, that "DEA processed and released all

reasonably segregable information." *See* Def.'s Mot. Summ. J. 8. The Myrick Declaration

addresses segregability with a similarly general statement that "after applying one or more

exemption to each page, only blank pages, or pages with incomprehensible words and phrases

would remain." Def. Decl. ¶ 48. The DEA has failed to demonstrate with reasonable specificity

why the documents could not be further segregated.

Courts in the D.C. Circuit  have consistently required that agencies supply specific

findings on segregability, stating that mere claims that the information was not reasonably

segregable do not suffice. *See, e.g.*, *Chesapeake Bay Found. v. U.S. Army Corps. of Eng'rs.*, 677

F. Supp. 2d 101, 109 (D.D.C. 2009) (requiring agency to supplement its declarations and exhibits

because there was "no evidence to support" that agency complied with its segregability

obligation and refusing "to take on faith" agency's assertions that it had complied); *In Def. of*

*Animals v. NIH*, 543 F. Supp. 2d 83, 107-08 (D.D.C. 2008) (ordering agency to segregate and release subject matter of invoices and equipment purchase-related e-mails even where sub-contractor and vendor names and estimated costs might be properly withheld under Exemptions 4 and 5).  Therefore, to satisfy its burden of proof the agency must explain how it examined the documents for segregable information that can be released. Here, the DEA did not identify any specific methods it used to determine which segregable information can be released. Instead the agency simply asserted that segregable non-exempt information would not contribute to the understanding of how the DEA or the United States conducts business. Myrick Dec. at 21. The agency's withholdings of 90-100% of the substantive matter on many pages should be inherently suspect.

### D. DHS Has Failed to Conduct a Sufficient Search for Responsive Records

The DEA has failed to demonstrate that it has conducted a sufficient search. The government must "show beyond material doubt ... that it has conducted a search reasonably calculated to uncover all relevant documents." *Hodge v. FBI,* 703 F.3d 575, 579 (D.C. Cir. 2013). In order to conduct such a search, "this court has required agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents," *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999), and the agency must establish that "'all files likely to contain responsive materials (if such records exist) were searched.'"  *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Summary judgment is inappropriate if the government's declarations "raise serious doubts as to the completeness of the search or are for some other reason unsatisfactory," *Utahamerican Energy, Inc. v. Mine Safety & Health Admin.*, 725 F. Supp. 2d 78, 82 (D.D.C. 2010) (quoting *Perry v.*

21

*Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)), or if there are "positive indications of overlooked materials" *McCready v. Nicholson*, 465 F.3d 1, 14 (D.C. Cir. 2006) (quoting Valencia–Lucena, 180 F.3d at 326) (quotation marks and citations omitted).

EPIC requested Hemisphere training modules, request forms, and similar final guidance documents that are used in the day-to-day operation of the program; any analyses, memos, opinions, or other communications that discuss the legal basis of the program; any analyses, memos, opinions, or other communications that discuss the privacy impact of the program; and any presentations, analyses, memos, opinions or other communications for Congress that cover Hemisphere's operations.

The agency has only produced documents responsive to the first and second prongs of EPIC's request. While it is conceivable that there have been no agency communications with Congress regarding this program, it is difficult to believe that such a far-reaching, invasive program would not have triggered some privacy analysis or discussion that would be responsive to the third prong of EPIC's request. This is a database that implicates a reported 4 billion calls *daily*, which collects some of the most sensitive and private forms of data – communications and location data. Yet the government claims that it cannot locate a privacy impact assessment, threshold analysis, or any other form of analysis or documentation discussing potential privacy implications. The scope of the Hemisphere program, along with the obvious privacy implications of the program are "positive indications" that some documents responsive to EPIC's request for "any analyses, memos, opinions, or other communications that discuss the privacy impact of the program" should exist and have been overlooked in the agency's search. *McCready,* 465 F.3d at 14). In light of this, the Court should order the agency to conduct a reasonable search for documents responsive to the third prong of EPIC's request.

