# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Civil Action No. 14-cv-317 (RDM) |
| DRUG ENFORCEMENT ADMINISTRATION, | ) ) ) | |
| Defendant | ) | |

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

    I.      The DEA's submission satisfies the requirements of Vaughn v. Rosen. ................. 1

    II.     EPIC does not present any good reason to doubt the adequacy of DEA's search for responsive documents. ........................................................................................... 4

    III.    DEA has demonstrated that reasonably segregable material has been disclosed. .. 6

    IV.    DEA properly withheld material from the responsive records based on applicable FOIA exemptions. ................................................................................................ 7

          A.     The DEA properly asserted Exemption 5 to support withholding of a draft memorandum prepared by an attorney in the DEA Office of Chief Counsel. ................................................................................................. 7

          B.     The DEA properly asserted Exemption 7(D) to withhold information identifying private-sector companies instrumental in the operation of Hemisphere. ........................................................................................... 10

          C.     DEA properly withheld information regarding law enforcement techniques and procedures under Exemption 7(E). ..................................................... 11

          D.     EPIC concedes that material was properly withheld under Exemptions 6, 7(C), and 7(F). .................................................................................... 16

CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

**CASES**

Ancient Coin Collectors Guild v. U.S. Dep't of State,
    641 F.3d 504 (D.C. Cir. 2011)................................................................. 5

Baker & Hostetler LLP v. U.S. Dep't of Commerce,
    473 F.3d 312 (D.C. Cir. 2006) ............................................................... 4

Blackwell v. FBI,
    646 F.3d 42 (D.C. Cir. 2011)................................................................. 15

Campbell v. U.S. Dep't of Justice,
    164 F.3d 20 (D.C. Cir. 1999) ......................................................... 11, 15

Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice,
    746 F.3d 1082 (D.C. Cir. 2014) .................................................... 3, 4, 11

Ctr. for Medicare Advocacy, Inc. v. U.S. Dep't of Health & Human Servs.,
    577 F. Supp. 2d 221 (D.D.C. 2008) ...................................................... 9

Davin v. U.S. Dep't of Justice,
    60 F.3d 1043 (3d Cir. 1995)................................................................. 11

Delaney, Migdail & Young, Chartered v. IRS,
    826 F.2d 124 (D.C. Cir. 1987) ............................................................... 9

Dueñas Iturralde v. Comptroller of the Currency,
    315 F.3d 311 (D.C. Cir. 2003)................................................................ 5

Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,
    384 F. Supp. 2d 100 (D.D.C. 2005) ...................................................... 5

Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence,
    982 F. Supp. 2d 21 (D.D.C. 2013) ................................................. 13, 16

* Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,
    928 F. Supp. 2d 139 (D.D.C. 2013) .......................................................8

Hodge v. FBI,
    703 F.3d 575 (D.C. Cir. 2013) ............................................................... 6

* Johnson v. Exec. Office for U.S. Att'ys,
    310 F.3d 771 (D.C. Cir. 2002) ...............................................................6

* Judicial Watch, Inc. v. FDA,
    449 F.3d 141 (D.C. Cir. 2006) ......................................................1, 2, 3

Judicial Watch, Inc. v. U.S. Dep't of the Treasury,
      802 F. Supp. 2d 185 (D.D.C. 2011) ........................................................ 9

Keys v. U.S. Dep't of Justice,
      830 F.2d 337 (D.C. Cir. 1987) ............................................................... 2

Loving v. Dep't of Def.,
      550 F.3d 32 (D.C. Cir. 2008) ................................................................. 6

* Mayer Brown LLP v. IRS,
      562 F.3d 1190 (D.C. Cir. 2009) ....................................................... 13, 16

Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,
      566 F.2d 242 (D.C. Cir. 1977) ............................................................... 1

Morley v. CIA,
      508 F.3d 1108 (D.C. Cir. 2007)........................................................... 2, 4

* NLRB v. Sears, Roebuck & Co.,
      421 U.S. 132 (1975) ............................................................................. 8

