# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

_____
)
ELECTRONIC PRIVACY           )
INFORMATION CENTER       )
                                 )
        Plaintiff,           )
                                 )
      v.                  )     No. 1:14-cv-00317 (EGS)
                                 )
DRUG ENFORCEMENT        )
ADMINISTRATION            )
                                 )
        Defendant.      )
_____ )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff Electronic Privacy Information Center ("EPIC") respectfully submits the following Reply in support of EPIC's Cross-motion for Summary Judgment. In this case the Defendant United States Drug Enforcement Administration ("DEA") has withheld non-exempt records regarding the telephone record database "Hemisphere." The agency has not provided a sufficient *Vaughn* index, nor has it shown that its use of categorical withholdings is justified. Further, the agency continues to withhold documents improperly under FOIA exemptions 5, 7(D), and 7(E).

## ARGUMENT

### I. The Affidavit Submitted by the DEA Is Insufficient to Satisfy the Requirements of *Vaughn*

Contrary to the DEA's assertion, the affidavit submitted by the agency is insufficient to satisfy the requirements of *Vaugh v. Rosen*. The DEA claims that "the declaration grouped the material that the DEA withheld into a number of narrow categories, described the material in each category, and discussed why the exemptions asserted by the DEA applied to each category." Def. Opp. at 2. However, the DEA only "describes" and "discusses" the material in the kind of vague, broad terms that this court has found insufficient to meet the requirements of *Vaughn*. As EPIC argued in its Cross Motion for Summary Judgment, this court requires a level of detail that would permit "a reviewing court to engage in a meaningful review of the agency's decision." *Hall v. DOJ,* 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (citing *Oglesby v. Dep't of the Army,* 79 F.3d at 1176). However, the information provided by the DEA is even less complete than the language that was rejected by this court as "unduly vague and general" in *Defenders of*

*Wildlife v. U.S. Border Patrol*. 623 F. Supp. 2d 83, 89 (D.D.C. 2009).

The *Vaughn* index submitted by the Department of Homeland Security ("DHS") in *Defenders of Wildlife* provided much more detail than the Myrick Declaration offered in this case, yet this court still found that the DHS had failed to meet its burden under *Vaughn*. A typical entry from the DHS' *Vaughn* index in *Defenders of Wildlife* provided a short title unique to each document, such as "SW Border Coordination Meeting, December 2, 2003" and then offered a short description:

> Three pages Withheld in Full. Exemption (b)(5) was cited to protect the deliberative process privilege as it is applied to pre-decisional material or discussions, the general purposes of which [are] to encourage open frank discussions among personnel. Exemptions (b)(6) and (b)(7)(C) to protect personal privacy interests, and the names of government employees and law enforcement personnel, which could reasonably be expected to constitute a clearly unwarranted invasion of personal privacy. The document is a summary of meeting notes on border issues.

*Id*.

In comparison, not a single title was provided in the Myrick Declaration. Instead of a short description and relevant date, a typically entry from Myrick's Declaration categorically lumps pages together and reads as follows:

> Information naming or otherwise identifying private-sector companies that are instrumental in the operation of Hemisphere (category 7D-1, release pages 7, 16,17, 19, 22-26, 37, 43, 80, 116-17, 151, 155, 189-94, 196-98, 235, 287, 289). This category is coextensive with category 7E-6 below.

Myrick Decl.¶ 41. The Myrick Declaration fails to rise even to the insufficient level of detail provided by DHS in *Defenders of Wildlife*. The Myrick Declaration fails to identify the title or shorthand title of any document; the date the document was produced; any description - even short, one-sentence descriptions - to identify each document; or even any language to differentiate between documents within categories.

In fact, the Myrick Declaration "systematically fail[ed] to identify relevant

information such as the originating component agency, the author, and frequently the recipient(s) of the document." *Id.* at 88. *See Judicial Watch*, 449 F.3d at 150 (noting that such details mentioned above are necessary "to enable the court and the opposing party to understand the withheld information in order to address the merits of the claimed exemptions). These "bare legal conclusions regarding the exemptions" are inadequate to allow EPIC or this court to derive any meaningful information from either the redacted records or the Declaration.

