**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
ELECTRONIC PRIVACY INFORMATION )
CENTER,                        )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )   Civ. Action No.14-317 (EGS)
                               )
UNITED STATES DRUG             )
ENFORCEMENT AGENCY,            )
                               )
          Defendant.           )
_____)
```

**MEMORANDUM OPINON**

The United States government collects data on nearly four billion telephone calls every day. The data is added to a database used by the Hemisphere Project ("Hemisphere"), a program utilized by multiple government agencies. Defendant the United States Drug Enforcement Agency ("the DEA"), utilizes Hemisphere in cooperation with private corporations to combat illicit drug activity. Although the existence of Hemisphere was widely reported in 2013, details of the program remain unknown.

In February 2014, Plaintiff Electronic Privacy Information Center ("EPIC") filed this lawsuit seeking injunctive relief following the DEA's response to EPIC's Freedom of Information Act ("FOIA") requests. Compl., ECF No. 1 at ¶¶ 1-2. The primary FOIA requests at issue in this case sought the government's

analysis of legal and privacy issues related to Hemisphere. Both parties now move for Summary Judgment. ECF Nos. 15 and 17. EPIC claims the DEA's search for responsive records was insufficient and that certain documents were unlawfully withheld. Pl.'s Mem. Supp. Summ. J., ECF No. 17, Ex. 1. The DEA maintains that its search was reasonable and documents were lawfully withheld. Def.'s Mem. Supp. Summ. J., ECF No. 15. Upon consideration of the motions, the responses and replies thereto, the applicable law, and the entire record, Plaintiff's Motion for Summary Judgment is **DENIED in part** and **HELD IN ABEYANCE in part** and Defendant's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part.**

## I.  BACKGROUND

### A. The Hemisphere Program

Hemisphere is a program that grants law enforcement officials access to an AT&T database containing "decades of American's phone calls." Compl. ¶ 6 (*quoting Drug Agents Use Vast Phone Trove, Eclipsing N.S.A.'s*, New York Times, September 1, 2013).[1] Operational since 2007, Hemisphere adds nearly four billion calls to its database daily, including details about

---

[1]  Although media reports cite AT&T as one of the private corporations assisting the government with Hemisphere, the government has never confirmed this allegation and one of the issues disputed in this lawsuit is whether the identity of private institutions assisting the government should be disclosed.

caller location. *Id.* ¶ 9. AT&T manages the database and the DEA pays AT&T staff to provide law enforcement agents with direct access to the call information. *Id.* ¶ 7. According to the New York Times, Hemisphere is funded through the White House's Office of National Drug Control Policy. *Id.* ¶ 11.

**B. EPIC's November 2013 FOIA Request and the DEA's Response**

EPIC's November 15, 2013 FOIA request sought four categories of documents from the DEA:

(1)  All Hemisphere training modules, request forms, and similar final guidance documents that are used in the day-to-day operation of the program;

(2)  Any analyses, memos, opinions, or other communications that discuss the legal basis of the program;

(3)  Any analyses, memos, opinions, or other communications that discuss the privacy impact of the program; and

(4)  Any presentations, analyses, memos, opinions or other communications for Congress that cover Hemisphere's operations.

*Id.* ¶ 14.[2]

The DEA identified six offices at its headquarters likely to have responsive records: the Operations Division, the Intelligence Division, the Office of Training, the Office of Chief Counsel, the

---

[2] EPIC's first FOIA request, sent September 25, 2013, was challenged by the DEA as not reasonably describing the requested records, in violation of FOIA standards and Department of Justice regulations. Compl. ¶¶ 22-24. EPIC modified its letter and resent the requests in November 2013. *Id.*

Office of Information Systems, and the Office of Congressional and Public Affairs. Katherine L. Myrick Decl. ("Myrick Decl.") ¶ 10, Def.'s Mem. Supp. Summ. J., Ex. 3. The DEA's Atlanta, Houston, Los Angeles, and Washington, D.C. division offices were also asked to search for responsive records. *Id.* ¶ 16. In July 2014, the DEA responded to EPIC's FOIA request with 319 responsive documents. *Id.* ¶ 11. Of those documents, 39 were released in full, 176 were released in part and withheld in part, and 104 were withheld in full. *Id.*

## II.  Standard of Review

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Mastushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm. Inc. v. Bd. Of Governors of Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 130 (D.D.C. 2011) (citations omitted). In ruling on cross-motions for summary judgment, the

court shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Shays v. FEC,* 424 F.Supp.2d 100, 109 (D.D.C.2006). *Winston & Strawn LLP v. F.D.I.C.*, CIV.A.06 1120 EGS, 2007 WL 2059769, at *3 (D.D.C. July 13, 2007).

**B. FOIA**

FOIA requires agencies to disclose all requested agency records, unless one of nine statutory exemptions applies. 5 U.S.C. § 552 (a), (b). Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Morley v. C.I.A.*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (*quoting Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). Because disclosure rather than secrecy is the "dominate objective of the Act," the statutory exemptions are "narrowly construed." *See McKneely v. United States Dept. of Justice*, 2015 WL 5675515 at *2 (D.D.C. 2015) (internal citations omitted).

The government bears the burden of justifying nondisclosure, either through declarations or an index of information withheld. *See e.g., Consumers' Checkbook*, 554 F.3d 1046 at 1057 (D.C. Cir. 2009) and *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) (holding that an indexing system was necessary

in FOIA cases to "(1) assure that a party's right to information is not submerged beneath governmental obfuscation and mischaracterization, and (2) permit the Court system effectively and efficiently to evaluate the factual nature of disputed information.").

Agency affidavits and declarations must be "relatively detailed and non-conclusory." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (internal citation and quotation omitted). Courts must conduct a *de novo* review of the record and may grant summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations that describe the documents and justifications for nondisclosure with "reasonably specific detail." *Cause of Action v. Federal Trade Com'n*, 961 F. Supp. 2d 142, 153 (D.D.C. 2013)(*quoting Military Audit Project v. Casey*, 656 F. 2d 724, 738 (D.C. Cir. 1981)).

