**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:14-cv-00317 (EGS) |
| DRUG ENFORCEMENT ADMINISTRATION | ) ) ) | |
| Defendant. | ) ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT**

The records at issue in this case concern one of the most far-reaching domestic surveillance programs ever uncovered. *See* Mem. Op. 2 (noting that the database contains "decades of Americans' phone calls"). The Court should grant EPIC's motion for summary judgment and order the DEA to release the records in dispute for three reasons. First, the DEA cannot show that telephone companies participating in the Hemisphere program are confidential informants under Exemption 7(D). Second, the DEA has not established that the identities of companies and government agencies involved in Hemisphere, and the terms of their agreements, are techniques, procedures, or guidelines subject to Exemption 7(E). And third, the DEA has not shown that disclosure of records related to "the government's use of telephone interception and data collection for law enforcement purposes," which is a technique "known to the public," Mem. Op. 33, could plausibly risk circumvention of the law. Furthermore, the DEA has failed to justify reliance on *ex parte* affidavits and legal arguments, which are strongly disfavored.

**I.   The DEA has not justified the submission of legal arguments and supporting affidavits *ex parte*.**

The D.C. Circuit has made clear that "the use of ex parte affidavits is disfavored." *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 580 (D.C. Cir. 1996). In fact, such submissions are typically permitted only in cases "implicating national security matters or grand jury proceedings." *FTC v. Boehringer Ingelheim Pharm., Inc.*, ___ F.R.D. ___, 2016 WL 5396649 (D.D.C. Sept. 27, 2016). This is not a national security case, and the documents in dispute are not classified or subject to any national security exemption. The records at issue in this case are standard law enforcement documents under Exemption 7. The DEA has offered no authority to support reliance on *ex parte* legal arguments and declarations. Such submissions are "not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents." *PHE, Inc. v. DOJ*, 983 F.2d 248, 253 (D.C. Cir. 1993).

The government bears a special "evidentiary burden" in a FOIA case in order to "enable the reviewing court to make an informed decision and accurate determination" while also allowing "the adversary system to operate effectively and encourage transparency." *Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221, 236 (D.D.C. 2013). This high evidentiary burden is necessary to ensure that "the congressional policy embodied in the FOIA is to be well served." *Senate of the Com. of Puerto Rico v. DOJ*, 823 F.2d 574, 587 (D.C. Cir. 1987). *See also Lykins v. DOJ*, 725 F.2d 1455, 1465 (D.C. Cir. 1984) (finding that use of *in camera* affidavits must be "reserved for unusual and especially sensitive circumstances" and such use must be "justified to the greatest extent possible on the public record"). The DEA has failed to meet that evidentiary burden in this case, and only provides a conclusory justification for relying on declarations and legal arguments submitted *ex parte*. *See* Decl. of Douglas W. Poole ¶ 10, ECF No. 36-1; Def's Supp. Br. 1, ECF No. 36.

**II.     The DEA has failed to show that the *Roth* factors favor a finding of implied confidentiality or otherwise support the agency's Exemption 7(D) claim.**

The Court should reject the DEA's Exemptin 7(D) claim for two reasons. First, the agency has abandoned entirely the claim that companies participated in the Hemisphere program under an "express expectation" of confidentiality, despite the fact that the previous sworn declaration included this unsubstantiated claim. *See* Mem. Op. 27. An agency cannot be granted summary judgment on the basis of conclusory affidavits, and courts cannot rely on affidavits alone where there is "evidence of agency bad faith." *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014). Second, the agency has not shown that any of the four *Roth* factors weigh in favor of a finding of implied confidentiality. The only cases that the DEA cites in support of the implied confidentiality argument are clearly distinguishable because they all involved specific criminal investigations, not broad-scale surveillance programs.

The first *Roth* factor addresses the "character of the crime at issue." *Roth v. DOJ*, 642 F.3d 1161, 1184 (D.C. Cir. 2011). But there is no crime at issue in this case. In prior cases courts have found an implied assurance of confidentiality where the request concerned a specific investigation. *See, e.g.*, *Roth v. DOJ*, 642 F.3d 1161 (D.C. Cir. 2011) (concerning a request related to information about a quadruple homicide); *Labow v. DOJ*, ___ F.3d ___, 2016 WL 4150929 (D.C. Cir. Aug 5, 2016) (concerning a request related to the FBI's investigations into plaintiff's activities); *Rosenberg v. ICE*, 13 F. Supp. 3d 92 (D.D.C 2014) (concerning a request related to specific raids of an individual's business pursuant to a criminal investigation).