**II.** **The DEA Has Unlawfully Exempted Records From the FOIA Under Exemptions 5, 7(D), and 7(E)**

**A.** **DEA May Not Withhold Hemisphere Documents Under Exemption 5 Because Such Records Would Not Normally Be Privileged In the Context of Civil Discovery**

FOIA Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. 552(b)(5). To qualify for Exemption 5, responsive records must come from a government agency and must fall within a litigation privilege against discovery. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). Privileges incorporated by Exemption 5 include the deliberative process privilege, which "protects agency documents that are both predecisional and deliberative," *Judicial Watch*, 449 F.3d at 151 ; s*ee also Klamath*, 532 U.S. at 8 (covering "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated"), and the attorney-client and work-product privileges.

The memorandum withheld by DEA under Exemption 5 do not meet the tests for any of these privileges, and the records must therefore be disclosed.

**i)** **The Memorandum Cannot be Withheld as Part of the Deliberative Process**

The agency has wrongly withheld a "draft" memorandum prepared by the DEA Office of Chief Counsel under Exemption 5. Although an agency may properly withhold drafts pursuant to Exemption 5, the designation of a document as a "draft" does not automatically justify withholding. *Arthur Andersen & Co. v. IRS.*, 679 F.2d 254, 257 (D.C.Cir. 1982). The agency must demonstrate that a withheld document is "predecisional" and "deliberative." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) . But the document can lose its predecisional status "if it is adopted, formally or informally, as the agency position on an issue or

is used by the agency in its dealings with the public." *Id.; Defenders of Wildlife v. USDA*, 311 F. Supp. 2d 44, 58-59 (D.D.C. 2004).

When an agency uses the deliberative process privilege to withhold draft documents under Exemption 5, it must identify a corresponding final decision. *Exxon Corp. v. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) (holding that "where DOE has failed to identify a final document corresponding to a putative draft, the 'draft' shall be ordered produced to the extent that the agency has provided no basis for determining that it in fact has such status"); *Judicial Watch, Inc. v. USPS*, 297 F.Supp.2d 252, 264 (D.D.C.2004) (finding that an agency must identify the "final decisions or decisionmaking processes" to which a document contributed); *Mayer, Brown, Rowe & Maw LLP v. IRS.*, 537 F. Supp. 2d 128, 136 (D.D.C. 2008), *aff'd sub nom.*, *Mayer, Brown LLP v. IRS*, 562 F.3d 1190 (D.C. Cir. 2009).

The agency has designated the Office of General Counsel's memorandum as a "draft" without ever identifying a corresponding final version. Even if the final document may be withheld under Exemption 5 or another exemption, the agency still needs to identify the final document that corresponds to the "draft" withholding to establish the records were in fact "predecisional" and part of a "deliberative" process.

The agency has represented that the memorandum was "prepared to facilitate development of DEA's policies and procedures regarding use of Hemisphere," but has neither produced such final policies nor justified their absence in the Myrick Declaration or Motion for Summary Judgment. The agency should be ordered to conduct a proper search for final documents associated with this memorandum. If it cannot produce such final documents, it should be ordered to produce this "draft" document, in keeping with *Exxon Corp.,* 585 F. Supp. at 690.

24

### ii) The Memorandum Cannot be Withheld Under Attorney-Client or Work-Product Privilege

The memorandum cannot be properly withheld under attorney-client privilege or work-product doctrine. To invoke the attorney-client privilege, an agency must show that the document "(1) involves 'confidential communications between an attorney and his [or her] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" *Citizens For Responsibility & Ethics in Washington v. Nat'l Archives & Records Admin.,* 583 F. Supp. 2d 146, 165 (D.D.C. 2008) *quoting Judicial Watch,* 297 F.Supp.2d at 267 (quoting *Mead Data Cent.,* 566 F.2d at 252). However, the attorney-client privilege does not permit an agency "to withhold a document merely because it is a communication between the agency and its lawyers." *Id.* Rather, the agency must show that the information provided to its lawyers was intended to be confidential "and was not known by or disclosed to any third party." *Id.; Coastal States Gas Corp.*, 617 F.2d at 863 (finding that "[t]he burden is on the agency to demonstrate that confidentiality was expected in the handling of these communications, and that it was reasonably careful to keep this confidential information protected from general disclosure.") The DEA has failed to meet that burden here, relying on bare, boilerplate assertions that this memorandum contains confidential legal advice.