Odland v. FERC,
      Civil Action No. 13-141 (RMC), 2014 WL 1244773 (D.D.C. Mar. 27, 2014)....... 9

* Oglesby v. U.S. Dep't of the Army,
      920 F.2d 57 (D.C. Cir. 1990) ................................................................. 4

Performance Coal Co. v. U.S. Dep't of Labor,
      847 F. Supp. 2d 6 (D.D.C. 2012) ........................................................... 9

* PHE, Inc. v. Dep't of Justice,
      983 F.2d 248 (D.C. Cir. 1993) ........................................................ 12, 15

Sussman v. U.S. Marshals Serv.,
      494 F.3d 1106 (D.C. Cir. 2007)............................................................... 6

U.S. Dep't of Justice v. Landano,
      508 U.S. 165 (1993)...................................................................... 3, 4, 10

Vaughn v. Rosen,
      484 F.2d 820 (D.C. Cir. 1973) ............................................................... 1

**FEDERAL STATUTES**

Controlled Substances Act, 21 U.S.C. §§ 801–971 ........................................ 14

Freedom of Information Act (FOIA), 5 U.S.C. § 552............................... passim

## PRELIMINARY STATEMENT

Plaintiff Electronic Privacy Information Center (EPIC) has not presented any valid reason to deny the motion for summary judgment filed by defendant Drug Enforcement Administration (DEA). All of EPIC's arguments rely either on inaccurate descriptions of DEA's summary judgment submission or mistaken interpretations of the Freedom of Information Act, 5 U.S.C. § 552. The DEA satisfied the requirements of the FOIA in its <u>Vaughn</u> submission, its search for responsive documents, its disclosure of reasonably segregable material, and its application of the FOIA exemptions. The Court should grant summary judgment in favor of the DEA.

## ARGUMENT

**I.      The DEA's submission satisfies the requirements of <u>Vaughn v. Rosen.</u>**

The Declaration of Katherine L. Myrick, ECF No. 15, that the DEA submitted with its summary judgment motion, together with the marked pages that were attached to the declaration, were more than sufficient to meet the requirements of the FOIA as elucidated in <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973). EPIC's arguments to the contrary all either misunderstand the law or misstate the facts.

The D.C. Circuit established in <u>Vaughn</u> that an agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." <u>Mead Data Cent., Inc. v. U.S. Dep't of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977) (discussing <u>id.</u>). The D.C. Circuit has made clear that a <u>Vaughn</u> submission does not have to take the form of an "index," and indeed does not have to conform to any specific requirements of form, structure, or length. <u>See</u> <u>Judicial Watch, Inc. v. FDA</u>, 449 F.3d 141, 146 (D.C. Cir. 2006) ("[W]e focus on the functions of the <u>Vaughn</u> index, not the length of the document descriptions, as the touchstone of our analysis. Indeed, an agency may even submit other measures in

combination with or in lieu of the index itself." (citations omitted)); Keys v. U.S. Dep't of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987) ("[I]t is the function, not the form, of the index that is important.").

The Declaration of Katherine L. Myrick was more than sufficient to satisfy the Vaughn requirement. The declaration grouped the material that the DEA withheld into a number of narrow categories, described the material in each category, and discussed why the exemptions asserted by DEA applied to each category. Attached to the declaration were redacted copies of all 323 responsive pages. Each page was marked to indicate precisely where on the page material was withheld and the basis or bases for withholding the material.

The D.C. Circuit has repeatedly upheld use of Vaughn submissions that group withholdings into categories in this manner. As the D.C. Circuit put it in Judicial Watch, Inc. v. FDA, 449 F.3d 141 (D.C. Cir. 2006):

> We have never required repetitive, detailed explanations for each piece of withheld information—that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof. Especially where the agency has disclosed and withheld a large number of documents, categorization and repetition provide efficient vehicles by which a court can review withholdings that implicate the same exemption for similar reasons.