## II. The Agency Has Failed to Support Its Use of Categorical Withholdings

The agency's opposition offers no serious argument in support of categorical withholdings for either exemption 7(D) or exemption 7(E). In response to EPIC's thorough discussion of the Supreme Court's rejection of categorical withholding in FOIA cases, the DEA merely restates, "The DEA's Vaughn submission in this case does not employ that type of 'categorical' treatment." Def. Opp. at 3. The DEA mischaracterizes the organization of its declaration, asserting, "The declaration grouped the material that the DEA withheld into a number of narrow categories, described the material in each category, and discussed why the exemptions asserted by the DEA applied to each category." Def. Opp. at 2. In fact, the declaration is not grouped by "narrow categories," but by exemption. Each "category" in the declaration is demarcated with a bold, underlined header listing the exemption number, and consists of an explanation of the exemption asserted, followed by a list of page numbers that correspond to that exemption. Def. Decl. ¶¶ 32 – 48. The DEA's analysis does not proceed "document-by-document," as the D.C. Circuit has required. *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994). *See also* Pl. Cross Mot. Summ. J and Reply at 14. Instead, DEA employs the "categorical" treatment in its declaration, and then flatly denies doing so.

The DEA next attempts to differentiate the Myrick Declaration in this case from the Hardy Declaration in *CREW* by explaining that the D.C. Circuit "was referring to the practice of asserting a FOIA exemption with respect to an entire category of documents without specifically identifying the documents or portions of documents withheld." Def. Opp. at 3 (citing *CREW v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014). But this is exactly what the DEA has done in its Declaration. For example, the DEA's description of all documents that were withheld under Exemption 7(D) is based on this assertion: "DEA applied FOIA Exemption 7(D) to one category of information: Information naming or otherwise identifying private-sector companies that are instrumental in the operation of Hemisphere" (parenthetical omitted). Decl. at 15. The Hardy Declaration gave a near-identical explanation for the FBI's withholdings in *CREW*. In that case, Mr. Hardy wrote, "Exemption 7(D) is asserted to protect the identities of, and information received from, individuals who provided information to the FBI during the course of the joint FBI-OGA investigation." *CREW,* 11-cv-00592-RJL, Dkt. 9-3 ¶38.

Like the FBI in *CREW*, the DEA has made no effort to differentiate between the types of records withheld – the DEA could be withholding statements of work, email exchanges, internal memoranda, bids from contractors, or anything else. The DEA also does not reveal how many documents it is withholding or when the documents were produced. Moreover, neither EPIC nor this Court has any way to determine how or why 7(D) was applied to the withheld information, or whether those withholdings were appropriate. For the reasons EPIC discussed in the Cross Motion for Summary Judgment and Opposition, the D.C. Circuit rejected the FBI's nearly identical justification for its 7(D) categorical withholding in *CREW*. And the DEA has offered little evidence that its declaration in this

case differs from the FBI's in *CREW*.

### III. DEA's Exemption 5 Arguments Are Unavailing

A. <u>Deliberative Process</u>

The agency contends that the memorandum should be withheld under Exemption 5 because it is "deliberative" and it was intended to facilitate the development of the agency's final "position on policies and procedures." However the agency has failed to disclose any other document that embodies a final policy or procedure. That the Hemisphere program – which implicates the privacy rights of millions of Americans - moved forward under the agency's direction would appear to indicate that a final decision was made, and if no other document exists the policies and procedures governing that program, then this "draft" memorandum has, in effect, become final.

The agency cites *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) for the proposition that it should not be compelled to produce the memorandum because no corresponding final document exists. But *NLRB v. Sears*, in fact, illustrates the opposite. In *NLRB v. Sears*, the Court considered the withholding of two different kinds of memoranda: (1) memoranda that resulted in employment prosecutions and (2) memoranda that did not.  The Court required the agency to disclose Advice Memoranda in cases where the agency decided not to go forward with employment law prosecutions because these memoranda were the final embodiment of policies – no other policy statements beyond these memoranda existed. The memoranda were, in effect, final law because they were the last analysis to support a decision that would affect the public. According to the DEA's Exemption 5 analysis, that is the case here. The agency has not been able to produce any final policies or procedure documents, yet the program has

obviously gone forward. Hence, this document is effectively the final  memorandum regarding the policies and procedures governing this program and may not be withheld under Exemption 5..

In *NLRB v. Sears,* the Court allowed the NLRB to withhold the other set of memoranda because the cases were ongoing and the agency's arguments for prosecuting be subsequently released. "The public's interest in disclosure is substantially reduced by the fact, as pointed out by the ABA Committee, that the basis for the General Counsel's legal decision will come out in the course of litigation before the Board." *Id.* at 160 (citations omitted).  In contrast, there is no alternate administrative procedure that would lead to the release of the legal memo sought in this case. This FOIA request is the best hope for the public to gain some understanding of the legal and policy basis for the program.