## III. Analysis

### A. The DEA's search was reasonable

EPIC challenges the sufficiency of the DEA's search for

documents relating to privacy issues, the third category of
documents listed in EPIC's request, arguing that "it is
difficult to believe that such a far-reaching, invasive program
would not have triggered some privacy analysis or discussion
that would be responsive to the third prong of EPIC's request."[3]
Pl.'s Mem. Opp. Def.'s Summ. J., (Pl.'s Mem. Opp.), ECF No. 18
at 22.[4] The DEA maintains that EPIC's argument that the search
was unreasonable because certain documents "should exist" has
been rejected by the D.C. Circuit. Def.'s Reply Mem. Supp. Summ.
J. ("Def.'s Reply Mem."), ECF No. 20 at 4-5.[5] Notably, EPIC does
not respond to this argument in its reply brief. *See generally,*
Pl.'s Reply Mem., ECF No. 22.

An agency must show "beyond material doubt" that it
conducted a search reasonably calculated to uncover all relevant
documents in response to a FOIA request. *Id.* (*quoting Weisberg
v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)).
The adequacy of an agency's search for responsive records is
measured by "the reasonableness of the effort in light of the

---

[3] EPIC does not challenge the sufficiency of the DEA's search in
response to the first, second or fourth prongs of its FOIA
request. Pl.'s Mem. Opp. at 22.

[4] EPIC's memorandum in opposition to DEA's Motion for Summary
Judgment is also EPIC's Cross-Motion for Summary Judgment.

[5] DEA's Reply Memorandum is also its Memorandum in Opposition to
Plaintiff's Motion for Summary Judgment.

specific request." *McKinley v. FDIC*, 807 F. Supp. 2d 1, 4 (D.D.C. 2011) (*quoting Larson v. Dep't of State*, 565 F.3d 857, 869 (D.C. Cir. 2009)). An agency is not obligated to search every record system. *See Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986) (noting a search is not presumed unreasonable simply because it fails to produce all relevant material); *see also Perry v. Block*, 684 F. 2d 121, 128 (D.C. Cir. 1982) (holding an agency need not demonstrate that all responsive documents were found and that no other relevant documents could possibly exist).

Here, EPIC's only argument challenging the reasonableness of the DEA's search is based on EPIC's perception of the types of documents it believes should exist. Pl.'s Mem. Opp. at 22. However, based on the legal standard for what constitutes a reasonable search, arguments that certain documents "should" or "must" exist are consistently rejected. Indeed, EPIC's argument was expressly rejected by the D.C. Circuit in *Oglesby v. U.S. Dept. of Army*:

> Appellant also contends that the search was unreasonable because the agency did not find responsive documents that appellant claims *must* exist . . . . However, appellant provides no proof that these documents exist and his own conviction that [such documents exist] is pure speculation. Such hypothetical assertions are insufficient to raise a material question of fact with respect to the adequacy of the agency's search.

920 F.2d 57 (D.C. Cir. 1990)(*citing Meeropol v. Messe*, 790 F.2d 942, 952-53 (D.C. Cir. 1986). Thus, EPIC's argument that "it is difficult to believe that such a far-reaching, invasive program would not have triggered some privacy analysis or discussion that would be responsive to the third prong of EPIC's request" does not support a finding that the DEA's search was inadequate. *Elec. Privacy Info. Ctr. V. Dep't of Homeland Sec.*, 384 F. Supp. 2d 100, 107-08 & n.3 (D.D.C. 2005) (rejecting plaintiff's argument that the agency's search should be held inadequate because the search did not locate documents the plaintiff believed to exist).

The DEA also makes two salient points in response to EPIC's argument that it is "hard to believe" that documents responsive to its third request were not found: (1) the DEA uses and partly funds Hemisphere, but Hemisphere is not a DEA program; and (2) two documents discussing legal issues were found, but withheld under relevant exemptions. Def.'s Reply Mem. at 9-10. For all of these reason, the DEA's search was reasonable. On the question of the reasonableness of the DEA's search, Defendant's Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

**B. The Myrick Affidavit and redacted material submitted meet the requirements set forth by *Vaughn***

EPIC argues a *Vaughn* index providing a detailed description of material withheld is necessary for the Court to determine whether material was properly redacted. Pl.'s Mem. Opp. at 11. The DEA argues that the Declaration of Katherine L. Myrick, together with the 280 pages withheld and attached to the declaration, which have been redacted based on the relevant FOIA exemption, meet the requirements set forth by *Vaughn*. Def.'s Reply Mem. at 5.

*Vaughn* and subsequent case law requires the government to provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Central, Inc. v. U.S. Dept. of Air Force*, 566 F.2d 242, 251 (1977) (citing *Vaughn*, 484 F.2d at 825). Although there is no strict format required for a *Vaughn* index, an agency must "disclose as much information as possible without thwarting the exemption's purpose." *Defenders of Wildlife*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009). Withholding information under conclusory, generalized, or sweeping allegations of exemptions is not acceptable. *See, e.g. Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007); *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006).

In this case, the Myrick Declaration identifies the exemptions relied upon and describes the documents withheld

under each exemption. Myrick Decl.; Def.'s Mem. Supp. Summ. J.,
Ex. 3. The 280 responsive pages are attached to the Myrick's
declaration, with information redacted and labeled according to
the relevant exemption. *Id.* The nature of each document is
described in the text of Myrick's declaration, and each
redaction is labeled with the relevant exemption. *Id.*
Nevertheless, EPIC argues that the declaration is insufficient
because it provides fewer details than the *Vaughn* index that was
found inadequate in *Defenders of Wildlife.* Pl.'s Reply Mem. at
3. Specifically, EPIC complains that the Myrick Declaration
"fails to identify the title or shorthand title of any document;
the date the document was produced; any description—even short,
one sentence descriptions to identify each document; or even any
language to differentiate between documents within categories."
*Id.*

In the Court's view, the Myrick Declaration meets the
requirements of *Vaughn*. As discussed below, where the Court
finds the DEA's withholding justifications conclusory, vague, or
otherwise insufficient, the Court has ordered the DEA to provide
a more detailed explanation through supplemental briefing and
additional declarations, or to produce relevant documents for *in
camera* review. Therefore, to the extent Plaintiff seeks a more
detailed *Vaughn* index, Plaintiff's Motion is **DENIED**.