The DEA has conceded that Hemisphere is not related to a specific investigation. The DEA "did not create, nor has it managed" the Hemisphere program. Pool Decl. ¶ 12. The agency's discussion of specific investigations in the Pool Declaration is irrelevant, since EPIC did not request records related to any specific investigations. Furthermore, the DEA is not the

only agency that relies on the Hemisphere; the agency admits that it cannot provide any information about any "crimes and concomitant risk of retaliation associated" with other agencies' uses of Hemisphere. Pool Decl. ¶ 40. The fact that the DEA has pursued cases in the past that involved violent offenders is irrelevant to the question before the court—whether there is a "crime at issue" in this case. The first factor goes against the agency.

The second *Roth* factor addresses "the source's relation to the crime." *Roth*, 642 F.3d at 1184. This factor also goes against the government because the Hemisphere records concern a general surveillance program, not a specific criminal investigation. There is no evidence that "disclosure of the information will necessarily implicate the source." *Sennett v. DOJ*, 39 F. Supp. 3d 72, 80 (D.C.C. 2014). The companies named in these documents do not bear any "close proximity to the criminal elements involved in these crimes." *Rosenberg*, 13 F. Supp. 3d at 109. These companies are not equivalent to a "witness to a gang-related murder." *DOJ v. Landano*, 508 U.S. 165, 179 (1993). These are telephone companies that act as common carriers, which means that—by definition—they offer their services to all members of the public.

The third and fourth *Roth* factors are at best inconclusive in this case because the public record contains no information related to "whether the source received payment" or whether the source communicates "only at locations and under conditions which assure the contact will not be noticed." *Roth*, 642 F.3d at 1184. The DEA's conclusory statements should not weigh heavily in favor of either of these factors because, as this Court rightfully noted, there is no precedent for the claim that "potential retaliation against a private company is sufficient to justify a finding of implied confidentiality." Mem. Op. 30. Given that the first and second *Roth* factors are the most significant, and that the DEA has not shown they weigh in favor of implied confidentiality, the court should find that the agency has not justified its Exemption 7(D) withholding. *Rosenberg*,

13 F. Supp. 3d at 108 (internal quotations and citations removed).

The only cases cited in the DEA's supplemental brief are clearly distinguishable because they involved requests related to specific investigations. In *Gamboa v. Executive Office for U.S. Attorneys*, the plaintiff was sought records related to a specific investigation "into money laundering and cocaine trafficking offenses for which plaintiff was ultimately convicted." 126 F. Supp. 3d 13, 16 (D.C.C. 2015). In *Gamboa*, the FBI withheld the identity of specific businesses because those sources provided "the FBI specific information pertaining to a business transaction executed by plaintiff." *Gamboa*, 126 F. Supp. at 20. The court also determined that fear of retaliation was reasonable because the specific investigation at issue involved drug trafficking and violent criminal behavior. In *Schrecker v. DOJ*, the court held that passport fraud and contempt of Congress were crimes worthy of the inference of implied confidentiality. 74 F. Supp. 2d 26, 35 (D.C.C. 1999). According to the court, the disclosure of the confidential source in the investigation of those crimes "would likely subject him to potential reprisal from others and embarrassment." *Id.*

The fact that a telephone companies provides services to the public (including potential criminals), without more, is too tangential to support an inference of confidentiality. *See Sennett v. DOJ*, 39 F. Supp at 80. The DEA has not even explained how criminals could know that the Hemisphere program was used in a specific investigation. If the government discloses that specific telephone companies have participated in Hemisphere, there will still be no way to know which investigations relied upon Hemisphere data. There is simply no connection between the records at issue here and any specific investigations.

### III.    The DEA has not provided new evidence or authority to support the withholding of company names, terms of cooperation, or the names of law enforcement agencies under Exemption 7(E)

The DEA's Exemption 7(E) claim should be rejected for two reasons. First, the agency

has not argued, and therefore conceded, in the supplemental brief that the three categories of

7(E) records at issue: (1) company names, (2) terms of cooperation, and (3) names of law

enforcement agencies involved with Hemisphere are techniques, procedures, or guidelines. The

DEA has therefore failed to meet the basic threshold requirement of Exemption 7(E). Second, the

DEA has failed to provide any evidence that disclosure of the companies, terms of cooperation,

or government agencies involved in Hemisphere could plausibly risk circumvention of the law.

Additionally, the DEA's discussion of cases related waiver or "official

acknowledgement" of exempt material is inapposite and none of the cases concern Exemption

7(E) claims. EPIC has never argued that the government officially acknowledged or waived

exemption claims related to these specific records. Rather, EPIC has argued that the agency

cannot establish a plausible claim that the disclosure of publicly-known surveillance techniques

could risk circumvention of the law. This Court agreed, Mem. Op. 33, and the agency has not

cited new evidence or authorities to contradict that finding.

a. **The DEA has not shown that disclosing the identities of companies participating in Hemisphere could risk circumvention of the law**

The DEA attempts to argue that companies participating in Hemisphere might face risks

if their identities are revealed, but the agency fails entirely to show that disclosure could risk

circumvention of the law. As this Court previously found, "[p]ublicly available information

about such telecommunication companies' facility locations is as available now as it would be

were the DEA to disclose the identities of the companies assisting with Hemisphere." Mem. Op.