The memorandum in question also created agency law, which negates attorney-client privilege assertions. The memorandum was prepared to assist "Senior DEA management" on the legal issues of the program as a whole. The Hemisphere program implicates the privacy rights of millions of people, all of whom are subject to this general legal guidance. The memorandum doesn't apply only to a particular case or even several particular cases. Rather, it established the legal basis for the program. EPIC does not ask DEA to disclose the facts of particular cases, or even the legal analysis of attorneys as applied to a particular set of facts Instead, EPIC seeks to

uncover the legal authority for the agency's collection of billions of telephone records from a U.S. communications service provider.

The government has also failed to meet its burden to justify withholding of this memo under the work-product privilege. "In order for the Government to discharge its evidentiary burden, it must 1) provide a description of the nature and contents of the withheld document, 2) identify the document's author or origin, 3) note the circumstances that surround the document's creation, and 4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *CREW v. DOJ,* No. CV 11-1021 (JEB), 2014 WL 2604640, at *3 (D.D.C. June 11, 2014). The government has made no such showing here. DEA has provided little information on the contents of the memorandum, even less information about the circumstances surrounding the document's creation, and no information about the type of litigation for which the document's use is foreseeable – stating only that it was prepared in "anticipation of litigation involving the government and relating the use of Hemisphere in law enforcement." Def. Decl. ¶ 34(a). This statement could not possibly be broader or less helpful to the Plaintiff – and the Court's – assessment of the validity of the use of this exemption.

Because the government has not met its burden of demonstrating that this document falls under deliberative process, work-product, or attorney- client privilege, the memorandum should be disclosed.

**B. DEA May Not Withhold the Names of Cooperating Companies Under Exemption 7(D) or Exemption 7(E)**

**i) Exemption 7(D)**

The DEA has improperly withheld records naming or identifying private-sector companies that are involved in the operation of Hemisphere under exemption 7(D). Exemption 7(D) permits the Government to withhold "records or information compiled for law enforcement

26

purposes, but only to the extent that the production of such law enforcement records or information...could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a *confidential basis*, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation..., information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D). The Government bears the burden of establishing that the exemption applies. *Id.* § 552(a)(4)(B). In this case the Government has failed to present any evidence that would meet this burden.

The Government has failed to demonstrate that the private-sector companies involved in the operation of Hemisphere participated with either express or implied assurances of confidentiality. A source is confidential if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. *Landano*, 508 U.S. at 172. In interpreting the contours of exemption 7(D), the Supreme Court has ruled that a "telephone company that releases phone records" should not be presumed to be a confidential informant for the purposes of the FOIA without evidence to support the withholding. *Id.* at 175. The Court explained that "[t]he Government offers no persuasive evidence that Congress intended for the [agency] to be able to satisfy its burden in every instance simply by asserting that a source communicated with the [agency] during the course of a criminal investigation." *Id.* at 178. The Court also addressed the question of *implied* assurances of confidentiality, explaining that "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." *Id.* at 181. The Court pointed to several court of appeals decisions that justified nondisclosure under Exemption 7(D) by

examining factors such as "the nature of the crime and the source's relation to it." *Id.* at 179.