Id.; see also Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007) ("[T]he descriptions of the documents in the Vaughn index, while categorical and with little variation from page to page, convey enough information for Morley and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions."); Keys, 830 F.2d at 349–50 (upholding a Vaughn submission that employed "coded symbols categoriz[ing] types of information that might fall under each of the FOIA exemptions" and "describ[ed] generically why information so designated qualifie[d] for exemption").

EPIC argues that Citizens for Responsibility & Ethics in Washington v. U.S. Department of Justice, 746 F.3d 1082 (D.C. Cir. 2014), disapproved of "categorical" withholding under FOIA. Mem. in Supp. of Pl.'s Opp'n to Def.'s Mot. for Summ. J. and Pl.'s Cross-Mot. for Summ. J. (Pls.' Mem.) 14–15, ECF Nos. 17, 18. But when the court in CREW discussed "categorical" withholding, it was not referring to the practice of grouping individual withholdings into broader categories for purposes of clarity and efficiency. Rather, the court was referring to the practice of asserting a FOIA exemption with respect to an entire category of documents without specifically identifying the documents or portions of documents withheld. See id. at 1088 (drawing a distinction between "document-by-document" and "category-of-document by category-of-document" treatment); id. at 1096 (disapproving of "blanket withholding of all responsive documents" and explaining that what was needed was "a more particularized showing as to what documents or portions thereof are exempt"); id. at 1100 (noting that the agency's declaration "never specifie[d] how many responsive documents exist and ma[de] no attempt to link each exemption to specific documents"). The DEA's Vaughn submission in this case does not employ that type of "categorical" treatment. The DEA's submission in this case—by means of the page numbers listed in the Declaration of Katherine L. Myrick and the marked pages attached to the declaration—shows precisely which individual documents or portions of documents have been withheld based on each asserted exemption.

U.S. Department of Justice v. Landano, 508 U.S. 165 (1993), also did not contravene the D.C. Circuit's precedents approving of the use of "categorization and repetition" in a Vaughn submission, Judicial Watch, 449 F.3d at 147. The Court in Landano held only that a court may not employ a presumption that any source that provides information to the FBI in a criminal investigation has done so under an assurance of confidentiality. See id. at 174–78. As explained

further in section IV.B below, the DEA's invocations of Exemption 7(D) are consistent with

<u>Landano</u>, as well as the D.C. Circuit's discussion of Exemption 7(D) in <u>CREW</u>.

## II.    EPIC does not present any good reason to doubt the adequacy of DEA's search for responsive documents.

In its summary judgment memorandum and the Declaration of Katherine L. Myrick

accompanying that memorandum, DEA provided detailed information demonstrating that it

conducted a thorough search for documents responsive to EPIC's request. EPIC does not provide

any good reason for holding DEA's search inadequate.

DEA provided a detailed account of its search for documents in the Declaration of

Katherine L. Myrick, spanning five pages. Myrick Decl. ¶¶ 15–27, <u>discussed in</u> Def.'s Mem. in

Supp. of Mot. for Summ. J. 6–7, ECF No. 15. The only concrete objection EPIC has offered

regarding the search is that it did not turn up any "analyses, memos, opinions, or other

communications that discuss the privacy impact of the program," which EPIC claims "should

exist." Pls.' Mem. 21–22.

The D.C. Circuit has rejected this very same argument in several cases. In <u>Oglesby v.</u>

<u>U.S. Department of the Army</u>, 920 F.2d 57 (D.C. Cir. 1990), a FOIA requester claimed that

documents responsive to his request surely had to exist, but the court held that that was not

enough to support a finding that the agency's search was inadequate:

> Appellant . . . contends that the search was unreasonable because the agency did
> not find responsive documents that appellant claims <u>must</u> exist . . . . However,
> appellant provides no proof that these documents exist and his own conviction
> that . . . records must have been created is pure speculation. Such hypothetical
> assertions are insufficient to raise a material question of fact with respect to the
> adequacy of the agency's search.