Additionally, in determining if a document is predecisional, "[t]he identity of the parties to the [document] is important." *Coastal States Gas Corp.,* 617 F.2d 854, 868 (D.C. Cir. 1980). The DEA has failed to provide the identities of "Federal government employees" on the email. Myrick Decl.¶ 34 b. The D.C. Circuit has ruled that "a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made." *Id*. The DEA provided no information as to whether the email containing a preliminary assessment of the three issues relating to features of the Hemisphere program was distributed to DEA field agents, DMV employees, or to DEA senior management. The DEA's brief explanation also does not establish how the document reflects the "give-in-take" necessary for the

deliberative process. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 617 (D.C. Cir. 1997); *See also Coastal States,* 617 F.2d at 866.

An email merely "evaluating the strengths and weakness of alternative views. . . does not make [it] deliberative. The government's opinion about what is not the law and why it is not the law is as much a statement of government policy as its opinion about what the law is." *Tax Analysts*, 117 F.3d at 617. Advisory legal memoranda from counsel to field personnel, even if "nominally non-binding," are "considered statements of the agency's legal position." *Id. See also Coastal States*, 617 F.2d at 869 (holding that memoranda from regional counsel to auditors in field offices must be disclosed as they "represent[ed] interpretations of established policy on which the agency relies in discharging its regulatory responsibilities."); *Public Citizen, Inc. v. OMB*, 598 F3d 865, 875 (D.C. Cir. 2009) (holding that memoranda prepared by the OMB to the extent that it reflected OMB's "formal or informal policy" that OMB did, in fact, apply, could not be withheld under Exemption 5). Such distributed interpretations of legal issues "are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public." *Coastal States,* 617 F.2d at 868 (quoting *Sterling Drug,* 450 F.2d at 708). As EPIC explained in its Cross Motion for Summary Judgment, an agency is not allowed to develop "a body of secret law used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.' " *Schlefer v. United States,* 702 F.2d 233, 244 (D.C. Cir. 1983) (internal quotations omitted). FOIA itself reflects "represents a strong congressional aversion to secret (agency) law and represents an affirmative congressional purpose to require disclosure of documents which

have 'the force and effect of law.'" *N. L. R. B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 153 (1975) (some internal quotation marks and citations omitted) (quoting H.R. Rep. No. 1497, p. 7, U.S.Code Cong. & Admin.News, 1966, p. 2424). The DEA's description of the withheld email and its recipients is insufficient to establish that the email was either predecisional or deliberative.

Even if the DEA is able to establish that the two documents withheld under Exemption 5 are deliberative and predecisional, it still failed to conduct a sufficient segregability analysis. In respect to documents within the purview of Exemption 5, "FOIA requires an agency to provide 'any reasonably segregable portion of a record ... after deletion of the portions that are exempt.'" *Sierra Club v. U.S. Dep't of Interior*, 384 F. Supp. 2d 1, 28 (D.D.C. 2004) (*citing* 5 U.S.C. § 552(b)).  In *Sierra Club*, this court could not determine if Exemption 5 applied to portions of the draft "without a better description by which to discern whether [the portions] are merely reports of past [factual] work or truly predecisional drafts." *Id*. at 29.  The Court ordered the DOI to either release the sections in questions or "provide a better description of their exempt status." *Id*. The agency may justify withholding portions of records under Exemption 5 only where it has sufficiently explained in its Vaughn indices and affidavits "why there was no reasonable means of segregating factual material from the claimed privileged material." *Nat'l Whistleblower Center v. Dep't of Health & Human Servcs.*, 903 F. Supp. 2d 59, 70 (D.D.C. 2012) (citing *Wilderness Soc'y v. U.S. Dep't of Interior,* 344 F. Supp. 2d 1, 18 (D.D.C. 2004)). The DEA's short descriptions of why the materials should be excluded under Exemption 5 lacks a specific and discrete analysis of segregability for each separate document for the Court to review.

B. <u>Attorney-Client Privilege</u>

The agency's claims that these documents can be withheld under Attorney-Client

Privilege are also flawed.

1. *Confidential Context*

The DEA's claim that the draft was prepared in a confidential context is not

sufficient for the type of legal advice distributed in this case. Merely asserting that a

communication arises from an attorney-client relationship is not enough for a FOIA

exemption. *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 252 (D.C.