**C. Documents withheld under FOIA exemptions**

EPIC objects to documents withheld by the DEA under FOIA exemptions 5, 7(D) and 7(E). *See generally,* Pl.'s Mem. Opp. Each will be addressed in turn.[6]

### 1. FOIA Exemption 5

FOIA Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). Numerous privileges, including the deliberative process, attorney-client, and work product privileges are typically asserted in the context of withholdings under exemption 5. *Tax Analysts v. I.R.S.*, 117 F.3d 607, 616 (D.C. Cir. 1997). Records need not be disclosed if they would normally be protected under these privileges in the civil discovery context. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).

---

[6]  EPIC notes that it "does not concede that the DEA's withholdings under 6, 7(C) or 7(F) were proper" but that it "chose not to dispute these for the purposes of this lawsuit." Pl.'s Opposition, ECF No.24 at 3. EPIC's failure to address the DEA's withholdings pursuant to exemptions 6, 7(C) or 7(F) constitutes a concession, for the purposes of this motion, that the documents were withheld lawfully. *See e.g.*, *Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence*, 982 F. Supp. 2d 21, 26 (D.D.C. 2013) (("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.") (quoting *Hopkins v. Women's Div., Gen. Bd. of Global Ministries,* 284 F.Supp.2d 15, 25 (D.D.C. 2003), *aff'd,* 98 Fed. Appx. 8 (D.C. Cir. 2004)).

The DEA applied FOIA exemption 5 to two documents:

> A draft memorandum prepared by an attorney in the DEA Office of Chief Counsel analyzing legal issues regarding the procedures used to obtain information through Hemisphere, intended to assist senior DEA management, and containing comments added by the same attorney regarding the same topics . . . . [and]

> An email message from a Deputy Assistant Attorney General at DOJ to other Federal government employees containing a preliminary assessment of three issues relating to features of the Hemisphere program . . . .

Myrick Decl. at ¶ 34 (a)-(b). Each will be addressed in turn.

### a. The Memorandum

EPIC argues that the memorandum is not protected by the deliberative process privilege because a final version of the document has not been identified, making the "draft" memorandum the final decision on the issues discussed therein. Pl.'s Mem. Opp. at 24. The DEA argues that the draft memorandum is properly considered "pre-decisional" because it "was prepared to facilitate the development of the DEA's policies and procedures regarding the use of Hemisphere and did not itself establish a final agency position." Def.'s Reply Mem. at 8.

The deliberative process privilege covers deliberative, pre-decisional communications. *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014). "A document is predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the

consultative process.'" *EPIC v. Dept. of Homeland Security*, 928 F. Supp.2d 139, 149 (D.D.C. 2013)(citing *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006). Three policy goals undergird the deliberative process privilege: "(1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an agency action." James T. O'Reilly, FEDERAL INFORMATION DISCLOSURE, Volume 1, Summer 2015 ed. § 15:16 at 1616 [hereinafter O'Reilly].

EPIC contends that "[w]hen an agency uses the deliberative process privilege to withhold draft documents under Exemption 5, it must identify a corresponding final decision." *See* Docket 18 at 24. As a matter of law, EPIC is incorrect. *Sears, Roebuck & Co.*, 421 U.S. at 153 n. 18 ("Our emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared.").

Indeed, the precise argument made by EPIC here— supported by the same quotes from three opinions of this Court—was rejected more than two years ago by Judge Royce C.

Lamberth as "misplaced." *See EPIC v. U.S. Dept. of Homeland Sec.*, 928 F. Supp. 2d 139, 152 (D.D.C. 2013), *appeal dismissed* (D.C. Cir. 13-5113) (Jan. 21, 2014). The quotes relied on by EPIC are taken out of context and, as described by Judge Lamberth, at least one is "particularly misleading." *Id.* Judge Lamberth's assessment is on point and deserves repeating here:

> EPIC's reliance on *Exxon Corp. v. Dept. of Energy* is particularly misleading. EPIC omitted the key modifying phrase "In some instances" that precedes the language they quote: "where DOE has failed to identify a final document corresponding to a putative draft, the 'draft' shall be ordered produced . . . ." 585 F. Supp. 690, 698 (D.D.C. 1983). Moreover, even the language EPIC does not selectively omit reflects a more nuanced rule than the one EPIC proposes; the sentence concludes: ". . . to the extent that the agency has provided no basis for determining that it in fact has such status." *Id.* Similarly, in *Mayer, Brown, Rowe & Maw LLP v. IRS*, Judge Collyer found that the documents at issue were "too removed from an actual policy decision" to warrant protection under exemption 5, but the case does not stand for the proposition that an agency seeking to withhold a draft must always point to a final version of that document. 537 F. Supp. 2d 128, 136 (D.D.C. 2008). Finally, in *Judicial Watch Inc. v. U.S. Postal Serv.*, Judge Kennedy faulted the government for failing to "identify *specific* final decisions or decision making processes related to the issues raised in the FOIA request. 297 F. Supp. 2d 252, 264 (D.D.C. 2004). *Judicial Watch* does not stand for the rule EPIC proposes.

*Id.*

EPIC's attempt to equate the memorandum at issue in this case with the memoranda at issue in *Sears, Roebuck & Co.* is also misplaced. *See* Pl.'s Reply Mem. at 6. EPIC argues that the Supreme Court required the agency to "disclose Advice Memoranda in cases where the agency decided not to go forward with employment law prosecutions because these memoranda were the final embodiment of policies . . . ." *Id*. EPIC's insistence that the draft memorandum here be treated as a final policy, as in *Sears*, ignores the reality of how government policies evolve. As discussed at length by the D.C. Circuit:

> There may be no final agency document because a draft died on the vine. But the draft is still a draft and thus still pre-decisional and deliberative. *See NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 151 n. 18, 95 S. Ct. 1504, 44 L.Ed.2d 29 (1975). A Presidential speechwriter may prepare a draft speech that the President never gives. A Justice Department aide may give the Attorney General a draft regulation that the Attorney General never issues. Those kinds of documents are no less drafts than the drafts that actually evolve into final Executive Branch actions. Moreover, the writer does not know at the time of writing whether the draft will evolve into a final document. But the writer needs to know at the time of writing that the privilege will apply and that the draft will remain confidential, in order for the writer to feel free to provide candid analysis. A privilege contingent on later events—such as whether the draft ultimately evolved into a final agency position—would be an uncertain privilege, and as the Supreme Court has said, an uncertain privilege is "little better than no privilege

> at all." *Upjohn Co. v. United States,* 449 U.S.