13. The DEA has not offered any explanation that responds to the Court's observation that "even

if facility locations were identified, it is unclear how an attack on publicly known facilities would

compromise Hemisphere and risk circumvention of the law." *Id.*

The cases cited by the DEA provide little support for the agency's Exemption 7(E) claims

because none of those cases involved "similar risks of circumvention." The court in *Tracy* found

that disclosure of internal website information would pose risks posed to the FBI's own

infrastructure. *Tracy v. DOJ*, No. 15-655 (RDM), 2016 WL 3248185, at *9 (D.D.C. June 10,

2016), *appeal docketed*, No. 16-5187 (D.C. Cir. June 28, 2016). The court in *CREW* found that

disclosure of drone vendor names would reveal specific program capabilities. *CREW v. DOJ*,

160 F. Supp. 3d 226, 243–244 (D.D.C. 2016). Releasing the names of the companies involved in

Hemisphere risk no similar type of circumvention as found in *Tracy* or *CREW*. The "techniques"

used in Hemisphere—collection of telephone records—are already well known to the public. The

names of the specific companies involved would not impact individual investigations any more

than an episode of The Wire or Law and Order.

The DEA also cites several national security cases that concern classified programs, not

law enforcement records under Exemption 7. In *Competitive Enterprise Institute* the court upheld

a Glomar response to a request concerning an NSA surveillance program. The court went out of

its way to note that the case "touches upon issues of national security—'a uniquely executive

purview,'" which justified deferential review. *Competitive Enter. Inst. v. NSA*, 78 F. Supp. 45, 53

(D.C.C. 2015). The present case does not involve national security issues and no such

"substantial deference" is required. The DEA must still "demonstrate logically how the release of

the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646

F.3d 37, 42 (D.C. Cir. 2011) (internal quotations marks and alterations omitted)).

b. **The DEA has not shown that disclosure of law enforcement agencies that
have access to Hemisphere could risk circumvention of the law**

The DEA rehashes its argument that disclosure of the agencies that have access to

Hemisphere would allow criminals to adjust their behavior to avoid the specific law enforcement

agencies. The agency's argument is nearly identical to what was submitted at the original

summary judgment stage. The only cases that the DEA cites in support of its claim concern an entirely different type of information that the records at issue here. *See Light v. DOJ*, 968 F. Supp. 2d 11 (D.C.C. 2013) (concerning specific units used for specific investigations); *Soghoian v. DOJ*, 885 F. Supp. 2d 62 (D.C.C. 2012) (concerning specific non-public investigatory techniques). Neither case supports the DEA's reasoning.

In *Light*, the court held that the FBI could withhold the "location, identity, and expertise of the investigating FBI units." 968 F.Supp. at 29. This Court already held that *Light* is not persuasive here and does not support the withholding of Hemisphere agencies. Mem. Op. 14.

In *Soghoian*, the court held that the DOJ could withhold "what information is collected, how it is collected, and more importantly, when it is not collected." 885 F.Supp. 2d 62 (D.C.C. 2012). In that case, unlike in this case, the withholdings pertained to the details of very specific surveillance techniques used by law enforcement. No such details of surveillance techniques are at issue here—only names of law enforcement agencies.

### c.   The DEA has not shown that disclosure of terms of cooperation between companies and DEA could risk circumvention of the law

The DEA has also reiterated the argument that the agency can withhold under Exemption 7(E) documents concerning how the agency secures the cooperation with Hemisphere from third parties. The entire argument consist of one sentence and a redacted paragraph. The DEA fails to provide any facts on the public record or even cite a single case in support of this assertion. Presumably the DEA obtains cooperation with Hemisphere through a contract or some other agreement. It is implausible that disclosure of the terms of these agreements could risk circumvention of law. The DEA has also failed entirely to provide reasonably segregable portions of the remaining documents at issue in this case.

**CONCLUSION**

For the foregoing reasons, Court should deny the DEA's Motion for Summary Judgment

in part and grant EPIC's Cross-Motion for Summary Judgment in part.


Dated: October 12, 2016                              Respectfully Submitted,

                                                     MARC ROTENBERG, D.C. BAR # 422825
                                                     EPIC President

                                                     ALAN BUTLER, D.C. BAR # 1012128
                                                     EPIC Senior Counsel

                                                       */s/ Jeramie D. Scott*
                                                     JERAMIE D. SCOTT, D.C. BAR # 1025909
                                                     Electronic Privacy Information Center
                                                     1718 Connecticut Ave. NW, Suite 200
                                                     Washington, DC 20009
                                                     (202) 483-1140
                                                     jscott@epic.org

                                                     *Counsel for Plaintiff*