In this case, the DEA has offered no justification aside from a single conclusory sentence in the Myrick declaration that "the companies provide information to law enforcement with the express expectation that both the source and the information will be afforded confidentiality and under circumstances where confidentiality can be inferred because providing the information can lead to retaliation against the companies." Decl. ¶ 41. The DEA has attached no declarations from the agents who extended the express grants of confidentiality, no contemporaneous documents from the FBI files reflecting the express grants of confidentiality, no evidence of a consistent policy of expressly granting confidentiality to certain designated sources during the relevant time period, and no other such evidence that comports with the Federal Rules of Evidence. *See Campbell*, 164 F.3d  at 35, *as amended (Mar. 3, 1999)*; *See Davin v. DOJ*, 60 F.3d 1043, 1061 (3d Cir. 1995); *See also Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 389 (D.C. Cir. 2007) (holding by implication that where an affidavit promising confidentiality is called into question, the invocation of Exemption 7(D) may be challenged). Furthermore, the DEA has not identified any particular forms of retaliation that the companies could face. The DEA, in relying on a single conclusory statement in the Myrick declaration as its only evidence, has clearly not met its burden to support grants of either express or implied assurances of confidentiality.

The DEA has failed to meet its statutory burden with respect to its 7(D) withholdings, and is thus obligated to disclose the records naming or identifying private-sector companies that are involved in the operation of Hemisphere.

### ii) Exemption 7(E)

Exemption 7(E) is also not an appropriate basis for withholding the names of cooperating

companies. Exemption 7(E) permits the Government to withhold records or information

compiled for law enforcement purposes to the extent release of such records "would disclose

techniques and procedures for law enforcement investigations or prosecutions, or would disclose

guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) protects

information "that would train potential violators to evade the law or instruct them how to break

the law," and it exempts from disclosure "information that could increase the risks that a law will

be violated or that past violators will escape legal consequences." *Mayer Brown LLP v. IRS*, 562

F.3d 1190, 1193 (D.C. Cir. 2009). The D.C. Circuit has stressed that under Exemption 7(E) the

agency must at least provide *some* explanation of what procedures are involved and how they

would be disclosed. *CREW*, 746 F.3d at 1102. The Court also has maintained that while

Exemption 7(E) sets a "relatively low bar for the agency to justify withholding," it still requires

that the agency "demonstrate logically how the release of the requested information might create

a risk of circumvention of the law." *Blackwell*, 646 F.3d at 42. (quoting *Mayer Brown*, 562 F.3d

at 1194).

  The Myrick declaration fails to meet these legal standards. First, the declaration does not

provide any explanation of what *procedures* are involved and how they would be disclosed.

Exemption 7(E), by its own terms, pertains to "techniques," "procedures," or "guidelines." 5

U.S.C. § 552(b)(7)(E).  The  D.C. Circuit has interpreted Exemption 7(E) as requiring an agency

to provide at least "some explanation" of what procedures are involved and how they would be

disclosed. *See CREW,* 746 F.3d at 1102. Instead, the Myrick declaration states only that

becoming aware of the *identities of companies* assisting in the operation of Hemisphere—not any

"procedures," "techniques," or "guidelines" whatsoever—"could help criminals tailor or adapt

their activities to evade apprehension [and] assist efforts to attack facilities involved in the

Hemisphere Program." Decl. ¶ 45f.

The DEA is not trying to shield "techniques," "procedures," or "guidelines"; it is

attempting to obfuscate the identity of its business partners. It is telling that the DEA can point to

no case where an agency has been permitted to withhold the names of companies under

Exemption 7(E). Exemption 7(E) should not authorize the DEA to withhold company identities

and information because Exemption 7(E) relates only to "procedures," "techniques," and

"guidelines."

Second, the DEA does not provide any logical connection between revealing the

identities of the companies and making it easier for criminals to break the law. The D.C. Circuit

has emphasized that, in order to properly withhold records under Exemption 7(E), an agency

must "demonstrate logically how the release of the requested information might create a risk of

circumvention of the law." *Blackwell*, 646 F.3d at 42 (quoting *Mayer Brown*, 562 F.3d at 1194).