<u>Id.</u> at 67 n.13; <u>see also</u> <u>Morley v. CIA</u>, 508 F.3d 1108, 1120 (D.C. Cir. 2007) (rejecting the

plaintiff's argument that it "strain[ed] credulity" that certain documents did not exist); <u>Baker &</u>

<u>Hostetler LLP v. U.S. Dep't of Commerce</u>, 473 F.3d 312, 318 (D.C. Cir. 2006) (rejecting the

plaintiff's argument that "the Department's failure to identify any responsive documents from certain high-level officials demonstrate[d] that the Department did not perform a thorough search"); Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec., 384 F. Supp. 2d 100, 107–08 & n.3 (D.D.C. 2005) (rejecting the plaintiff's argument that the agency's search should be held inadequate because the search did not locate documents the plaintiff believed to exist).

EPIC's assertion that additional documents "should exist" is likewise based only on speculation. Moreover, the D.C. Circuit has established that a FOIA search should be evaluated based on whether the agency employed reasonable search methods, not on whether those methods produced the results the requester wanted. Thus, even when a plaintiff conclusively proves that the agency at one time possessed an additional document that would fall within its request—which the plaintiffs have not done here—that is not a basis for holding the agency's search inadequate. See, e.g., Dueñas Iturralde v. Comptroller of the Currency, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he failure of an agency to turn up one specific document in its search does not alone render a search inadequate."); Ancient Coin Collectors Guild v. U.S. Dep't of State, 641 F.3d 504, 514 (D.C. Cir. 2011) ("That [the Department of] State's search turned up only a few emails [responsive to the request] is not enough to render its search inadequate, even supposing that any reasonable observer would find this result unexpected.").

Moreover, the fact that DEA found no privacy analysis regarding Hemisphere in its files is not as surprising as EPIC contends. DEA noted in its summary judgment memorandum that "[a]lthough DEA uses and partly funds Hemisphere, Hemisphere is not a DEA program," Def.'s Mem. 2, and thus there is no reason to expect that DEA would possess copies of all or even most of the documents that have been produced within the Government regarding the program. It also bears noting that DEA did locate in its possession two documents discussing legal issues related

to the Hemisphere program, though those documents were withheld based on Exemption 5 and other exemptions. See Def.'s Mem. 8.

Since DEA conducted a thorough search, and EPIC's only objection to the search is one that carries no weight under D.C. Circuit law, the Court should uphold DEA's search as adequate.[1]

## III.   DEA has demonstrated that reasonably segregable material has been disclosed.

The Declaration of Katherine L. Myrick, together with the documents attached to the declaration, also establish that DEA released all reasonably segregable information in accordance with FOIA.

The D.C. Circuit has held that "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007); accord Hodge v. FBI, 703 F.3d 575, 582 (D.C. Cir. 2013). The D.C. Circuit has held that for an agency to establish that it has met the requirement, it is enough for an agency to provide a Vaughn submission describing the material withheld and a declaration attesting that the agency conducted a proper segregability analysis on all the withheld material. See Johnson v. Exec. Office for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002) ("The combination of the Vaughn index and the affidavits . . . [is] sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated."); Loving v. Dep't of Def., 550 F.3d 32, 41 (D.C. Cir. 2008) ("Here the district court

---

[1] The Court should not order any further search for documents, but if the Court decides to order any further search at all, it should be limited to "analyses, memos, opinions, or other communications that discuss the privacy impact" of Hemisphere. EPIC has contested the adequacy of DEA's search only with respect to that part of its request and has requested relief only with respect to that part of the request. See Pls.' Mem. 22 (arguing that the Court should order a further search "for documents responsive to the third prong of EPIC's request" (emphasis added)).

relied on the very factors that we have previously deemed sufficient for this determination, i.e., the description of the document set forth in the <u>Vaughn</u> index and the agency's declaration that it released all segregable material."). In this case, the DEA submitted a detailed <u>Vaughn</u> submission, and the Declaration of Katherine L. Myrick states that the agency reviewed each page of the responsive documents and confirmed that the agency reviewed the responsive materials to ensure that reasonably segregable information was released. <u>See</u> Def.'s Mem. ¶ 7; Myrick Decl. ¶ 48. That is enough to meet the standards established by the D.C. Circuit.