Cir. 1977). The documents withheld in *Judicial Watch*, cited by the agency, "differ from

the type of documents addressed in a line of cases in this Circuit that limit the

applicability of attorney-client privilege for documents in which agency lawyers have

provided legal advice about the application of regulations or statutes to the circumstances

of third parties." *Judicial Watch, Inc. v. U.S. Dep't of Treasury*, 802 F. Supp. 2d 185,

201-02 (D.D.C. 2011). In *Judicial Watch*, the withheld documents were prepared for "the

agency's own actions in its ongoing *evaluation* of [a third party] under the Interim Final

Rule." *Id.* at 202 (emphasis added). The court made clear that documents prepared for

legal evaluation of a third party's action could be withheld under attorney-client privilege

in contrast to the prior decisions of *Schlefer v. United States* and *Tax Analysts v. IRS. Id*.

In those cases, the court decided that documents could not be withheld under the

attorney-client privilege exemption when the agency staff had "requested legal advice

regarding how to apply relevant law in decisions that would affect the third party *who*

*provided the agency with information* or other similarly situated third parties." *Id*.

(emphasis added).

In *Schlefer*, the Maritime Administration agency officials requested from the Chief Counsel of the Maritime Administration advice on how to address factual information provided by a third party who sought a ruling from the Agency. As the third party's communication to the Agency official did "not contain any confidential information *concerning the Agency,*" the D.C. Circuit determined that communications between agency officials and counsel does "not fall within the scope of the attorney-client privilege and are not within FOIA Exemption 5. 702 F.2d 233, 245 (D.C. Cir. 1983). Similarly, In *Tax Analysts*, the D.C. Circuit held that legal memorandum from the IRS Office of the Chief Counsel to field personnel was not protected under attorney-client privilege because the legal guidance was used by agency personal to respond to requests from third parties. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 619 (D.C. Cir. 1997).

In the instant case, the legal advice concerns "procedures used to obtain information through Hemisphere." Def. Decl. ¶ 34(a).  Just as in *Schlefer* and *Tax Analysts*, the legal advice between agency officials and counsel concern information the DEA obtains from third parties. Any legal guidance concerning policies and procedures affecting such third parties should not be withheld under attorney-client privilege. *Judicial Watch*, 802 F. Supp. 2d at 202.

## 2. *Identification of source and recipients of communications*

In addition, for an agency to assert attorney-client privilege, it must show that the document ""(1) involves 'confidential communications between an attorney and [his or her] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F.Supp.2d 252, 267 (D.D.C. 2004) (quoting *Mead* 566 F.2d at 252). In invoking the privilege, the DEA must establish

"each of the following essential elements" in its claim:

> (1) the holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client.

*Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 153-54 (D.D.C. 2012) (referencing *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984)). It is "critical to the Court's assessment of whether the communications are between an attorney and a client" that the agency identify "the source and recipient of the communications" *Ctr. For Medicare Advocacy, Inc. v. U.S. Dep't of Health & Human Servs.*, 577 F. Supp. 2d 221, 238 (D.D.C. 2008). While the names of parties do not need to be identified, the defendant must clearly provide "adequate information" to establish who are the source and recipients. *Odland v. Fed. Energy Regulatory Comm'n*, No. CV 13-141 (RMC), 2014 WL 1244773, at *9 (D.D.C. Mar. 27, 2014). The DEA failed to do so when it simply stated that the document withheld was "[a]n email message from a Deputy Assistant Attorney General at DOJ to other Federal government employees." Myrick Decl.¶ 34 b.

As established in *Mead*, an agency must be able to show that the documents and the confidential information therein were circulated no further than among individuals "of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication." *Mead*, 566 F.2d at 252 n. 24. As noted in *Coastal States Gas Corp. v. DOE*, "The purpose of the privilege is limited to protection of confidential facts. . . [i]f facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are

confidential." 617 F.2d 854, 863 (D.C. Cir. 1980). The Court declined to allow the

attorney-client privilege exemption in *Costal* as the agency failed to establish that it had

made "some attempt" to "limit disclosure of the documents to the agency personnel

responsible for the [evaluation][1] under discussion in the memorandum." *Id*. at 863-64.

*See also Canadian Javelin, Ltd. v. SEC*, 501 F. Supp. 898, 902 (D.D.C. 1980) (noting that

confidentiality "requires limited access to the documents within the agency itself.");

*Judicial Watch*, 841 F. Supp. 2d at 154 (holding that DHS's assertion of attorney-client

privilege in first motion for summary judgment was insufficient basis as it had "failed to

provide *any* basis for this Court to find that the confidentiality of the communications at

issue had been maintained") (emphasis in original); Compare *Judicial Watch, Inc. v. U.S.*

*Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 145 (D.D.C. 2013); (holding that DHS's

description of efforts made to identify and contact "all fifty-two senders and/or recipients

of the documents to ensure that the information contained therein had not been

transmitted outside of the agency, or outside of agency counsel" was sufficient to

establish that the confidentiality of the materials at issue was maintained.)