> 383, 393, 101 S. Ct. 677, 66 L.Ed.2d 584
> (1981); *see also Swidler & Berlin v. United
> States,* 524 U.S. 399, 408-09, 118 S. Ct. 2081,
> 141 L.Ed.2d 379 (1998). In short, to require
> release of drafts that never result in final
> agency action would discourage innovative and
> candid internal proposals by agency officials
> and thereby contravene the purposes of the
> privilege.

*Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014).

Having disposed of EPIC's meritless argument regarding the "draft" status of the memorandum at issue, the Court must now consider whether the DEA has met its burden of showing that the memorandum was genuinely part of the DEA's deliberative process. *See e.g., EPIC v. U.S. Dept. of Homeland Sec.*, 928 F. Supp.2d at 155.[7] The DEA has met this burden. First, the memorandum was prepared by an attorney in the DEA's

---

[7] It is extremely troubling that EPIC repeated a legal argument that was rejected by this Court more than two years ago. "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification, or reversal of existing law." Rules of Professional Conduct: Rule 3.1 – Meritorious Claims and Contentions, available at https://www.dcbar.org/bar-resources/legal-ethics/amended-rules/rule3-01.cfm. EPIC did not acknowledge Judge Lamberth's decision, let alone attempt to distinguish the facts or offer additional authority to support its legal argument. This suggests a hasty cut-and-paste of arguments from one brief to another. Other errors in EPIC's brief also support this conclusion. For example, two of EPIC's headings appear to have been cut and pasted from a previous brief involving the DHS rather than the DEA. *See e.g.* Pl.'s Mem. Opp. at 19 and 21.

office of Chief Counsel for senior DEA management. Myrick Decl. ¶ 34(a); *see e.g. Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (noting that "a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made."). Second, the memorandum includes comments by the attorney who prepared the document, reflecting the deliberative posture of the memorandum. Myrick Decl. ¶ 34(a); *See also Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 463 (D.C. Cir. 2014) (noting that the term deliberative means "the communication is intended to facilitate or assist development of the agency's final position on the relevant issue."). (Internal citations omitted).

For all of these reasons, the draft memorandum was properly withheld under FOIA Exemption 5. The DEA's Motion for Summary Judgment on this issue is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.[8]

   **b. The Email**

---

[8] Because the memorandum is protected from disclosure under the deliberative process privilege, the Court need not address the parties' arguments pertaining to the attorney-client and work product privileges.

The parties' dispute over the email withheld under FOIA Exemption 5 involves a lengthy procedural background that will be reviewed briefly here. In the DEA's Memorandum in Support of its Motion for Summary Judgment, it argued that the email it claims is subject to FOIA exemption 5 is protected under the deliberative process, attorney-client and work product privileges. Def.'s Mem. Supp. Summ. J. at 7-9. EPIC's Memorandum in Opposition and Cross-Motion for Summary Judgment addressed the DEA's arguments pertaining to the memorandum discussed supra, but was silent in regard to the DEA's claimed privileges over the email. Pl.'s Mem. Opp. at 23-26. The DEA's Memorandum in Opposition and Reply argued that the Court should find that EPIC conceded the email is protected because it set forth no substantive objection. Def.'s Reply Mem. at 16. EPIC's Reply Memorandum then addressed the DEA's attorney-client and deliberative process privilege arguments, but remained silent in regard to the work product privilege. Pl.'s Reply Mem. at 6-14.

The DEA later argued that all of EPIC's arguments pertaining to the email should be deemed conceded under Local Rule 7(b) and relevant case law. *See e.g.*, *Elec. Privacy Info. Ctr. v. Office of the Dir. of Nat'l Intelligence*, 982 F. Supp. 2d 21, 26 (D.D.C. 2013) ("It is well understood in this Circuit that when a plaintiff files

an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded."). The DEA requested an opportunity for supplemental briefing if the Court was not inclined to conclude EPIC conceded the email was lawfully withheld. Def.'s Motion for Leave to File, ECF No. 23 at 1.

In September 2015, the Court granted the parties an opportunity to submit supplemental briefing on this issue. *See* September 29, 2015 Minute Order. EPIC's supplemental brief does not address the DEA's work product argument. Pl.'s Response to Def.'s Surreply, ECF No. 31 at 5. Rather, EPIC simply maintains that its general assertions show it has not conceded any argument. *Id.* ("EPIC argued . . . that the documents withheld by the DEA are not subject to Exemption 5 because they 'would not normally be privileged in the context of civil discovery.'"). *Id.*

Although there is sufficient evidence in the record to conclude that EPIC has waived any argument regarding the application of the work-product doctrine to the email in question because EPIC did not contest the application of the work-product doctrine to the email message in its first summary judgment brief, *see e.g. Texas v. United States*, Case No. 14-5151, 2015 WL 4910078, at *4 (D.C. Cir. Aug.

18, 2015), the Court is also satisfied that the email is in fact protected by the privilege. The Court will therefore briefly address the merits of the DEA withholding the email under Exemption 5.

The work product doctrine "protects from disclosure materials prepared in anticipation of litigation or for trial by or for another party or its representative. . . ." *Williams & Connolly v. S.E.C.*, 662 F.3d 1240, 1243 (D.C. Cir. 2011) (internal quotations omitted) (citing Fed. R. Civ. P. 26(b)(3)(A)); *see also Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). The doctrine must be interpreted broadly:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant fats, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways. . . .

*Id.* Further, the work product doctrine protects both deliberative materials as well as factual material prepared

in anticipation of litigation. *Tax Analysts v. IRS*, 117 F.3d 607 at 620 (D.C. Cir. 1997).