The agency merely states, without support or explanation, that learning the identities of

companies assisting in the operation of Hemisphere "could help criminals tailor or adapt their

activities to evade apprehension." Myrick Dec. at ¶ 45f. The declaration does not provide any

logical connection, nor does it provide any explanation of how becoming aware of the company

names would help criminals evade apprehension.

The declaration also asserts, without evidence, that learning the identities of companies

involved with Hemisphere could "assist efforts to attack facilities." Decl. ¶ 45f. Nowhere in the

Declaration is it asserted that such efforts to attack facilities are ongoing or forthcoming. Instead,

the agency imagines that attacks on private companies might hypothetically occur in the future.

Such unsupported assertions cannot be legally sufficient to uphold the Exemption. Since the

30

DEA does not provide a logical connection between revealing the information and making it easier for criminals to circumvent the law, Exemption 7(E) should not apply.

For these reasons, the Court should not permit the DEA to shield company identities and information under 7(E).

### C. DEA May Not Withhold Documents Detailing the Means Through Which the Agency Secures Cooperation

The Drug Enforcement Agency (DEA) has wrongly withheld records describing how that the Hemisphere program secures "the cooperation of entities instrumental to Hemisphere's operations" pursuant to Exemption (7)(E). Def.'s Mem. Supp. Summ. J. 23-24. DEA has wrongly asserted exemption (7)(E) because these records do not meet the threshold requirements for withholding under exemption 7. In addition to failing to meet the threshold, the DEA's production do not meet the subsection (E) requirements that the documents, if released, would "disclose techniques and procedures for law enforcement investigations or prosecutions" or "guidelines for law enforcement investigations or prosecutions," that "could reasonably be expected to risk circumvention of the law." 5 U.S.C § 552(b)(7)(E).

### i) Documents Detailing the Means Through Which DEA Secures Cooperation were not Compiled for Law Enforcement Purposes

Documents detailing the means through which the Hemisphere program secures "the cooperation of entities instrumental to Hemisphere's operations" have not been compiled for law enforcement purposes, and therefore cannot meet the threshold requirement for Exemption 7. 5 U.S.C § 552(b)(7). The agency must set forth sufficient, specific facts so the court could determine that the documents were actually compiled for law enforcement purposes. *Campbell*, 164 F.3d at 32.

The DEA has not asserted sufficient facts to establish the necessary rational nexus

between its preventative law enforcement purposes and the means by which Hemisphere secures

cooperation. *Id*. Instead, DEA relied exclusively on the conclusory Myrick Declaration, which

fails to supply specific facts regarding the circumstances under which the documents were

compiled, the information upon which the D.C. Circuit has traditionally relied. *See Jefferson v.

Dep't of Justice, Office of Prof'l Responsibility*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) citing

*Weisberg v. United States Dep't of Justice,* 489 F.2d 1195, 1202 (D.C.Cir.1973).

   DEA states that these records were "were compiled to support core mission DEA law

enforcement officers and employees in the course of their official duties enforcing the Controlled

Substances Act." Def.'s Mem. Supp. Summ. J. 13. This conclusory, boilerplate language is

wholly insufficient, and deprives the court of the ability to make a determination. It is even less

specific than language that was rejected in *Quinon v. FBI*, in which a declarant justified an

investigation merely because "*certain events* occurred which prompted the complainant to

contact the FBI." 86 F.3d 1222, 1229 (D.C. Cir. 1996). In *Quinon,* the agency connected some

particular events, however undefined, with the withholding of particular information. The DEA's

description of the "circumstances" here does not even rise to that low level. The DEA merely

describes the general methodology regarding how cooperation is obtained, without reference to

the prevention of criminal activity or security maintenance.

   The DEA has therefore failed to meet its burden of demonstrating that the means of

securing cooperation for the Hemisphere program were compiled as part of "proactive steps

designed to prevent criminal activity and to maintain security."  *Pub. Employees for Envtl.

Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203

(D.C. Cir. 2014) (hereinafter "*PEER*") (citing *Milner v. Department of the Navy*, —— U.S. ——,

131 S.Ct. 1259, 1272 (2011) .  (Alito, J., concurring)). Although the nature of materials itself

may establish that compilation was for law enforcement purposes, that is not the case here. *Id.* In

*PEER*, The emergency action plans  "plainly were created for law enforcement purposes"

because they described particular courses of action that law enforcement should take "around the

dams during emergency conditions." *Id.* Such documents were made to instruct law enforcement

how to maintain security in particular circumstances. The DEA has failed to claim or

demonstrate that the Hemisphere documents similarly instruct law enforcement. As DEA has not

provided sufficient facts to establish that the documents were compiled for law enforcement

purposes, the court cannot find that it rightfully withheld them pursuant to Exemption 7(E), and

therefore should not grant DEA's motion for summary judgment. *Quinon*, 86 F.3d at 1229.

> ### ii) The means by which Hemisphere secures cooperation are not "techniques and procedures" or "guidelines" for law enforcement investigations or prosecutions.

If it were determined that the DEA met the threshold test of documents compiled for law

enforcement purposes, EPIC contends that the DEA fails to satisfy any of the required

exemptions. The DEA has not established that the documents are "techniques and procedures" or

"guidelines" for law enforcement investigations or prosecutions.

An agency's methods are not "techniques and procedures for law enforcement

investigation or prosecution" unless they deal with "how law enforcement officials go about

investigating a crime." *Allard K. Lowenstein Intern. Human Rights Project v. DHS*, 626 F.3d

678, 682 (2nd Cir. 2010) (quoting *Webster's Third New International Dictionary* (1986)). An

agency's methods are "guidelines" when they outline policies for law enforcement deployment

with an eye toward resource allocation. *See Allard K. Lowenstein Intern. Human Rights Project*,

626 F.3d at 785; *see also Mayer Brown,* 562 F.3d at 1195 (describing Internal Revenue Service

records of revenue rulings on transactions between tax-exempt and taxable entities as

"guidelines"). This Court has adopted the Second Circuit's definition of "guidelines" entirely

and without discussion. *PEER*, 740 F.3d at 204 n.4. This Court applied that definition in *PEER*

to records that "inform emergency personnel how to manage a dam failure at Amistad Dam or

Falcon Dam from 'event detection to termination.'" *Id.* at 205. "In FOIA cases, 'a reviewing

court must accord first priority in statutory interpretation to the plain meaning of the provision in

question' *Public Investors Arbitration Bar Association v. S.E.C.,*— F.3d —, 9, No. 13-5137,

2014 WL 5904725, 2014 U.S. App. LEXIS 21624 (D.C. Cir. Nov. 14, 2014) (quoting

*Consumers Union of United States, Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978)). Even

if the agency can demonstrate that these records were "compiled for law enforcement purposes,"

since every word in a statue should be given effect, the agency must show something *more*

specific if it is to demonstrate that the relevant records address "techniques and procedures" and

are "for law enforcement investigation or prosecution." The DEA has provided no evidence of

the relationship between the withheld material and law enforcement "techniques and

procedures." In fact, the Agency does not even mention "techniques and procedures" in its

conclusory argument for the (b)(7)(E) exemption.

    The information on Hemisphere's means of obtaining cooperation is not "guidelines"

because these documents do not outline policies for law enforcement deployment with an eye

toward resource allocation. In its argument, the DEA attempts to broaden the scope of EPIC's

request in order to make it appear that EPIC has requested "guidelines" records like those

exempted from disclosure under (b)(7)(E) in *PEER*. In this case, EPIC requested records that

describe the legal framework under which Hemisphere secures cooperation from independent

entities. Specifically, EPIC requested "final guidance documents that are used in the day-to-day

operation of the program," "communications that discuss the legal basis of the program,"

34

"communications that discuss the privacy impact of the program," and "communications for Congress that cover Hemisphere's operations." Compl. at 4, Dkt. 1. Such records do not reveal Agency tactics or "emergency action plans" like the ones PEER requested, which included explicit law enforcement and emergency personnel steps *in response* to dam failure. *Id.* at 200. Instead, EPIC has asked DEA for records that would enable the public to understand the legal underpinnings for a massive telephone record collection program.