EPIC also argues that DEA's compliance with FOIA is "inherently suspect" because significant amounts of material were withheld from the responsive documents. Pls.' Mem. 21. But the amount of information DEA withheld is no indication that DEA acted improperly, particularly given that EPIC's request principally sought information about law enforcement techniques and procedures, and that kind of information falls squarely within the protection of FOIA Exemption 7(E).

**IV.    DEA properly withheld material from the responsive records based on applicable FOIA exemptions.**

**A.    The DEA properly asserted Exemption 5 to support withholding of a draft memorandum prepared by an attorney in the DEA Office of Chief Counsel.**

The Court should uphold the DEA's application of FOIA Exemption 5, 5 U.S.C. § 552(b)(5), to the draft memorandum prepared by an attorney in the DEA Office of Chief Counsel, because DEA established through the Declaration of Katherine L. Myrick that the memorandum would be protected from disclosure in civil litigation under the attorney-client privilege, the deliberative process privilege, and the attorney work-product doctrine. EPIC contends that the declaration did not provide adequate support for application of Exemption 5, but its arguments conflict with D.C. Circuit precedent.

EPIC first contends that the deliberative process privilege is not applicable because DEA has not identified "a corresponding final decision." Pls.' Mem. 24. EPIC made the very same argument before this Court in Electronic Privacy Information Center v. U.S. Department of Homeland Security, 928 F. Supp. 2d 139 (D.D.C. 2013), appeal dismissed, No. 13-5113, 2014 WL 590977 (D.C. Cir. Jan 21, 2014), and the Court properly rejected the argument. See id. at 151–52. As the Court noted, the Supreme Court has made clear that documents may be protected by the deliberative process privilege even if they are not connected to any published final decision:

> Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared. Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.

NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975), quoted in id. In this case, the draft memorandum is protected by the deliberative process privilege because it was prepared to facilitate development of DEA's policies and procedures regarding use of Hemisphere and did not itself establish a final agency position. See Def.'s Mem. 10 (quoting Nat'l Sec. Archive v. CIA, 752 F.3d 460, 463 (D.C. Cir. 2014).

Because the deliberative process privilege is applicable, the Court can uphold the agency's assertion of Exemption 5 without examining whether the attorney-client privilege or the work-product doctrine is also applicable. However, the attorney-client privilege and the work-product doctrine also support the agency's assertion of Exemption 5.

EPIC argues that the attorney-client privilege is not applicable because the declaration does not provide enough detail to support DEA's claim that the draft was prepared in a confidential context. But the declaration states that the draft was "prepared by an attorney in the

DEA Office of Chief Counsel," "analyz[ed] legal issues regarding the procedures used to obtain information through Hemisphere," was "intended to assist senior DEA management," and contained "a draft of confidential legal advice to the DEA." Myrick Decl. ¶ 34.a. That is sufficiently specific and concrete to demonstrate that the privilege applies. See, e.g., Performance Coal Co. v. U.S. Dep't of Labor, 847 F. Supp. 2d 6, 15 (D.D.C. 2012) (upholding an assertion of Exemption 5 based on a declaration providing a comparable level of detail); Judicial Watch, Inc. v. U.S. Dep't of the Treasury, 802 F. Supp. 2d 185, 202 (D.D.C. 2011) (same); Ctr. for Medicare Advocacy, Inc. v. U.S. Dep't of Health & Human Servs., 577 F. Supp. 2d 221, 238 (D.D.C. 2008) (same); Odland v. FERC, Civil Action No. 13-141 (RMC), 2014 WL 1244773, at *9 (D.D.C. Mar. 27, 2014) (upholding an assertion of Exemption 5 and finding that the agency attorneys and staff involved in the communications did not have to be identified by name).

EPIC also contends that the draft memorandum "created agency law," Pls.' Mem. 25, but that assertion is unsupported and is controverted by the declaration, which makes clear that the document was a draft and did not establish a final policy. Myrick Decl. ¶ 34.a.