The DEA's assertion that "[a]n email message from a Deputy Assistant Attorney

General at DOJ to other Federal government employees" is insufficient to justify

attorney-client privilege.  Myrick Decl.¶ 34 b. The DEA does not meet its burden of

establishing efforts to limit disclosure of documents to agency personnel responsible

"preliminary assessment of three issues relating to features of the Hemisphere program."

*Id*. The DEA does not even inform the Court whether the "other Federal government

employees" were DEA organizational members, a requirement in invoking the attorney-

---

client privilege. If the Federal government employees were members of other departments or agencies, a distinct possibility, given the vague description provided by the Myrick Declaration, then the information was "transmitted outside the agency" and does not fall under attorney-client privilege. *Judicial Watch*, 926 F. Supp. 2d at 145. *See also Canadian Javelin*, 501 F. Supp. at 902 (holding that "[s]uch confidentiality requires limited access to the documents within the agency itself"). Even under the limited requirements established by *Odland*, the DEA's assertion fails to relay "adequate information" to the Court.

### IV. The Agency Has Not Met Its 7(D) Burden

The agency's arguments regarding Exemption 7(D) are unavailing. The DEA once again fails to identify a single case where a corporation has been considered a "confidential informant" under this exemption. EPIC's Cross Motion for Summary Judgment cited clear precedent that corporations do not qualify as confidential informants under Exemption 7(D). *DOJ v. Landano*, 508 U.S. 165, 175 (1993) (finding that "telephone company that releases phone records" is not a confidential informant under Exemption 7(D)). The recognition of corporations as confidential informants would be an unprecedented expansion of Exemption 7(D) and would conflict with the Supreme Court's holding in *Landano*.

### A. The Agency Has Failed to Meet Its Burden of Demonstrating Express or Implied Confidentiality

Even if a corporation can be considered a confidential informant, the agency has also failed to offer probative evidence to support its assertions of confidentiality.

*1. Express Confidentiality*

In order to withhold materials under Exemption 7(D), an agency must offer

"probative evidence that the source did in fact receive an express grant of confidentiality," which the Myrick Declaration failed to do. *Campbell v. DOJ,* 164 F.3d 20, 34 (D.C.Cir.1998) (quoting *Davin v. DOJ,* 60 F.3d 1043, 1061 (3d Cir.1995)). While the D.C. Circuit has held that evidence of express assurance of confidentiality can come in many forms, a statement provided by a declarant that lacks personal knowledge is not sufficient. *Campbell*, 164 F.3d at 35, as amended (Mar. 3, 1999); (*See also Maydak v. DOJ*, 254 F. Supp. 2d 23, 44 (D.D.C. 2003) (The D.D.C. ruled that the declaration that express promises of confidentiality were granted by the Acting Chief of the Litigation Unit, FOIAPA Section, Office of Public and Congressional Affairs at FBI Headquarters was insufficient as he "does not assert personal knowledge about the circumstances surrounding the imparting of the information."); *Davin v. DOJ*, 60 F.3d 1043, 1061 (3d Cir. 1995) *holding modified by Abdelfattah v. DHS*, 488 F.3d 178 (3d Cir. 2007) ("Proof could take form of declarations from the agents who extended the express grants of confidentiality)).

Even if the Court deems the Myrick Declaration a valid method used by the DEA to meet its burden of proof, its statement "must permit meaningful judicial review by providing a sufficiently detailed explanation of the basis for the agency's conclusion." *Campbell v. DOJ,* 164 F.3d 20, 34 (D.C.Cir. 1998). As the Supreme Court explained in *Landano*, "Once the FBI asserts that information was provided by a confidential source ... the requester—who has no knowledge about the particular source or the information being withheld—very rarely will be in a position to offer persuasive evidence that the source in fact had no interest in confidentiality." 508 U.S. at 177. This Court recently stated that "boilerplate" assertions will not meet this probative standard. *CREW v. U.S.*

*Dep't of Justice*, 746 F.3d 1082, 1101 (D.C. Cir. 2014).