Here, the DEA asserts under the sworn Declaration of Ms. Myrick that the email is "covered by the attorney work-product doctrine because it was prepared by a DOJ attorney in anticipation of litigation relating to the use of Hemisphere in law enforcement." Myrick Decl. ¶ 15-3 (b). This is the critical factor when determining whether a document is covered by the work product doctrine. *See, e.g. Tax Analysts v. I.R.S.*, 391 F. Supp. 2d 122, 127 (D.D.C. 2005) (noting that the work product doctrine does not extend to every document generated by an attorney, but the "key is whether or not the documents were prepared in anticipation of litigation.") (citing *Johnson v. United States Dep't. of Justice*, 591 F.2d 753 (D.C. Cir. 1978). "[L]itigation need not be actual or imminent, it need only be 'fairly foreseeable.'" *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 79 (D.D.C. 2003) (citing *Coastal States Gas. Corp. v. Dep't of Energy*, 617 F.2d, 854, 865 (D.C. Cir. 1980)).

While some articulable claim likely to lead to litigation must have arisen, the work product doctrine protects communications even if no specific claim is contemplated. *Hertzberg*, 273 F. Supp. 2d at 79 (citing *Schiller v. NLRB*, 964 F.2d 1205, 1208 (D.C. Cir. 1992). Courts

must inquire whether in light of the nature of the document and the factual situation of the case, the document can fairly be said to have been prepared because of the prospect of litigation. *See In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) (holding that a party "must at least have a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.").

EPIC articulates no reason to doubt the veracity of Ms. Myrick's declaration. Moreover, the nature of the Hemisphere program, which clearly implicates controversial law-enforcement techniques and privacy rights as evidenced by this lawsuit, satisfies the Court that it is objectively reasonable for the government agencies involved to hold a subjective belief that litigation was and is a real possibility. The Court therefore concludes that the email at issue is protected by the work product doctrine because it was prepared in anticipation of litigation. *See e.g.*, *McKinley v. Board of Governors of Federal Reserve System*, 647 F.3d 331, 341 (D.C. Cir. 2011) (holding that the work product doctrine applied to a document prepared in anticipation of litigation and was therefore protected from disclosure under FOIA Exemption 5).

For all of these reasons, the email was properly withheld under FOIA Exemption 5. The DEA's Motion for Summary Judgment

on this issue is **GRANTED** and Plaintiff's Motion for Summary Judgment is **DENIED**.

### 2. Exemption 7

Information may be withheld under FOIA Exemption 7 if it was compiled for law enforcement purposes. 5 U.S.C. § 552; *see also Campbell v. U.S. Dept. of Justice*, 164 F.3d 20 (D.C. Cir. 1998) ("FOIA exempts from disclosure six categories of documents that have been 'compiled for law enforcement purposes.'"). The DEA is a law enforcement agency tasked with enforcing the controlled substances laws and regulations in the United States. Myrick Decl. ¶ 5.[9] EPIC challenges the material withheld by the DEA under subsections 7(D) and 7(E). Pl.'s Mem. Opp. at 26-31. Each will be discussed in turn.

### a. Whether an explicit or implicit assurance of confidentiality was given to the private institutions assisting with Hemisphere

EPIC challenges the DEA's application of Exemption 7(D) to protect the identification of private companies that assist in the operation of Hemisphere because there is no evidence of an explicit or implicit assurance of confidentiality. Pl.'s Mem. Opp. at 26-28. The DEA contends that it has sufficiently shown

---

[9] The DEA's investigative jurisdiction derives from the Controlled Substances Act ("CSA"), 21 U.S.C. § 801, *et seq.* Myrick Decl. ¶ 5. The CSA authorizes the DEA to enforce the Act through the investigation of trafficking in controlled substances. *Id.*

that private institutions received both explicit and implicit
assurances of confidentiality. Def.'s Mem. Supp. at 15-16.

Exemption 7(D) permits the government to withhold:

> Records or information compiled for law
> enforcement purposes, but only to the extent
> that the production of such law enforcement
> records or information . . . could reasonably
> be expected to disclose the identity of a
> confidential source, including a State, local,
> or foreign agency or authority **or any private
> institution** which furnished information on a
> confidential basis, and, in the case of a
> record or information compiled by criminal law
> enforcement authority in the course of a
> criminal investigation . . ., information
> furnished by a confidential source.

§ 552(b)(7)(D) (emphasis added). Exemption 7(D) applies whether

the source provided the information under an express or implied

assurance of confidentiality. *U.S. Dep't. of Justice v. Landano*,

508 U.S. 165, 179 (1993).[10] Determination of whether a source is

confidential is made on a case-by-case basis. *Id.* at 179-80. The

Court's focus under Exemption 7(D) is whether the *source* cooperated

---

[10] In its Reply, EPIC argues that "[t]he recognition of
corporations as confidential informants would be an
unprecedented expansion of Exemption 7(D) and would conflict
with the Supreme Court's holding in *Landano*." Pl.'s Reply Mem.
at 14. *Landano* held that the government is not entitled to a
*presumption* that all sources supplying information to the FBI
are confidential sources. 508 U.S. 165, 175. The Court did not
suggest that private companies are incapable of serving as
confidential informants. EPIC also provides no support for its
contention that the statutory language of "private institution"
is inapplicable to corporations. § 552(b)(7)(D) (establishing
that confidential sources may include "a State, local, or
foreign agency or authority **or any private institution** which
furnished information on a confidential basis").

with an understanding of confidentiality, not whether the *document* is generally thought to be confidential. *Miller v. U.S. Dept. of Justice*, 872 F.Supp. 2d 12, 26 (2013) (citing *Landano*, 508 U.S. at 172) (emphasis added). Finally, Exemption 7(D) does not require a balancing of public and private interests. *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1184-85 (D.C. Cir. 2011) (noting the factors considered before finding an implicit assurance of confidentiality include the character of the crime at issue, the sources' relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency).