### iii) Disclosure of Hemisphere's means of securing cooperation could not reasonably be expected to risk circumvention of the law.

The disclosure of how the agency obtains cooperation could not reasonably be expected to risk circumvention of the law. To legally withhold because of a risk of circumvention, DEA must demonstrate that release of the requested information might increase the risk that a law will be violated or that past violators will escape legal consequences. 5 U.S.C.A. § 552(b)(7)(E); *PEER,* 740 F.3d at 195. The agency has failed to meet this standard. By simply asserting that disclosure "would reveal [the] means of securing cooperation and could reasonably be expected to lead to disruption of the means of securing cooperation." Def.'s Mem. Supp. Summ. J. 23-24. The language fails to connect disclosure to any potential circumvention of the law. Rather, it only opines that disclosure may reduce the voluntary involvement of entities that are not accused of breaking the law or avoiding punishment.

A logical explanation of how the disclosure would help criminals circumvent the law is required. *Mayer Brown*, 562 F.3d at 1195. This Court has found satisfactory explanations that demonstrate how disclosure would reveal "forensic vulnerabilities to potential criminals" and "could enable criminals to employ countermeasures to avoid detection, thus jeopardizing the FBI's investigatory missions." *Blackwell,* 646 F.3d at 42.

In *PEER*, the agency's showing that "disclosing the maps would give anyone seeking to

cause harm "the ability to deduce the zones and populations most affected by dam failure" was sufficient to justify disclosure under this standard. [CITE] But unlike the requester in that case, EPIC did not ask DEA for records that would disclose infrastructure vulnerabilities and disaster effects projections that would-be bad actors could exploit. EPIC only requested general policies regarding the back-office administration of Hemisphere and its legal and privacy effects. Any argument that would link such a disclosure to criminal circumvention would be attenuated at best. The DEA failed to demonstrate any way in which disclosure of information on the means of securing cooperation with Hemisphere could reasonably be expected to risk circumvention of the law, and therefore, cannot legally invoke Exemption (b)(7)(E) to justify its withholdings.

### D. DEA May Not Withhold the Names of Agencies Under Exemption 7(E)

The DEA has submitted the Declaration of Katherine L. Myrick in lieu of a Vaughn Index. The declaration states that DEA is withholding under Exemption (b)(7)(E) the names of other law enforcement agencies with access to Hemisphere because "every law enforcement agency has its own individual focus and sphere of authority, knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor or adapt their activities to evade apprehension." Myrick Decl. at ¶ 45-a. This is a conclusory statement that fails to meet the burden of showing that the information "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. 552 (b)(7)(E). The DEA provides the Court no basis, beyond accepting the agency's summary conclusion on its face, from which to determine whether release of the information 'could reasonably be expected to risk circumvention of the law.'" *Blanton v. DOJ,* 63 F.Supp.2d 35, 49 (D.D.C. 1999). The DC Circuit has held that where

the agency's declarations merely "parrot the language of the statute and are drawn in conclusory terms," as they are here, the court's ability to conduct its own review of the agency's determinations is severely frustrated. *Carter v. United States Dep't of Commerce,* 830 F.2d 388, 392–93 (D.C. Cir. 1987). As a result, DEA's justification of withholding agency names under (b)(7)(E) is insufficient.