The DEA also provided sufficiently specific information to establish that the draft memorandum is protected by the attorney work-product doctrine. The declaration stated that the document "was prepared by a DEA attorney in anticipation of litigation relating to the use of Hemisphere in law enforcement." Myrick Decl. ¶ 34.a. See Delaney, Migdail & Young, Chartered v. IRS, 826 F.2d 124, 126–27 (D.C. Cir. 1987) (finding that "two memoranda analyzing the legal ramifications" of an IRS statistical sampling program were prepared in anticipation of litigation and protected by the work-product doctrine even though no specific claim had arisen at the time the memoranda were prepared).

Thus, the Court should uphold the DEA's decision to withhold the draft memorandum based on Exemption 5.[2]

### B.     The DEA properly asserted Exemption 7(D) to withhold information identifying private-sector companies instrumental in the operation of Hemisphere.

The information provided in the Declaration of Katherine L. Myrick was sufficiently specific to support the DEA's invocation of Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), to withhold information identifying private-sector companies instrumental in the operation of Hemisphere.

The Declaration of Katherine L. Myrick stated:

> According to DEA personnel who are familiar with Hemisphere, the companies provide information to law enforcement with the express expectation that both the source and the information will be afforded confidentiality and under circumstances where confidentiality can be inferred because providing the information can lead to retaliation against the companies.

Myrick Decl. ¶ 41. This statement admittedly does not provide a great amount of detail—some circumspection is necessary because of the sensitivity of the information involved. However, it is sufficiently specific to establish that information was given under express or implied assurances of confidentiality as required to support application of Exemption 7(D).

DEA has not simply relied on a presumption that any source that provides information to law enforcement has done so under an assurance of confidentiality, which is what the Supreme Court forbade in U.S. Department of Justice v. Landano, 508 U.S. 165 (1993). See id. at 174–78. And this case is not like any of the other cases that EPIC has cited, which all involved situations

---

[2] DEA also asserted Exemption 5 to support withholding of an email message from a Deputy Assistant Attorney General at the Department of Justice to other Federal Government employees. See Def.'s Mem. 8 (discussing Myrick Decl. ¶ 34.b). EPIC has not objected to the application of Exemption 5 to the email message, so DEA's withholding of that document should be upheld.

where an agency merely asserted that information was given under express or implied assurances of confidentiality, without any description of the basis for the statement. See Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice, 746 F.3d 1082, 1101 (D.C. Cir. 2014) (noting that the declaration said nothing more than that the sources "were interviewed either under express confidentiality and/or under circumstances from which an assurance of confidentiality may be implied"); Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 34–35 (D.C. Cir. 1999) ("The FBI declaration simply asserts that various sources received express assurances of confidentiality without providing any basis for the declarant's knowledge of this alleged fact."); Davin v. U.S. Dep't of Justice, 60 F.3d 1043, 1061 (3d Cir. 1995) (noting that the FBI's assertion of Exemption 7(D) was based on a "policy of the FBI to grant express assurances of confidentiality on a routine basis" without any showing that the policy was followed with the particular sources at issue). In this case, the DEA's assertion is based on information provided by DEA personnel familiar with Hemisphere that pertains specifically to the companies whose identities are at issue. Myrick Decl. ¶ 41. That is enough to establish the applicability of Exemption 7(D). Cf. Campbell, 164 F.3d at 34 (noting that "the personal knowledge of an official familiar with the source" can support application of Exemption 7(D)).

    **C.**    **DEA properly withheld information regarding law enforcement techniques and procedures under Exemption 7(E).**

DEA also properly withheld material based on FOIA Exemption 7(E), 5 U.S.C. § 552(b)(7)(E).