Case law makes clear that an agency must provide sufficiently detailed explanation to permit meaningful judicial review. In *Roth v. DOJ*, the D.C. Circuit noted that its *in camera* review "disclose[d] two instances in which the FBI's stated explanation for redacting information under Exemption 7(D) fails to correspond to the information actually contained in the documents" and thus, despite FBI's Hardy Declaration, the agency had failed to meet its burden of proof that express assurances were provided. 642 F.3d 1161, 1186 (D.C. Cir. 2011). Myricks' one sentence declaration fails to provide any information that would allow for such meaningful *in camera* review by the Court to determine whether express assurances were provided.

### 2. Implied Confidentiality

Without additional details, a "telephone company that releases phone records" does not have a presumption of confidentiality. *Landano*, 508 U.S. at 175. The Myrick Declaration does not provide any description of *Roth* factors for the Court to determine if implied confidentiality exists. As the D.C. Circuit laid out in *Roth*, courts can rely on a "number of factors to determine whether the source" spoke with implied confidentiality. *Id*. at 1184. ("These factors include 'the character of the crime at issue,' 'the source's relation to the crime,' whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.'" (*citing Landano*, 508 U.S. at 179)). The DEA's affidavit does not contain any information that satisfies these *Roth* factors. *See Sennett v. DOJ*, 962 F. Supp. 2d 270, 285-86 (D.D.C. 2013) (noting that FBI's simple explanation of the character of the

crime without any further information on other *Roth* factors was "so sparse [in detail] that the Plaintiff [did] not have sufficient information to challenge whether the circumstances support an inference of confidentiality." (internal quotation marks omitted).

Although the nature of the crime being investigated and the informant's relation to it may support the inference of reasonably inferred confidentiality, the Court tends to limit these "generic circumstances" to crimes involving violence. *Landano*, 508 U.S. at 179. *See Williams v. FBI,* 69 F.3d 1155, 1159–60 (D.C.Cir.1995) (*per curiam*) (identifying "rebellion or insurrection, seditious conspiracy, and advocating overthrow of the government" by criminal organizations with histories of violence as warranting the inference); *Mays v. DEA*, 234 F.3d 1324, 1329–31 (D.C. Cir. 2000) (identifying drug trafficking as warranting the inference); *Owens v. DOJ,* Civil Action No. 04–1701(JDB), 2007 WL 778980, at *11 (D.D.C. Mar. 9, 2007) (identifying terrorist attacks as warranting the inference). *Cf. Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.,* 72 F.3d 897, 906 (D.C.Cir. 1996) (refusing to identify computer crimes as warranting the inference). The Court has explicitly rejected a source's mere business, professional, and/or social contact with an investigation subject as justifying an inference of confidentiality. *Quinon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996). It went on to say, "[t]he mere fact that a source may have some social or business association with the subject of a federal criminal investigation falls short of the particularity mandated by *Landano. Id. See also Island Film, S.A. v. Dep't of the Treasury*, 869 F. Supp. 2d 123, 137 (D.D.C. 2012) (noting that financial transactions were "economic in nature and not inherently violent, providing information regarding sanctions violations is more closely analogous to providing information on computer crimes than to providing information

about rebellion or insurrection, drug trafficking or terrorism."). Given that the Supreme

Court has explicitly stated that telephone companies releasing records does not warrant

the inference of confidentiality, the DEA has not met its burden of proof that the

companies providing information did so under circumstances where confidentiality can

be inferred.

**V. The Agency Has Not Met Its 7(E) Burden**

   **1. The DEA Has Failed to Satisfy the "Rational Nexus" Test**

   Contrary to the DEA's assertions, the Myrick Declaration failed to meet the

agency's burden of justifying its withholding under Exemption 7(E). As EPIC discussed

in the Cross Motion for Summary Judgment, a law enforcement agency may only

withhold records under exemption 7(E) if they were "compiled for law enforcement

purposes." In order to meet this standard, the agency must "establish a rational 'nexus

between [the withholding] and one of the agency's law enforcement duties,' " as well as a

"connection between an 'individual or incident and a possible security risk or violation of

federal law.'" *Campbell v. DOJ*, 164 F.3d 20, 32 (D.C. Cir. 1999) (quoting *Pratt*, 673

F.2d 408, 419 (D.C. Cir. 1982)).

   However, the DEA has failed to provide the kind of detail that this court requires.

The D.C. Circuit "has made clear. . . that an agency's broad claim that its files are law

enforcement files—without addressing the particular documents at issue—is insufficient

to establish that the specific documents in dispute within those files are law enforcement

records under FOIA." *Lardner v. DOJ*, 638 F. Supp. 2d 14, 32-33 (D.D.C. 2009) *aff'd sub*

*nom. Lardner v. DOJ*, 398 F. App'x 609 (D.C. Cir. 2010); *See Campbell,* 164 F.3d at 32

(D.C. Circuit noted that an agency's claim that "anything in [a law enforcement agency's]

file pertains to an exempt law enforcement purpose" has been "long rejected").