### i. The Myrick Declaration does not support finding that an express assurance of confidentiality was given

To withhold information under Exemption 7(D) by an express assurance of confidentiality, the DEA must present "probative evidence that the source did in fact receive an express grant of confidentiality." *Campbell v. U.S. Dept. of Justice*, 164 F.3d 20, 34 (D.C. Cir. 1998), *as amended* (Mar. 3, 1999). Such evidence includes notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for the dealing with the source or similarly situated sources. *Id.* The agency's declaration must

permit "meaningful judicial review by providing a sufficiently detailed explanation for the agency's conclusions." *Id.*

Here, the DEA relies on Ms. Myrick's statement that "[a]ccording to the DEA personnel who are familiar with Hemisphere, the companies provide information to law enforcement with the express expectation that both the source and the information will be afforded confidentiality." Myrick Decl. ¶ 41. EPIC argues that the DEA's justification of express confidentiality is insufficient because the DEA does not (1) attach declarations from the agents who extended the promise of confidentiality, (2) produce any FBI document supporting the grant of confidentiality, or (3) submit evidence of a consistent policy granting confidentiality to designated sources during the relevant time period. Pl.'s Mem. Opp. at 28. The DEA acknowledges that Ms. Myrick's statement "admittedly does not provide a great amount of detail" because "some circumspection is necessary because of the sensitivity of the information involved." Def.'s Reply Mem. at 10.

The Court acknowledges the sensitive nature of the information at issue, but agrees with EPIC that the government has failed to meet its burden of showing that an explicit assurance of confidentiality was given to the private companies involved with Hemisphere. *See e.g., Voinche v. F.B.I.*, 46 F. Supp.2d 26, 34 (D.D.C. 1999) ("To properly invoke Exemption

7(D), however, the [government] must present more than the conclusory statement of an agent that is not familiar with the informant."). The DEA is therefore ordered to submit the relevant documents to the Court for *in camera* review, or to supplement the record with a declaration from a DEA employee who has first-hand knowledge of the explicit assurance of confidentiality given to the private companies. *See e.g. Trea Senior Citizens League v. U.S. Dept. of State*, 923 F. Supp. 2d 55, 71 (D.D.C.) ("Having concluded there are various factual deficiencies in the defendant's sworn declarations, the Court 'has several options, including inspecting the documents *in camera*, requesting further affidavits, or allowing the plaintiff discovery.'") (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998).

> ### ii. The Myrick Declaration does not support a finding that an implicit assurance of confidentiality was given

To establish that a source received an implicit assurance of confidentiality, several considerations are examined, including the nature of the crime and the informant's relation to the crime. *Landano*, 508 U.S. at 172 ("A source is confidential within the meaning of Exemption 7(D) if the source 'provided information . . . in circumstances from which an assurance [of confidentiality] could be reasonably inferred.'") (internal citation omitted); *Amuso v. DOJ*, 600 F. Supp.2d 78,

100 (D.D.C. 2009) ("[t]he nature of the crime investigated and [sic] informant's relation to it are the most important factors in determining whether implied confidentiality exists."). "Violence and risk of retaliation attendant to drug trafficking warrant an implied grant of confidentiality to a source who provides information to investigators." *Lasko v. DOJ*, 684 F. Supp. 2d 120, 134 (D.D.C. 2010); *see also Mendoza v. DEA*, 465 F. Supp. 2d 5, 13 (D.D.C. 2006) (holding that because violence and danger are inherent in drug trafficking activity, "the court can reasonably infer that the informant cooperated under an implied assurance of confidentiality."). Notably, *Lasko* and *Mendoza* and other cases that analyze implied assurances of confidentiality involve situations where individuals cooperated with the government under dangerous circumstances. *See also Blanton v. U.S. Dept. of Justice*, 63 F. Supp. 2d 35, 49 (D.D.C. 1999).

In this case, Ms. Myrick states that "confidentiality can be inferred because providing the information can lead to retaliation against the companies." Myrick Decl. ¶ 41. EPIC responds that the DEA failed to properly discuss the *Roth* factors, depriving the Court of adequate information to determine if an implicit guarantee of confidentiality should be found. Pl.'s Reply Mem. (citing *Roth*, 642 F.3d at 1184).

The Court agrees with EPIC that the DEA has failed to provide the necessary details to support a finding that

confidentiality was implied to private companies assisting with the operation of Hemisphere. The DEA cites no authority for the proposition that potential retaliation against a private company is sufficient to justify a finding of implied confidentiality. To establish an implied assurance of confidentiality, the DEA must provide a more detailed explanation of the *Roth* factors—including the sources' relation to the crime, whether the source received payment, and whether the source has an ongoing relationship with the law enforcement agency.[11]

For all of these reasons, Defendant's Motion for Summary Judgment on the issue of whether an explicit or implicit grant of confidentiality was given under Exemption 7(D) is **DENIED without prejudice.** The DEA must either disclose the relevant information withheld under Exemption 7(D), supplement the record with additional affidavits and authority justifying its withholding, or produce documents for the Court's *in camera* review.

### b. FOIA Exemption 7(E)

FOIA Exemption 7(E) permits the withholding of information collected for law enforcement purposes if release of that information would:

---

[11]  Establishing that the private institutions received an implicit assurance of confidentiality will not be necessary if the DEA establishes that an explicit assurance of confidentiality was received.

> disclose techniques and procedures for law
> enforcement investigations or prosecutions,
> or would disclose guidelines for law
> enforcement investigations or prosecutions if
> such disclosure could reasonably be expected
> to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). The purpose of Exemption 7(E) is to prevent publication of information that would "train potential violators to evade the law or instruct them how to break the law," and to protect information that, if disclosed, "increases the risks that a law will be violated or that past violators will escape legal consequences." *Mayer Brown v. I.R.S.*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). Exemption 7(E) sets a "relatively low bar" for an agency to justify withholding information" but the government must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayor Brown*).

In this case, the DEA has asserted Exemption 7(E) for 11 categories of documents. Def.'s Mem. Supp. Summ. J., at 18-23. EPIC challenges three of those categories: (1) withholding of the names of private companies that assist with the operation of Hemisphere; (2) documents that reveal how the DEA secures cooperation of entities instrumental to Hemisphere's operation; (3) names of other law enforcement agencies with access to

Hemisphere. Pl.'s Mem. Opp. at 28-38. Each category will be discussed in turn.