> **E. Revealing the Names of Agencies with Access to Hemisphere Would Not Reveal "Techniques and Procedures for Law Enforcement Investigations or Prosecutions" or "Guidelines for Law Enforcement Investigations or Prosecutions"**

The DEA has failed to justify withholding under Exemption (7)(E) the names of agencies with access to Hemisphere. As discussed above, Exemption (7)(E) properly applies when information would "disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." In withholding the names of other law enforcement agencies with access to Hemisphere, DEA does not explain why the names of federal agencies would reveal techniques, procedures, or guidelines "for law enforcement investigations or prosecution," nor does it indicate *how* disclosure "could reasonably be expected to risk circumvention of law." Instead it offers the conclusory statement that "knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor or adapt their activities to evade apprehension." DEA Mem. in Sup. of Summ. J.at 29. This is insufficient to justify withholding the information.

Further, DEA's reliance on *Light* is unpersuasive because *Light* is distinguishable. In *Light v. DOJ*, the court held that "while an agency may generally describe the nature of the information withheld, it is not required to describe secret law enforcement techniques, even generally, if the description would reveal the very information sought to be withheld. 968 F.

37

Supp. 2d 11, 29 (D.D.C. 2013). By disclosing information identifying agencies with access to

Hemisphere, the DEA would merely be disclosing the "nature of the information withheld," as

oppose to "secret law enforcement techniques." In *Light*, the court held that the FBI properly

applied Exemption 7(E) in withholding records because "the release of such information would

enable criminals to discover techniques and procedures and the effectiveness of law enforcement

would suffer." *Id.* There, "the FBI refused to disclose the location, identity, and expertise of the

investigating FBI units, as this could allow an individual to avoid or circumvent those locations

and those activities that are the targets of the investigation." *Id.* Whereas in the present case, to

reveal that an agency has access to Hemisphere does not disclose either "techniques or

procedures" or "guidelines" because it does not reveal any terms of potential uses. Thus, the

DEA's basis in relying on *Light* is insufficient.

### i)  The Disclosure of Names of Agencies with Access to Hemisphere Cannot "Reasonably be Expected to Risk Circumvention of Law"

For a technique, procedure, or guideline to be exempted under Exemption (7)(E), it must

"reasonably be expected to risk circumvention of law." The D.C. Circuit has held that the "risk

circumvention of law" requirement sets a "low bar" for the agency to meet, requiring not a

highly specific burden of showing how the law will be circumvented but only that the agency

demonstrate logically how the release of the requested information might create a risk of

circumvention of the law. *Blackwell,* 646 F.3d at 37. The DEA has failed to meet even this

requirement.

The DEA has failed to "demonstrate logically how the release of the requested

information might create a risk of circumvention of the law" *Id.* at 42. In *Blackwell*, the FBI met

its Exemption (7)(E) burden by alleging that "[t]he release of specifics of these investigative

techniques would risk circumvention of the law by individuals who seek to utilize computers in

violation of laws. By releasing that information, the FBI would be exposing computer forensic vulnerabilities to potential criminals." *Id.* This statement identifies in general terms *what* would be exposed as a result of releasing the techniques (computer forensic vulnerabilities), and *how* the information could be used (use of computers to violate laws) to circumvent the law. The DEA, however, stated, "Because every law enforcement agency has its own individual focus and sphere of authority, knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor or adapt their activities to evade apprehension." Myrick Decl. at ¶45-e. This does not reveal what would be exposed if DEA were to disclose the agency names, nor does it suggest *how* the information could be used to circumvent the law. Absent this information, there is no demonstration of logic, which connects the release of the information to the circumvention of law.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the government's motion for summary judgment and grant Plaintiffs' cross-motion for summary judgment. The Court should order DEA to release records improperly withheld under Exemptions 5, 7(D), and 7(E) and to conduct an adequate segregability review of the Hemisphere records.

Dated: December 1, 2014

Respectfully submitted,
MARC ROTENBERG
President and Executive Director

*/s/ Ginger P. McCall*
GINGER P. MCCALL
D.C. Bar # 1101104

JULIA HORWITZ
D.C. Bar # 1018561

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Ave, NW #200
Washington, DC 20009
Telephone: (202) 483-1140
Fax: (202) 483-1248
foia@epic.org

Attorneys for Plaintiff