EPIC first contends that DEA has not provided any information about what specific law enforcement "techniques and procedures" would be disclosed by the information withheld under Exemption 7(E). Pls.' Mem. 29. That is not so; as the DEA explained in its summary judgment memorandum, all of the material withheld under Exemption 7(E) in this case pertains to a single

set of law enforcement techniques and procedures—Hemisphere and its use by law enforcement authorities to obtain access to telephone records in the course of law enforcement investigations. Myrick Decl. ¶ 43. Hemisphere and the use of Hemisphere clearly qualify as law enforcement techniques and procedures covered by Exemption 7(E). The DEA is not required to break down the techniques and procedures at issue in a more fine-grained way merely because EPIC targeted its FOIA request at one particular set of techniques and procedures. Courts have upheld invocations of Exemption 7(E) when the techniques and procedures at issue were specified at an even higher level of generality. See, e.g., PHE, Inc. v. Dep't of Justice, 983 F.2d 248, 251 (D.C. Cir. 1993) (holding that information about "documents, records and sources of information" available to investigators could be withheld under Exemption 7(E)).

EPIC also contends that DEA's invocations of Exemption 7(E) are based on "boilerplate" justifications that "merely recite[] the statutory standards." Pls.' Mem. 13–14. That is simply not true. DEA provided a concrete description of each type of information withheld under 7(E) and, for each category, explained how disclosure of the information could create a risk of circumvention of law. Myrick Decl. ¶¶ 42–45.[3]

EPIC also raises more specific objections to some of the DEA's withholdings based on Exemption 7(E), but none of these objections is valid.

First, EPIC argues that DEA has not explained how disclosure of the identities of companies instrumental in the operation of Hemisphere would assist efforts to circumvent the law. Pls.' Mem. 30. As explained in DEA's summary judgment memorandum, knowing the

---

[3] As the DEA explained in its summary judgment memorandum, it is not clear that an agency needs to show that disclosure "could reasonably be expected to risk circumvention of the law," 5 U.S.C. § 552(b)(7)(E), when withholding records that would reveal law enforcement "techniques and procedures." Def.'s Mem. 16–17.

identities of particular companies instrumental in the operation of Hemisphere would help criminals understand how Hemisphere works and how it can be evaded and would also facilitate efforts to disrupt Hemisphere, for example, by attacking facilities involved in the Hemisphere program. See Def.'s Mem. 19; Myrick Decl. ¶ 45.f; Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence, 982 F. Supp. 2d 21, 30 (D.D.C. 2013) ("There is little doubt that the names of particular datasets and the agencies from which they originate would allow interested onlookers to gain important insight into the way ODNI and its partners operate."). EPIC also suggests that DEA must point to ongoing attacks on facilities before it may invoke Exemption 7(E) based on the possibility of such attacks, but that argument is contradicted by D.C. Circuit precedent. The D.C. Circuit explained in Mayer Brown LLP v. IRS, 562 F.3d 1190, (D.C. Cir. 2009), that Exemption 7(E) does not require an agency to show an "actual or certain risk of circumvention":

> [T]he exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk.

Id. at 1193. Mayer Brown also contradicts EPIC's argument that DEA should be required to spell out in greater detail how disclosure of the material would aid circumvention of law. The court in Mayer Brown explained, "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] 'demonstrate[] logically how the release of [the requested] information might create a risk of circumvention of the law.'" Id. at 1194 (quoting PHE, Inc., 983 F.2d at 251) (third and fourth alterations in original).

EPIC also does not raise meaningful objections to the DEA's withholding of information identifying law enforcement agencies that have access to Hemisphere. Pls.' Mem. 36. The DEA explained that because every law enforcement agency has its own respective focus and sphere of

13

authority, knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor their activities to avoid apprehension. <u>See</u> Def.'s Mem. 22. It is obvious "what would be exposed if DEA were to disclose the agency names," Pls.' Mem. 39—the information that would be revealed is the fact that the named law enforcement agencies have access to Hemisphere. It is equally obvious how knowledge of that information would be helpful to criminals and criminal organizations whose activities fall in areas policed by those law enforcement agencies—those criminals and criminal organizations would be better informed about the capabilities of their pursuers. While DEA cited two cases in which this Court upheld similar withholding decisions, <u>see</u> Def.'s Mem. 22, EPIC has cited no cases in which any court rejected such a withholding decision.