In fact, to justify withholding, the DEA relies on a decision in which this Court found that the agency had *not* provided sufficient detail to meet the "rational nexus" requirement. Def. Opp. at 14-5. *See Campbell*, 164 F.3d at 33. In *Campbell*, the D.C. Circuit held that, where the labels of files were disclosed but the contents of the files were withheld under 7(E), "the FBI must demonstrate the relationship between a record and its label and between the label and a law enforcement purpose." *Id*. The D.C. Circuit further found that the FBI did not establish a "rational nexus" where the agency applied the same overbroad language to every withheld document. The Court explained:

> If the statement were offered to justify exemption of a particular document, it might suffice provided it contained sufficient detail about the scope of the association and the nature of the threat. The problem, however, is that the Department relies on this statement to justify every withholding from each of at least three files collected over many years on different topics in different contexts.

*Id*. at 32-33. *See also Am. Immigration Council*, 950 F. Supp. 2d 245-46 (holding that an agency's conclusion that information requested that related to activities "preformed[ed] in a law enforcement and national security context" did not supply facts in sufficient detail to meet the nexus test)(internal quotation marks omitted); *Friedman v. U.S. Secret Serv.*, 923 F. Supp. 2d 262, 283 (D.D.C. 2013) (noting that an agency's "conclusory statement" that disclosing information would "reveal 'guidelines for law enforcement investigations or prosecutions that could reasonably be expected to risk the circumvention of the law" was not descriptive enough to establish that the information withheld fell within the scope of Exemption 7(E)); *Compare Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011) (which found FBI's entitlement to deference convincing because the plaintiff sought records relating to his own criminal prosecution).

However, this is precisely what the DEA has done. Like the declarations in *Campbell*, the Myrick Declaration does not address the particular documents at issue in "sufficient detail" even to apply the rational nexus test. *Id*. at 32. In the same way, the DEA has failed to clearly demonstrate the relationship between the withheld material and its relationship to law enforcement purposes. *Id*. In addition, the Myrick declaration provides only the kind of conclusory statements rejected in *Campbell*. For example, the Myrick declaration uses the phrase "Knowledge of this information could help criminals tailor or adapt their activities to evade apprehension" to large swaths of pages. Myrick Decl. ¶ 45. This bare assertion fails to connect a specific "individual or incident and a possible security risk or violation of federal law" as well as establish a "rational nexus between [the withholding] and one of the agency's law enforcement duties. " *Id.* at 32 (internal quotation marks and citation omitted). In addition, the DEA's broad claim that establishing "all documents processed in response to EPIC's FOIA request were compiled for law enforcement purposes, specifically, DEA's enforcement of the Controlled Substances Act" is enough to satisfy the rational nexus test is clearly at odds with this Courts precedence. Def. Reply 14; *Lardner*, 638 F. Supp. 2d at 32; *Campbell,* 164 F.3d at 32; *Quinon,* 86 F.3d at 1229

**2. DEA May Not Withhold the Identity of Other Agencies Under (7)(E)**

DEA asserts that EPIC's failure to address two cases justifies its right to withhold the identities of other cooperating agencies under exemption 7(E). Def. Opp. at 14. But this is simply not true. The two cases cited by DEA do not support the propositions for which they are cited. DEA uses the first case, *Light v. DOJ,* to justify its "application of Exemption 7(E) to withhold information regarding the identity and expertise of investigating law

enforcement units." Def. Opp. at 22. But this interpretation is misleading. In *Light*, this court upheld the FBI's right to withhold the "location, identity, and expertise of investigating FBI units, as this could allow an individual to avoid or circumvent those locations. . . ." *Light v. Dep't of Justice*, 968 F. Supp. 2d 11, 29 (D.D.C. DATE?) *reconsideration denied sub nom. Truthout v. Dep't of Justice*, 968 F. Supp. 2d 32 (D.D.C. 2013). This court approved the application of 7(E) to withhold the specific investigative units within the FBI, but the identity of the agency at issue was known to everyone. DEA broadens the expanse of this ruling when it claims that it supports its efforts to withhold names of entire law enforcement agencies.