### i. Withholding names of private companies cooperating in the operation of Hemisphere

EPIC argues that the DEA fails to give any explanation of how disclosing the names of private corporations cooperating with Hemisphere would reveal techniques or procedures that may be exploited by potential criminals. *Id.* at 29. The DEA responds that "all of the material withheld under Exemption 7(E) in this case pertains to a single set of law enforcement techniques and procedures——Hemisphere and its use by law enforcement authorities to obtain access to telephone records in the course of law enforcement investigations." Def.'s Reply Mem. at 12. The DEA has offered no evidence or explanation for its claim that Hemisphere is a "single" technique and procedure. *See e.g. Blackwell v. F.B.I.*, 646 F.3d 37 (2011) (protecting disclosure of procedures used during the forensic examination of a computer and methods of collection, organization and presentation of data); *Petrucelli v. Dept. of Justice*, 106 F. Supp. 3d 129, 139 (D.D.C. 2015) (protecting disclosure of a ratings column on a form used to record investigation accomplishments as a technique and procedure).

Moreover, 7(E) is intended to protect information that is not generally known to the public. O'Reilly at 446; *see also*

*Rosenfeld v. U.S. Dept. of Justice*, 57 F.3d 803, 815 (9th Cir.

1995) (holding that use of a pretext phone call did not qualify

for protection because the technique is generally known to the

public) (citing *National Sec. Archive v. FBI*, 759 F. Supp. 872,

885 (D.D.C. 1991)). As a general matter, the government's use of

telephone interception and data collection for law enforcement

purposes is known to the public. *See e.g., Everything We Learned*

*From Edward Snowden in 2013*, National Journal, December 31, 2013

(noting, among other things, that Verizon provided daily

information on domestic and international telephone calls to the

National Security Agency). More specifically, the cooperation of

major telecommunication companies with Hemisphere has been

widely reported by various news outlets, as indicated by the

Compliant in this case. *See* Compl. (*citing Drug Agents Use Vast*

*Phone Trove, Eclipsing N.S.A.'s*, New York Times, September 1,

2013).

In support of its position, the DEA relies on *PHE, Inc. v.*

*Dep't of Justice* for the proposition that this Circuit has

upheld invocations of 7(E) at an even higher level of

generality. 983 F.2d 248, 251 (D.C. Cir. 1993). *PHE* does not

support the DEA's argument. In *PHE*, the FBI identified a 16-page

manual as relevant to the plaintiff's FOIA request. *Id.* at 250.

The FBI released 15 of the 16 pages, redacting only one page,

explaining that the withheld material "detailed specific

documents, records and sources of information available to Agents investigating obscenity violations, as well as the type of patterns of criminal activity to look for when investigating certain violations." *Id.* at 251. Not only did the FBI disclose the vast majority of the manual at issue in *PHE*, it gave a detailed description of the material that was withheld under exemption 7(E). In contrast, the DEA's explanation in this case is simply that Hemisphere is a "single set of law enforcement techniques and procedures." Def.'s Reply Mem. at 12.

The DEA also argues that "knowing the identities of particular companies instrumental in the operation of Hemisphere would help criminals understand how Hemisphere works and how it can be evaded and would also facilitate efforts to disrupt Hemisphere, for example, by attacking facilities involved in the Hemisphere program." Def.'s Reply Mem. at 13. The DEA has failed to logically demonstrate how release of the private corporation's names would assist drug traffickers seeking to evade law enforcement. For example, according to one of the media reports cited in EPIC's Complaint, the AT&T database "includes every phone call which passes through the carrier's infrastructure, not just those made by AT&T customers." *U.S. Drug Agency Partners with AT&T for Access to 'Vast Database' of Call Records*, The Guardian, September 2, 2013. The logical inference from this report is that a drug trafficking

organization cannot avoid use of any one telephone carrier in order to evade the DEA's prosecution efforts through Hemisphere.

Second, the DEA has not provided enough information for the Court to agree with its assertion that knowing the identity of the private corporations assisting with Hemisphere would reveal the location of corporate facilities, and that such a disclosure might risk circumvention of the law. Although not confirmed by the government, the cooperation of Verizon Communications Inc. and AT&T in government data collection, as noted *supra*, has been publicly reported for years. Publicly available information about such telecommunication companies' facility locations is as available now as it would be were the DEA to disclose the identities of the companies assisting with Hemisphere. Further, even if facility locations were identified, it is unclear how an attack on publicly known facilities would compromise Hemisphere and risk circumvention of the law.

Finally, the DEA's citation to *EPIC v. Office of the Dir. of Nat'l Intelligence*, 982 F. Supp. 2d 21, 30 (D.D.C. 2013) is misplaced as the Court in that case relied on Exemption 3 to protect information that the Office of the Director of National Intelligence argued should not be disclosed. As noted by the Court in that case, "it is the responsibility of the [intelligence community], not that of the judiciary, to weigh the variety of complex and subtle factors in determining whether

disclosure of information may lead to an unacceptable risk of compromising the . . . intelligence-gathering process." *Id.* (citations omitted). This case is distinct because the DEA is a law enforcement agency, not an intelligence service. Moreover, the Court in *EPIC v. Office of the Dir. of Nat'l Intelligence* reviewed relevant documents *in camera* before concluding that the Defendant met its burden. The DEA has yet to produce any documents for *in camera* review in this case.

In sum, the record in this case does not, at this time, support a finding that disclosure of the names of the private companies cooperating with the government in the operation of Hemisphere will assist individuals in thwarting the DEA, or create a risk of circumvention of the law.[12] The Defendant's Motion for Summary Judgment pertaining to whether the names of the private companies assisting with Hemisphere are justifiably withheld under Exemption 7(E) is **DENIED without prejudice**. The DEA must either disclose the relevant information withheld under Exemption 7(E), supplement the record with additional affidavits and authority justifying its withholding, or produce documents for the Court's *in camera* review.

---

[12] As discussed in Section III. C. 2, the DEA may establish that the identities of the private companies assisting with Hemisphere should be protected based on either an explicit or implicit assurance of confidentiality under Exemption 7(D). Such a showing under 7(D) would make the issue of whether the private company identities should be protected under 7(E) moot.