DEA also properly invoked Exemption 7(E) to withhold information that would reveal the means through which DEA secures cooperation from entities instrumental to Hemisphere's operations. DEA established through the Declaration of Katherine L. Myrick that the documents containing this information were compiled for law enforcement purposes and thus meet the threshold requirement of FOIA Exemption 7. The declaration establishes that all of the responsive documents processed in response to EPIC's FOIA request were compiled for law enforcement purposes, specifically, DEA's enforcement of the Controlled Substances Act, 21 U.S.C. §§ 801–971. Def.'s Mem. 13. That is sufficient to establish "a rational nexus between the withheld material and a legitimate law enforcement purpose," particularly given that the DEA, as a law enforcement agency, is entitled to deference when it identifies material as having been

compiled for law enforcement purposes. See Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 32

(D.C. Cir. 1999); see also Blackwell v. FBI, 646 F.3d 37, 40 (D.C. Cir. 2011).[4]

DEA also established that this category of information falls within the protection of

Exemption 7(E). EPIC suggests that the means by which DEA secures cooperation from third

parties is not itself a law enforcement technique or procedure. But as explained above,

Hemisphere and its use qualify as "techniques and procedures," and details of how Hemisphere

is set up qualify for protection under Exemption 7(E). See, e.g., PHE, Inc., 983 F.2d at 251

(holding that information about "documents, records and sources of information" available to

investigators could be withheld under Exemption 7(E)). DEA also explained, based on

information provided by DEA personnel familiar with Hemisphere, that disclosure of details

regarding the means by which DEA secures cooperation could lead to disruption of those means,

which would hamper law enforcement efforts by reducing or eliminating the availability and

effectiveness of Hemisphere as a law enforcement tool. Myrick Decl. ¶ 45.k. The D.C. Circuit

has established that "circumvention of the law" includes not only potential events that would

directly facilitate criminal activity, but also potential events would inhibit investigation or

prosecution efforts:

> Exemption 7(E) clearly protects information that would train potential violators to
> evade the law or instruct them how to break the law. But it goes further. It
> exempts from disclosure information that could increase the risks that a law will
> be violated or that past violators will escape legal consequences.).

---

[4] At one point in its memorandum, EPIC seems to suggest that DEA is required to
establish specifically that the records at issue were used to "instruct law enforcement," Pls.'
Mem. 33, but that certainly is not the case. Such a narrow reading of the requirement would be at
odds with the language of Exemption 7, precedent, and common sense. Under such a reading,
even a law enforcement agent's notes from an active investigation would not be protected from
disclosure.

Mayer Brown, 562 F.3d at 1193 (fourth emphasis added). The DEA has therefore at least established a "chance of a reasonably expected risk" of circumvention of law, id., which is all that is required.

    **D.    EPIC concedes that material was properly withheld under Exemptions 6, 7(C), and 7(F).**

EPIC has not objected to the DEA's decisions to withhold material based on FOIA Exemptions 6, 7(C), and 7(F), see Def.'s Mem. 10–14, 24, so the Court should uphold those decisions. As noted in footnote 2 above, the Court should also uphold the DEA's withholding of a DOJ email message under Exemption 5, since the plaintiff has not objected to that assertion. See Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence, 982 F. Supp. 2d 21, 26 (D.D.C. 2013) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (quoting Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 284 F. Supp. 2d 15, 25 (D.D.C. 2003))).

## CONCLUSION

Because DEA conducted a reasonable search, processed and released all reasonably segregable information, and withheld information only where authorized by a statutory exemption, the Court should grant summary judgment in favor of DEA.

Date: December 22, 2014          Respectfully submitted,

                                            JOYCE R. BRANDA
                                            Acting Assistant Attorney General

                                            JOHN R. TYLER
                                            Assistant Branch Director

                                            /s/ JAMES C. LUH
                                            JAMES C. LUH
                                            Trial Attorney
                                            United States Department of Justice

Civil Division, Federal Programs Branch
20 Massachusetts Ave NW
Washington DC 20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov
Attorneys for Defendant