DEA also relied upon *Pons v. United States Customs Serv.*, an almost twenty-year-old case never cited by any other D.C. District or Circuit court in the years since. 1998 U.S. Dist. LEXIS 6084, 20 (D.D.C. Apr. 23, 1998). This narrow case concerned an individual convicted for two counts of conspiracy to distribute and distribution of cocaine who sought information about his own arrest from U.S. Customs Service. In that case, the court allowed the names of the agencies cooperating in prosecuting that plaintiff's particular case to be withheld, as it might facilitate circumvention of the law in similar cases Customs was pursuing. *Id*. at 20. However, far from seeking to prevent the recurrence of a particular crime based on law enforcement's treatment of a particular criminal case, the DEA seeks to withhold the names of "law enforcement units" with access to a massive telephone record collection program that gathers information on millions of individuals.

DEA's argument that it has met its burden of explaining why the identities of companies instrumental in the operation of Hemisphere fall under an Exemption 7(E) is not persuasive. In particular, DEA relies on language in *EPIC v. ODNI* to buttress its

arguments while failing to mention that the language it excerpted was in reference to an

Exemption 3 analysis. 982 F. Supp. 2d 21, 29-30 (D.D.C. 2013). The court never

addressed ODNI's Exemption 7(E) arguments. *Id*. Moreover, this court's rationale for

permitting ODNI's withholdings relied on considerations of national security. This court

concluded that Exemption 3 protected the information only after reviewing "the relevant

records *in camera,* and taking into account the 'special deference owed to agency

affidavits on national security matters.'" *Id*. at 30, 31 (quoting *Schoenman v. FBI,* 841 F.

Supp. 2d 69, 84 (D.D.C. 2012)). The level of detail required to justify withholding

national security information under an exemption 3 statute differs enormously from the

level of detail required to justify a 7(E) withholding.

     The DEA is correct that Exemption 7(E) requires an agency to "demonstrate[]

logically how the release of [the requested] information might create a risk of

circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir.

2009) (alterations in original). However, it is incorrect in asserting it has "logically

shown how a risk of circumvention might result" as the IRS did in *Mayer Brown*. *Id*. at

1193. In *Mayer Brown*, the D.C. Circuit focused on how releasing documents related to

"settlement strategies and objectives, assessments of litigating hazards, [and] acceptable

ranges of percentages for settlement." *Id*. at 1192 (alterations in original) (quotation

marks and internal citations omitted). For instance, the Court analyzed how "acceptable

settlement ranges quite clearly affect[] the cost-benefit analysis of potential evaders

because it informs their economic calculus." *Id*. at 1193. The D.C. Circuit further

analyzed how the released information could directly lead to a construction of a "phony

tax shelter" because the statistics release could influence the cost-benefit analysis and

also examined potential hypothetical settlement ranges that could change criminals'
behavior. *Id*. at 1193, 1195.

However, the DEA has failed to demonstrate how withholding the names of
companies transferring records to the Hemisphere database satisfies the *Mayer Brown*
standard. As EPIC pointed out in EPIC's Cross Motion, the agency repeated the same
nebulous boilerplate language more than ten times in the Myrick Declaration, that the
documents would "help criminals tailor or adapt their activities to evade apprehension."
The DEA provided a similarly vague one-sentence analysis in its original Motion for
Summary Judgment that "[c]riminals could use this information to evade detection or
disrupt Hemisphere's operations." Def.'s Mem. 19. DEA suggested that revealing the
names of the companies might help criminals  "understand how Hemisphere works and
how it can be evaded," or "facilitate efforts to disrupt Hemisphere, for example, by
attacking facilities involved in the Hemisphere program." Def.'s Rep. 13. Those two
sentences are the sole extent of DEA's proffered reasoning. The DEA provides no further
explanation linking the disclosure of a public telecommunications company's name to
any "reasonably expected risk." *Mayer Brown*, 562 F.3d at 1193. The DEA has
constructed a possible scenario, but has not "logically" demonstrated a likely outcome.
*Id*. at 1194.

## CONCLUSION

Because the defendant has improperly relied on categorical withholdings and has
improperly withheld records under Exemptions 5, 7(D), and 7(E), the Court should deny
the government's motion for summary judgment and grant Plaintiffs' cross-motion for
partial summary judgment.

Dated: January 12, 2015

Respectfully submitted,
MARC ROTENBERG
President and Executive Director

*/s/ Ginger P. McCall*
GINGER P. MCCALL
D.C. Bar # 1101104

JULIA HORWITZ
D.C. Bar # 1018561

ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Ave, NW #200
Washington, DC 20009
Telephone: (202) 483-1140
Fax: (202) 483-1248
foia@epic.org

Attorneys for Plaintiff