### ii. Documents that reveal how cooperation from third parties is secured

EPIC argues documents that reveal how Hemisphere secures cooperation from other entities do not meet the threshold requirement of Exemption 7, in that such documents were "not compiled for law enforcement purposes." Pl.'s Mem. Opp. at 31. The DEA maintains that all documents identified as responsive to EPIC's FOIA request were compiled for law enforcement purposes and that documents setting forth how to secure cooperation from third parties are protected under 7(E) because disclosure risks disruption of those means, which would "hamper law enforcement efforts by reducing or eliminating the availability and effectiveness of Hemisphere as a law enforcement tool." Def.'s Reply at 14-15.

It is possible that a document describing the means of securing cooperation includes specific information that would be protected by Exemption 7(E), yet it is also conceivable that the information is so generalized that the document cannot be said to have been created for law enforcement purposes, or that disclosure would not risk circumvention of the law. The DEA's conclusory assertion that publication of these documents could "reasonably be expected to lead to disruption of the means of securing cooperation" does not allow the Court to assess whether the documents deserve protection under 7(E). Myrick Decl. ¶

45(k). Because the DEA insists that "a more specific description of this potential risk would entail revealing the withheld information," the DEA is **ORDERED** to produce the documents withheld under this rationale for *in camera* review. *See e.g. Fitzgibbon v. U.S. Secret Service*, 747 F. Supp. 51, 60 (D.D.C. 1990) (noting that the F.B.I.'s conclusory statement that certain techniques were not known to the public were "general and cursory at best" and that the "only way the Court can ascertain whether the assertions are correct is by way of *in camera* review.").

### iii. Names of the law enforcement agencies that have access to the Hemisphere database

EPIC also challenges the DEA's withholding of the names of other law enforcement agencies that have access to Hemisphere's database, arguing that the DEA does not explain "why the names of federal agencies would reveal techniques, procedures, or guidelines" or how such disclosure could "reasonably be expected to risk circumvention of the law." Pl.'s Reply Mem. at 37.[13]   The

---

[13]  EPIC also objects to what it characterizes as "categorical" withholdings under Exemptions 7(D) and 7(E). Pl.'s Mem. Opp. at 16–19 and Pl.'s Reply Mem. at 4-5. EPIC's argument is not persuasive. The DEA has specified the page numbers and marked the relevant redacted material under Exemption (D) and (E). Myrick Decl. ¶¶ 40-45. As discussed in Section III. C. 2. b., the type of record withheld is not significant to the Court's analysis of whether they were properly withheld under Exemption 7 (D). Rather, the question is whether the private institutions received an explicit or implicit assurance of confidentiality. In regard to the DEA's withholdings under 7(E), EPIC challenges

DEA maintains that knowledge of the other agencies would "be helpful to criminals and criminal organizations . . . [which would be] better informed about the capabilities of their pursuers" because "each law enforcement agency has its own respective focus and sphere of authority." Def.'s Reply Mem. at 14.

The DEA cites no persuasive authority in support of withholding the names of other agencies who have access to Hemisphere's database. For example, the government cites *Light v. Department of Justice* for the proposition that the identity and expertise of investigating law enforcement units are protected under 7(E). 968 F. Supp. 2d 11, 29 (2013). *Light* addressed Occupy Wall Street's FOIA request that sought information from the FBI. Under exemption 7(E), the FBI withheld "the location, identity, and expertise of the investigating FBI units" and the Court concluded that disclosure of such information could "allow an individual to avoid or circumvent those locations and those activities that are the targets of investigation." *Id.* Whereas *Light* protected the identity, location and expertise of specific units within the FBI that were tasked with investigating Occupy Wall Street protesters,

---

only three of the 11 categories withheld. Pl.'s Mem. Opp. at 28-38. As discussed *supra*, the Court has highlighted the extent to which the Myrick Declaration and authority cited by the DEA in support of its arguments under Exemption 7(E) fall short.

EPIC's request here seeks the names of other government agencies that have access to the Hemisphere database. The DEA's argument that disclosure of other agencies with access to Hemisphere is equivalent to the disclosure of specific investigatory FBI units and locations is not persuasive.

The DEA also cites *Pons v. U.S. Customs Service* for the proposition that "information that concerns the cooperative arrangement between Customs and other law enforcement agencies" is protected under exemption 7(E). *See* Civ. No. 93-2094 (TFH), Civ. No. 93-2189 (TFH), 1998 U.S. Lexis 6084. In *Pons*, the Court reasoned that because "Defendant's evidence demonstrates that Customs does not publicize its cooperation with other agencies" and "relies in part on secrecy of its cooperative efforts to fulfill its law enforcement purpose," disclosure of the information sought by Plaintiff could "compromise the effectiveness of the agency, and could facilitate circumvention of the law." *Id.* at * 20. Here, no evidence has been presented to the Court to justify the DEA's conclusory argument that "because every law enforcement agency has its own respective focus and sphere of authority, knowing which particular law enforcement agencies have access to Hemisphere would help criminals tailor their activities to avoid apprehension." Def.'s Reply Mem. 13-14.

For these reasons, the Defendant's Motion for Summary Judgment pertaining to withhold the names of other agencies that have access to the Hemisphere data is **DENIED without prejudice**. The DEA must either disclose the names of other agencies that have access to the data withheld under Exemption 7(E), supplement the record with additional affidavits and authority justifying its withholding, or produce documents for the Court's *in camera* review.[14]

## IV.    Conclusion

For the foregoing reasons, Plaintiff's Motion is **DENIED in part** and Defendant's Motion is **GRANTED in part** and **DENIED in part**. Plaintiff's Motion shall be **HELD IN ABEYANCE** on those issues where the Court has invited supplemental submissions from Defendant. To the extent Defendant plans to submit supplemental briefing, the parties shall submit a proposed briefing schedule

---

[14] EPIC argues that the DEA has not met its burden to show that it properly segregated unprotected material from its redactions. Pl.'s Mem. Opp. at 19. The DEA maintains that any words or phrases not covered by an exemption would be "incomprehensible" and "not contribute to the understanding of how the DEA or the United States conducts business either in general or specifically related to the matters requested by Plaintiff." Myrick Decl. ¶ 48. Because the Court has ordered and otherwise invited the DEA to submit certain documents to the Court for *in camera* review, the Court will defer its ruling on the issue of segregability until after it has reviewed documents *in camera*.

no later than July 8, 2016.

**Signed:**     **Emmet G. Sullivan**
            **United States District Judge**
            **June 24, 2016.**